MATTHEW Z. CROTTY, WSBA #39284
Crotty & Son Law Firm, PLLC
421 West Riverside, Suite 1005
Spokane, WA 99201-0300
Telephone: 509.850.7011
Facsimile: 509.703.7957

BRADLEY C. CROCKETT, WSBA #36709
Layman Law Firm, PLLP
601 S. Division Street
Spokane, WA 99202
Telephone: 509.455.8883
Facsimile: 509.624.2902

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HARD 2 FIND ACCESSORIES, INC. | NO. |
| Plaintiff, | COMPLAINT |
| v. | JURY DEMAND |
| AMAZON.COM, INC., a Delaware Corporation; and, APPLE, INC., a California Corporation. | |
| Defendants. | |

## I.    PARTIES AND JURISDICTION

COMPLAINT AND DEMAND FOR JURY
TRIAL- 1

1.     Defendant, AMAZON, CORP ("Amazon") is a Delaware Corporation that is licensed to conduct business in the State of Washington.  Amazon.com, Inc. maintains a place of business at 410 Terry Avenue, North, Seattle, Washington 98109.  Washington State Secretary of State records reflect that Amazon's President, Secretary, Treasurer, Vice Presidents, and Directors are located at that address.

2.     Defendant APPLE, INC., has its principal place of business in Cupertino, California, conducts business in the State of Washington, and is licensed to conduct business in the State of Washington.

3.     Plaintiff, HARD 2 FIND ACCESSORIES, INC. ("H2F") is a corporation headquartered in the State of New York, licensed to conduct business in New York, and transacted business in the State of Washington during the time frame relevant to this case.

4.     The acts complained of occurred within the Western District of Washington.

5.     The Federal Court for the Western District of Washington has personal jurisdiction over the parties and diversity jurisdiction for the claims in this complaint pursuant to 28 U.S.C. § 1332 and subject matter jurisdiction over the claims pursuant to 28 U.S.C. § 1331.  This court has supplemental jurisdiction of plaintiff's state law claims under 28 U.S.C. § 1367.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 2

6.     Venue is proper in the Western District of Washington under 28 U.S.C. § 1391(b) because the acts and omissions complained herein occurred in the District and defendants conduct business there.

## II.     INTRADISTRICT ASSIGNMENT

7.     This action arose in King County, Washington; therefore, pursuant to local rules it should be assigned to the Seattle Division of the Western District of Washington.

## III.     FACTS

8.     Plaintiff re-alleges paragraphs 1 through 7.

9.     Amazon "seek[s] to be Earth's most customer-centric company for four primary customer sets: consumers, sellers, enterprises, and content creators."[1]

10.     As to Amazon's "seller" customer set, the company "offer[s] programs that enable sellers to sell their products on [Amazon's] websites and [the customer's] own branded websites and to fulfill orders through [Amazon]. [Amazon is] not the seller of record in these transactions, but instead earn fixed fees, revenue share fees, per-unit activity fees, or some combination thereof."[2]

11.     Hard 2 Find Accessories, Inc. is one of the "sellers" with whom Amazon conducted business.

---

[1]*See* Amazon.com, Inc.'s SEC Form 10-K, at 2 (December 31, 2012) *available at* http://pdf.secdatabase.com/1562/0001193125-13-028520.pdf (last visited January 27, 2014).

[2]*Id.*

COMPLAINT AND DEMAND FOR JURY
TRIAL- 3

12.     In the January 2012 timeframe H2F and Amazon entered into an "Amazon Services Business Solutions Agreement" (the "Agreement"). At that time, the Agreement, to H2F's knowledge, contained no arbitration clause.

13.     At all relevant times hereto H2F actively monitored the Amazon.com website in order to keep apprised of any changes to the Agreement.

14.     Although H2F actively monitored the Amazon.com website to keep apprised of changes to the Agreement, H2F was not informed of changes to the Agreement that included the addition of an arbitration clause or any contractual provision that barred H2F from being able to resort to public judicial process in holding Amazon accountable for its acts and/or omissions.

15.     To the extent an arbitration clause came to exist in the Agreement H2F was not aware of the arbitration clause, did not bargain for the arbitration clause, did not receive any consideration for the arbitration clause, and did not accept the arbitration clause by, among other things, clicking "I accept" to any arbitration provision.

16.     At no time did Amazon send H2F, or any of H2F's officers, employees, or agents any communication informing H2F of Amazon's addition of an arbitration clause.

17.     There is no express unequivocal agreement to arbitrate between Amazon and H2F.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 4

18.     The Agreement provided:

> If we conclude that your actions and/or performance in
> connection with the Agreement may result in customer
> disputes, charge backs or other claims, then we may, in
> our sole discretion, delay initiating any remittances and
> withhold any payments to be made or that are otherwise
> due to you under this Agreement for the shorter of: (a) a
> period of ninety (90) days following the initial date of
> suspension; or (b) completion of any investigation(s)
> regarding your actions and/or performance in connection
> with the Agreement.

19.     The Agreement further provided:

> Amazon retains the right to immediately halt any
> transaction, prevent or restrict access to the Services or
> take any other action to restrict access to or availability
> of any inaccurate listing, any inappropriately categorized
> items, any unlawful items, or any items otherwise
> prohibited by the applicable Program Policies.

20.     The Agreement provides, in part, "[i]n the event of any conflicts
between the Program Policies and this Agreement, the Program Policies will
prevail."

21.     The Program Policies incorporated in the Agreement include:

> Amazon encourages sellers to report listings that violate
> Amazon's policies or applicable law by using our
> Contact Us form. Select "Report a violation of our rules"
> from the drop-down menu and fill out the form. Include
> all relevant information so we can conduct a thorough
> investigation.

22.     The Prohibited Seller Activities and Actions policy, provides:

COMPLAINT AND DEMAND FOR JURY
TRIAL- 5

Amazon.com Seller Rules are established to maintain a selling platform that is safe for buyers and fair for sellers. Failure to comply with the terms of the Seller Rules can result in cancellation of listings, suspension from use of Amazon.com tools and reports, or the removal of selling privileges.

23.   From January 1, 2012 to June 17, 2013, H2F sold over 242,000 items and generated over $3,242,027.12 in sales. H2F's "Sales Snapshot" reads:



24.   In mid-2012 Amazon, as part of beta testing for its Amazon Landing project, offered to extend up to $76,000.00 in unsecured funds to H2F. Amazon's extension of such unsecured funds was reserved for top-notch sales entities of which H2F was one.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 6

25.     Amazon utilized certain performance metrics to evaluate H2F's performance. Those performance metrics required H2F to have an "Order Defect Rate" of < 1%, a "Pre-Fulfillment Cancel Rate" of < 2.5%, and a "Late Shipment Rate" of < 4%. From January 2012 through June 2013 H2F exceeded the standard set by Amazon in averaging an "Order Defect Rate", "Pre-Fulfillment Cancel Rate", and "Late Shipment Rate" of .57%, 1.09%, and 2.69% respectively.

26.     On June 14, 2013, H2F received the following communication from Amazon:

> Hello from Amazon.
>
> We are writing to inform you that these offers have been removed from our site:
>
> ASIN:B004QKM5MG
> TITLE: Apple iPad 2 Leather Smart Cover - Black (MC947LL/A)
>
> ASIN:B004TEPN8M
> TITLE:Apple iPad Smart Cover - Polyurethane - Blue[3]
>
> We took this action because we were notified by the rights owner that the offers infringe their intellectual property rights and may be counterfeit.
>
> Items offered for sale on Amazon.com must be authentic. Any item that has been illegally replicated, reproduced, or manufactured is prohibited. For more information on this policy, search on "Prohibited Content" in seller Help.

---

[3] Throughout this Complaint the above referenced iPad accessories are referred to as "the Items."

COMPLAINT AND DEMAND FOR JURY
TRIAL- 7

To resolve this dispute, we suggest that you contact the rights owner directly:

Kilpatrick Townsend & Stockton LLP
eyakubova@kilpatricktownsend.com

If you resolve this matter with the rights owner, please advise them to contact us at notice@amazon.com to withdraw their complaint. We ask that you refrain from posting items manufactured by this rights owner until you have resolved this matter.

Failure to comply with our policies may result in the removal of your selling privileges.

We appreciate your cooperation and thank you for selling on Amazon.com.

Regards,

Seller Performance Team
Amazon.com
http://www.amazon.com

27.     Apple's report to Amazon of the alleged counterfeit Items sold by H2F is referred to, by Apple, as a "takedown."

28.     A "takedown" involves Apple investigating the conduct of the business subject to the "takedown," including whether the business is selling counterfeit goods.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 8

29.    Upon information and belief, Apple based its "takedown" of the Items on (a) certain alleged customer complaints and (b) the low prices by which H2F sold the Items.

30.    Upon information and belief, the "customer complaints" upon which Apple based its "takedown" stated "NOT A REAL APPLE SMART COVER," "Not the real Smart Cover," "Not Genuine!," "Not authentic," "fake, don't buy," "the quality isn't the same, feels cheaper," "the magnetic part where it attaches to Ipad is very week," and "Looks & feel (70%) similar to actual (Apple) ones."

31.    Upon information and belief, neither Apple nor Apple's agents communicated with any of the above-referenced customers.

32.    Upon information and belief, neither Apple nor Apple's agents know the actual identity (i.e. the real names) of the above-referenced customers.

33.    Upon information and belief, neither Apple nor Apple's agents obtained the alleged counterfeit Items from any of the above-referenced customers.

34.    Upon information and belief, Apple and Apple's agents relied on anonymous Internet postings from the above-referenced "customers" in order to execute its "takedown."

COMPLAINT AND DEMAND FOR JURY
TRIAL- 9

35. Upon information and belief, neither Apple nor Apple's agents communicated with any natural person or corporate entity who purchased the Items from H2F.

36. Upon information and belief, neither Apple nor Apple's agents conducted a "test buy" of the Items.

37. The customer reviews that Apple relied on in initiating its "takedown" were general product reviews contained on Amazon.com and not related to H2F's specific sale of the Items.

38. At no time did Apple, or Apple's agents, communicate with H2F before initiating its "takedown."

39. Had Apple, or Apple's agents, communicated with H2F then Apple would have discovered that the Items sold by H2F were not counterfeit.

40. Had Apple, or Apple's agents, communicated with H2F then H2F would have informed Apple that H2F's records revealed that H2F sold approximately 134 of the Items between October 7, 2012, and June 11, 2013, refunded three of the Items, and refunded the three Items because the Items were either "no longer needed" or "buyer's remorse."

41. Upon information and belief, Apple initiated the "takedown" because H2F's B004QKM5MG listing offered it for $14.48 and the H2F's B004TEPN8M listing offered it for $17.36.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 10

42.     Upon information and belief, H2F was not the only entity that sold the Items at the above-referenced prices during the timeframe in which Apple planned and executed its "takedown."

43.     Upon information and belief, other entities sold the Items through Amazon.com, through brick and mortar outlets, and/or online during the timeframe in which Apple planned and executed its "takedown."

44.     Upon information and belief, neither Apple nor Apple's agents subjected other entities who sold the Items to a "takedown", or like action, during the timeframe in which Apple planned and executed its "take down" of H2F.

45.     Upon information and belief, Apple's agent for the purpose of planning and executing the H2F "takedown" was Elena Yakubova of the Kilpatrick Townsend & Stockton LLP, (Kilpatrick) law firm.

46.     Upon information and belief, Kilpatrick is not solely employed by Apple for the purpose of conducting investigations.

47.     Upon information and belief, Apple is not Kilpatrick's only client.

48.     Upon information and belief, Ms. Yakubova is not an attorney.

49.     Upon information and belief, Ms. Yakubova is not an investigator licensed in accord with RCW 18.165 et. seq.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 11

50.    Upon information and belief, Ms. Yakubova did not obtain permission from the Washington State Department of Licensing to conduct investigatory work within the State of Washington.

51.    Upon information and belief, at no time has Ms. Yakubova maintained a surety bond on file with the Washington State Department of Licensing.

52.    Upon information and belief, at no time has Ms. Yakubova maintained certificate of insurance with the Washington State Department of Licensing.

53.    Upon information and belief, at no time has Kilpatrick maintained a surety bond on file with the Washington State Department of Licensing.

54.    Upon information and belief, at no time has Kilpatrick maintained a certificate of insurance with the Washington State Department of Licensing.

55.    As of May 14, 2014, the B004QKM5MG sold on Amazon for $14.95.    *See*    http://www.amazon.com/Apple-iPad-Leather-Smart-Cover/dp/B004QKM5MG (last visited May 14, 2014).

56.    On June 17, 2013, H2F received the following communication from Amazon.

Hello from Amazon.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 12

We are writing to let you know that we have removed your selling privileges, canceled your listings, and placed a temporary hold on any funds in your Amazon.com seller account. Any new selling accounts you open will be closed.

We took these actions because the items you are offering on our site may be counterfeit. Items offered for sale on our site must be authentic.

Our policies prohibit offering any item that has been illegally replicated, reproduced, or manufactured. For information on this policy, search on "Prohibited Content" in seller Help.

We encourage you to take appropriate steps to resolve any pending orders. Note that any amounts paid as a result of A-to-Z Guarantee claims and charge backs may be deducted from yourseller account.

After 90 days, the hold will be removed and any remaining funds will be available per your settlement schedule. In addition, balance and settlement information will be available in the Payments section of your seller account.

If you have questions about these funds, please write to payments investigate@amazon.com.

If you would like to appeal this decision, please visit the Notification page in the Performance section of your account, find this message in the list of notifications, and click the Appeal button (https://sellercentral.amazon.com/gp/customerexperience/perf-notifications.html). For information on creating an appeal, search on "Appeal the Removal of Selling Privileges" inseller Help.

Regards,

COMPLAINT AND DEMAND FOR JURY
TRIAL- 13

Seller Performance Team

Amazon.com

57.     Per the June 17, 2013, email H2F entered the "Prohibited Content" search phrase "in Seller help"; however, the search did not clearly reveal the policy "prohibit[ing] offering any item that has been illegally replicated, reproduced, or manufactured."

58.     On June 17, 2013, at 11:52 a.m. PDT, H2F, per Amazon's directive, appealed Amazon's decision.

59.     On June 18, 2013, at 12:56 p.m. PDT, Amazon responded to H2F's appeal:

> Hello from Amazon.com.
>
> Thank you for writing about the recent blocking of your selling account.
>
> As you know, your account was blocked because your items fit a set of criteria that indicates they may be unauthorized by the intellectual property owners.
>
> Sellers are expected to know and follow all applicable laws, regulations and Amazon.com's policies when listing their items.
>
> Amazon.com reserves the right to close seller accounts that list unauthorized merchandise.
>
> Any remaining funds are on temporary hold for 90 days from the date your account was blocked. After 90 days,

the funds will be disbursed, provided we do not receive charge backs or A-to-Z Guarantee claims against your sales. If you have further questions about your disbursement, please email payments-funds@amazon.com.

We appreciate your interest in selling on Amazon.com.

Regards,

Seller Performance Team
Amazon.com
http://www.amazon.com

60.    In addition to Appealing Amazon's decision, H2F contacted Kilpatrick Townsend & Stockton LLP and ElenaYakubova ("Kilpatrick") the Items' "rights owner" in order to resolve Apple's infringement complaint against H2F.

61.    Kilpatrick is not, as represented by Amazon in its June 14, 2013, email to H2F, the Items' "rights owner"; it is a law-firm.

62.    On information and belief, Kilpatrick employs Elena Yakubova, a non-attorney, as an "IP Case Assistant" to file counterfeit allegations against companies, like H2F, who sell Apple products on Amazon at prices that Apple does not like.

63.    On or about June 25, 2013, Apple admitted to H2F that the infringement claim it lodged with Amazon was in error and represented that Apple had withdrawn its complaint with Amazon.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 15

64.    On June 25, 2013, H2F informed Amazon that Apple's infringement claim was in error and that Apple had withdrawn the claim.

65.    On June 27, 2013, H2F received the following communication from Amazon.  In its June 27, 2013, email Amazon unilaterally revoked H2F's "selling privileges", an act that permanently shuttered H2F's business.

> Hello from Amazon.com.
>
> Thank you for writing about the recent blocking of your selling account.
>
> As stated in our email correspondence dated June 17, 2013, we removed your selling privileges because your items fit a set of criteria that indicates they may be unauthorized by the intellectual property owners. Sellers are expected to know and follow all applicable laws, regulations and Amazon.com's policies when listing their items.
>
> Additionally, after a review of your account by an account specialist, we have decided not to reinstate your selling privileges.
>
> We regret we are unable to provide further information on this situation. Further correspondence regarding the closure of your selling account may not be answered.
>
> The closure of this account is a permanent action. Any subsequent accounts that are opened will be closed as well.
>
> We appreciate your interest in selling on Amazon.com. Regards,
>
> Seller Performance Team

COMPLAINT AND DEMAND FOR JURY
TRIAL- 16

Amazon.com

66.  On July 8, 2013, and July 24, 2013, H2F requested that Apple communicate, to Amazon, Apple's decision to withdraw the infringement claim. As part of the complaint withdrawal process Apple asked H2F to provide the name of the Amazon employee to which the withdrawal complaint should be transmitted.

67.  H2F repeatedly emailed Amazon in order to obtain the name of the Amazon employee that Apple requested.  Amazon did not supply a name, instead it replied to H2F's requests with boilerplate language indicating that the withdrawal should be sent to "notice@amazon.com."

68.  On  August  1,  2013,  Apple  sent  the  following  email  to notice@amazon.com:

> **From:** Yakubova, Elena
> **Sent:** Thursday, August 01, 2013 12:37 PM
> **Cc:** Bricker, Ryan
> **Subject:** Hard 2 Find (Seller ID: A3KMM4OV4NGQC2)
>
> Dear Amazon Copyright Agent:
>
> I am contacting you about Hard 2 Find, a seller who posted products against an ASIN number that was associated with counterfeit products.  We appreciate Amazon's removal of the listings associated with the damaging ASIN.  Hard 2 Find has agreed not to list any Smart Cover or other Apple products under any ASIN numbers that are associated with counterfeit products. Based on that agreement and Hard 2 Find's cooperation

COMPLAINT AND DEMAND FOR JURY
TRIAL- 17

in addressing our concerns, Apple considers this matter amicably resolved as it relates to Hard 2 Find.

If you have any questions, please do not hesitate to contact us.

Best,

Elena Y.

69.  Although in receipt of the above-referenced email, Amazon refused to reinstate H2F's account.

70.  On August 9, 2013, H2F's attorney contacted Amazon's counsel to ask why Amazon was not honoring the terms of Amazon's June 14, 2013, email.

71.  On August 20, 2013, Amazon contacted H2F and, for the first time, informed H2F that Amazon shuttered H2F's account as a result of factors that were not listed in Amazon's June 14, 2013, communication to H2F.  Many of the events Amazon cited as grounds for its decision occurred months before the June 17, 2013, account suspension.   Amazon ended its August 20th conversation with H2F stating that it had still not received proper notice from Apple regarding the withdrawal of Apple's complaint.

72.  On August 20, 2013, H2F again contacted Apple and again asked Apple to withdraw its complaint against H2F.  To H2F's query Apple stated that the two reasons it filed the infringement complaint were (1) H2F's association of

COMPLAINT AND DEMAND FOR JURY
TRIAL- 18

the iPad covers with a "troublesome ASIN" and (2) H2F's "aggressive price point."

73.     The ASIN is the "Amazon Standard Identification Number" - - - a 10 character alpha-numeric designation that Amazon - - not H2F - - - applies to each product sold on Amazon. Contrary to Apple's belief, H2F is not responsible for associating an ASIN with a product: that is Amazon's responsibility.

74.     On September 6, 2013, Apple (again) contacted Amazon and (again) withdrew its complaint against H2F.

75.     On or about September 19, 2013, Amazon refused to reinstate H2F's account. Instead Amazon advised H2F to develop a plan that addressed the supposed issues with H2F's account and H2F's plan to remedy those issues.  In making its demand Amazon cited a previously unknown Apple complaint from January 2013, a previously unknown February 2013 complaint, a March 2013 complaint in which H2F was warned against posting against an ASIN associated with Apple, a previously unknown April 2013 warning regarding an unauthorized Trademark usage, and a May 2013 complaint that had subsequently been withdrawn.

76.     Amazon's list of supposed violations were a pretext.  First, H2F does not control the ASIN-product association: Amazon does.  Second, the May 2013 complaint was withdrawn because it (much like Apple's complaint) was found to

COMPLAINT AND DEMAND FOR JURY
TRIAL- 19

be untrue. <u>Third</u>, H2F had not been informed of the January, February, and April complaints and those complaints were different from the June 2013 complaint upon which Amazon based its original decision to shutter H2F's business.

77.     Nonetheless, on September 30, 2013, H2F complied with Amazon's directive and (again) appealed Amazon's decision.

78.     Amazon did not respond to H2F's appeal but, on October 31, 2013, informed H2F of another Apple infringement complaint - - - a complaint that had no basis in fact because H2F had not conducted business since June 18, 2013 - - - the day Amazon shut it down.

79.     Amazon never responded to H2F's September 30, 2013, appeal. H2F's account remains suspended.

80.     All told, H2F lost a total of $180,112.61 per month as a result of Amazon and Apple's acts and omissions. Damages continue to accrue.

81.     Additionally, the Agreement between H2F and Amazon provided, in part, that H2F was required to use Amazon's "Payment Service."

82.     Upon information and belief, Amazon is the sole operator of the "Payment Service" insofar as it does not utilize a middle man to process the payments the buyer makes in purchasing merchandise sold by H2F.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 20

83.     Upon information and belief, once H2F ships the product, Amazon acquires the buyer's payment by charging, *inter alia,* the buyer's credit card the purchase amount.

84.     Amazon's provision of payment services to H2F is governed by Washington's Uniform Money Services Act.   And under the Act Amazon is a "money transmitter."

85.     Indeed, Amazon is registered as a "money transmitter" in Washington and, as a "money transmitter" must transmit "the monetary equivalent of all money or equivalent value received from a customer for transmission...to the person designated by the customer within ten business days after receiving the money." RCW 19.230.330.

86.     Upon information and belief, Amazon repeatedly failed to transmit, to H2F, buyer payments it received within 10 days as required by Washington law or in accordance with Amazon's Agreement with H2F.

## IV.          CAUSES OF ACTION

### (CAUSE OF ACTION NO. 1 – BREACH OF CONTRACT - AMAZON)

87.     Plaintiff re-alleges the above paragraphs 1-86.

88.     The Agreement requires Amazon to credit H2F's account within 14 to 19 days of receiving the monies from the purchaser.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 21

89.    Amazon held H2F's funds in excess of the time allowed by the Agreement as Amazon held H2F's monies from June 18, 2013 until September 18, 2013 (92 days - regarding H2F's US operation) and June 26, 2013 to October 2, 2013 (98 days - regarding H2F's Canadian operation) .

90.    As a result of Amazon's actions H2F was deprived of its funds and damaged as a result.

91.    H2F continues to be damaged by Amazon's acts and is entitled to legal and equitable relief against Amazon including damages, specific performance, rescission, an accounting, attorneys' fees, costs of suit, and other relief.

### (CAUSE OF ACTION NO. 2 – BREACH OF CONTRACT - AMAZON)

92.    Plaintiff re-alleges the above paragraphs.

93.    Amazon's Program Policies, which are quoted in paragraphs 16 and 17 above, state that, upon receiving a complaint, the company will conduct a "thorough investigation" and "maintain a selling platform that is safe for buyers and *fair* to sellers." (emphasis added)

94.    Amazon's investigation into Apple's allegations was not thorough. Had Amazon inquired as to the underlying bases of Apple's complaint against H2F it would have discovered that the bases for Apple's complaint were faulty.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 22

The less-than-thorough nature of Amazon's investigation is further revealed by short time frame (usually 24 hours) in which Amazon received, assessed, and responded to H2F's appeal.

95.     Amazon agreed to reconsider its suspension of H2F's account.  H2F, in relying on Amazon's representation, sent its appeal to Amazon on or about September 30, 2013.  As of the date of this lawsuit Amazon has still refused to reconsider H2F's appeal even though H2F followed up with Amazon.

96.     Amazon's refusal to reconsider H2F's September 30, 2013, appeal, failure to conduct an thorough investigation as required by contract, and failure to ensure that the selling platform was "fair" to sellers has caused H2F damages in an amount to be proven at trial.

### (CAUSE OF ACTION NO. 3 – VIOLATION OF FEDERAL AND STATE ANTI-TRUST STATUTES - 15 U.S.C. § 1 ET SEQ. & RCW 19.86 ET SEQ. - AMAZON & APPLE)

97.     Plaintiff re-alleges the above paragraphs.

98.     Apple and Amazon operate in the same market with Apple manufacturing the iPad covers and Amazon, by and through the efforts of H2F, selling the iPad covers.

99.     The central purpose of the federal and state anti-trust statutory schemes are to preserve competition.

100.   In order to establish an anti-trust claim a plaintiff must establish: (1) violation of antitrust law; (2) injury—or impact—resulting from that violation; and (3) measurable damages.

101.   Violation of anti-trust law can occur via vertical and/or horizontal price fixing.

102.   Generally speaking, vertical price fixing involves a manufacturer (Apple) imposing resale prices on its distributors (like H2F) for unlawful reasons. In order to prevail on a vertical price-fixing claim H2F must prove either a conspiracy or concerted action between two or more actors to fix prices and that the price-fixing conspiracy is illegal pursuant to the applicable legal standard.

103.   In this instance, Apple and Amazon have engaged in conspiratory and/or concerted action that involves (a) Apple monitoring Amazon's sellers (like H2F) for selling items at an "aggressive price point" (b) Apple filing baseless claims with Amazon so as to shutter the offending entity (c) Apple delaying resolution of its complaint with H2F so as to give (d) Amazon time to conjure up after-the-fact reasons for closing H2F's account.

104.   Apple and Amazon's knowing and concerted action unlawfully restrained trade by having an anti-competitive effect on H2F: once H2F set its price point too "aggressively" Apple filed an inaccurate report upon which Amazon relied (without undertaking the thorough investigation contemplated in

COMPLAINT AND DEMAND FOR JURY
TRIAL- 24

the Agreement).   As such, Apple and Amazon's restraint of trade is unlawful because any legitimate justification for it does not outweigh the anticompetitive effects alleged here: the destruction of H2F's business for pricing iPad covers too low and the raising of the Items' prices, overall to the consumer, as a result of Amazon and Apple's concerted efforts.

105.   The anti-competitive effect of Apple and Amazon's concerted action is further illustrated as follows.  As of June 17, 2013, H2F sold the iPad covers at issue for $14.47 per unit (the black iPad Leather Smart Cover) and $17.41 per unit (the blue iPad Smart Cover).  As of the date of this complaint (and from June 18, 2013 onward) the Items are sold for, upon information and belief, prices above what the Items were sold for on June 17, 2013.

106.   Upon information and belief, at no time after June 18, 2013, did Amazon, or any entity utilizing Amazon's selling platform, sell the above-referenced Items for prices lower than what H2F sold those Items for before June 17, 2013.

107.   Alternatively, Amazon and Apple are engaged in horizontal price fixing (i.e. collusive price setting or stabilization by competitors) as both entities sell iPad covers themselves.

108.   Amazon and Apple are knowing parties to a contract, combination, and/or conspiracy by which both collude in shuttering business, like H2F, who sell

products, like the iPad covers in this case, at a rate lower than agreed to by Apple and Amazon. Thus, Apple and Amazon's conduct has the effect of raising the price of the iPad covers in interstate commerce. Apple and Amazon's concerted efforts have caused buyers to pay more for iPad covers and have done so at H2F's detriment.

109.   H2F has been injured directly by Amazon and Apple's conduct.  H2F has been damaged by Amazon and Apple's conduct.  Apple and Amazon's conduct is unlawful and is of the type that antitrust laws were intended to prevent. Apple and Amazon's conduct had an actual adverse effect on competition as a whole in the relevant market.

## (CAUSE OF ACTION NO. 4 – VIOLATION OF WASHINGTON UNIFORM MONEY SERVICES ACT (UMSA))

110.   Plaintiff re-allegesthe above paragraphs.

111.   Amazon is a money transmitter as defined under the UMSA, RCW 19.230.10(19).

112.   Amazon is a licensed money transmitter with the #550-MT-29160 registration number.

113.   Under the statute in effect at the time of the allegations in this complaint, a money transmitter "shall transmit the monetary equivalent of all money or equivalent value received from a customer for transmission...to the

COMPLAINT AND DEMAND FOR JURY
TRIAL- 26

person designated by the customer within ten business days after receiving the money." RCW 19.230.330 (amended 2014).

114.   As a money transmitter Amazon collects payments from buyers of H2F's products and then remits those payments to H2F.

115.   Upon information and belief, Amazon routinely fails to transmit payments to H2F within the 10 business day timeframe set out in RCW 19.230.330 or within Amazon's own stated policies.

116.   Amazon's failure to follow the UMSA damaged H2F in an amount to be proven at trial.

### (CAUSE OF ACTION NO. 5- TORTIOUS INTERFERENCE WITH BUSINESS/CONTRACTUAL EXPECTANCY - APPLE)

117.   Plaintiff re-alleges the above paragraphs.

118.   In order to establish a tortious interference with a business expectancy claim one must establish (1) a business expectancy/contract, (2) knowledge of that expectancy/contract by the defendant, (3) intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy/contract, (4) interference by the defendant based on an improper purpose or improper means, and (5) damages.

119.   H2F possessed both a contractual relationship with Amazon and a business expectancy in sales proceeds derived from customer purchases of H2F's products (like the iPad covers) through the Amazon portal.

120.   Apple knew of H2F's contractual and business expectancy with Amazon as Apple (falsely) informed Amazon that H2F was improperly selling the iPad cases.

121.   Apple intentionally interfered with H2F's contractual/business expectancy and Apple's intentional interference was the cause of Amazon's termination of H2F's contract/business expectancy.

122.   Apple's interference was based on an improper motive, purpose, and means.  Without limitation, Apple simply didn't like H2F's "aggressive price point" i.e. the H2F was selling the iPad covers at a price less than what Apple desired and filed a false report with Amazon to stop H2F's selling practices.

123.   Apple's improper interference continued as shown by Apple's delay in informing Amazon of the inaccuracies in its report and Apple's delay in withdrawing its complaint with Amazon.

124.   Apple's improper means is further shown by its failure to undertake a good faith investigation of customer allegations giving rise to the "takedown."

125.   Apple's conduct damaged H2F in an amount to be proven at trial.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 28

## (CAUSE OF ACTION NO. 6 –BREACH OF COVENANTS OF GOOD FAITH AND FAIR DEALING - AMAZON)

126.   Plaintiff re-alleges the above paragraphs.

127.   The parties to a contract are required to perform the terms of the contract in good faith and in a manner that deals fairly with the other party.

128.   Paragraph 2, of the Agreement provides, in part:

> If we conclude that your actions and/or performance in connection with the Agreement may result in customer disputes, chargebacks or other claims, then we may, in our sole discretion, delay initiating any remittances and withhold any payments to be made or that are otherwise due to you under this Agreement for the shorter of: (a) a period of ninety (90) days following the initial date of suspension; or (b) completion of any investigation(s) regarding your actions and/or performance in connection with the Agreement.

129.   Amazon did not perform Paragraph 2 in good faith nor did it perform, in good faith, the contractual undertakings set out in paragraphs 18 and 19 of this complaint.  By way of example, Amazon did not, as required by Paragraph 2(b) perform an investigation.

130.   Investigate means "[t]o inquire into (a matter) systematically" or "[t]o make an official inquiry." Black's Law Dictionary, at 665 (7th Ed. 2000).

131.   Amazon conducted no systematic or official inquiry into Apple's allegations: it simply assumed Apple's counterfeit allegation against H2F was true and destroyed H2F's business as a result.  Amazon did not inform H2F of the

COMPLAINT AND DEMAND FOR JURY
TRIAL- 29

specific allegations that Apple levied against it.  And even after Apple informed Amazon that Apple's allegations against H2F lacked factual basis, Amazon still refused to reinstate H2F's account.  Further, a systematic investigation would have revealed that the association of the iPad accessories with the improper ASIN was Amazon's fault as Amazon, not H2F, is charged with marrying ASINs with products.

132.   Amazon violated paragraph 2(a) by not returning H2F's monies within 90 days of the June 18, 2013, suspension.

133.   Paragraph 18, of the Business Services Agreement provides, in part:

> Amazon retains the right to immediately halt any transaction, prevent or restrict access to the Services or take any other action to restrict access to or availability of any inaccurate listing, any inappropriately categorized items, any unlawful items, or any items otherwise prohibited by the applicable Program Policies.

134.   Amazon did not perform Paragraph 18 in good faith. Paragraph 18 requires the finding of an "inaccurate listing", an "inappropriately categorized item", an "unlawful item", or an "item otherwise prohibited by the applicable Program Policies."

135.   Amazon closed H2F's business even though the items at issue (the iPad covers marked by H2F) were not inaccurately listed by H2F, were not

COMPLAINT AND DEMAND FOR JURY
TRIAL- 30

inappropriately categorized by H2F, were not unlawful items, and were not prohibited from being sold by Amazon's policies.

**(CAUSE OF ACTION NO. 7 – VIOLATION OF CONSUMER PROTECTION ACT - AMAZON)**

136.   Plaintiff re-alleges the above paragraphs.

137.   Amazon is a "person" that conducts "trade" and "commerce" within the auspices of Washington's Consumer Protection Act (CPA), RCW 19.86.010(1)&(2).

138.   H2F is a "person" as defined by the CPA.

139.   By acquiring a "money transmitter" license Amazon had to comply with the UMSA's requirements including, but not limited to, remitting H2F's moneys within 10 days of receiving payment from H2F's customers.

140.   Amazon's failure to follow the UMSA constitutes a deceptive practice under the UMSA by (a) failing to remit the monies within 10 days of receipt (b) failing to disclose, via the Service Participation Agreement or any other writing, that the terms of the Service Participation Agreement violate the UMSA, and (c) failing to allow H2F to waive the provisions of the UMSA in the Service Participation Agreement.

141.   Amazon's above-referenced acts took place in the course and scope of Amazon's business, were capable of deceiving a substantial part of the public,

COMPLAINT AND DEMAND FOR JURY
TRIAL- 31

have a strong likelihood of being repeated, and affect the public interest. Indeed, the Washington Legislature states, in RCW 19.230.005, that its intent is to establish a state system of licenses that ensures the sound and safe exchange of monies.

142.   H2F suffered injury and lost money by, *inter alia,* being prevented timely access to H2F's funds.

143.   As such, H2F is entitled to all relief allowed under the CPA.

## (CAUSE OF ACTION NO. 8 – BREACH OF FIDUCIARY DUTY - AMAZON)

144.   Plaintiff re-alleges the above paragraphs.

145.   During all relevant times herein Amazon served as H2F's payment agent and, as a result, assumed a fiduciary relationship with H2F.

146.   Paragraph 19 of Amazon's Service Participation Agreement memorializes the fiduciary relationship.

147.   By holding H2F's monies in violation of the UMSA Amazon is in violation of both Washington law and its fiduciary duties to H2F.

148.   H2F has been damages by Amazon's breach of its fiduciary duties.

## (CAUSE OF ACTION NO. 9 – UNJUST ENRICHMENT - APPLE & AMAZON)

149.   Plaintiff re-alleges the above paragraphs.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 32

150.   By withholding H2F's monies for periods longer than required by contract or law Amazon was able to earn interest on H2F's monies which, in turn, enriched Amazon unjustly.

151.   By causing Amazon to close H2F's business Apple eliminated a competitor that was selling products at a price lower than what Apple desired which, in turn, unjustly enriched Apple to the extent that it gained market share as a result of H2F's closure.

### (CAUSE OF ACTION NO. 10 – VIOLATION OF CONSUMER PROTECTION ACT - APPLE)

152.   Plaintiff re-alleges the above paragraphs.

153.   Apple's use of an agent unlicensed to conduct investigatory work in the State of Washington is an unfair and deceptive practice which has the capacity to deceive a substantial portion of the public.

154.   Apple's use of an agent unlicensed to conduct investigatory work in the State of Washington is a violation of the Consumer Protection Act as Apple's use of an unlicensed investigator violated RCW 18.165, the violation of RCW 18.165 proximately caused H2F's damages, and H2F is in the class of persons RCW 18.165 intended to protect.

155.   Apple's use of its unlicensed investigatory agent occurred in the conduct of trade or commerce.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 33

156. Apple's use of its unlicensed investigatory agent impacts the public interest as Apple, through its agent, committed such acts in the course of Apple's business as a pattern of practice that repeatedly occurred, will likely continue to occur, and will injure additional plaintiffs in the same fashion as Apple's acts and omissions have harmed H2F.

157. Apple's use of its unlicensed investigatory agent harmed H2F's business in property and caused Amazon to shut down H2F's business.

158. H2F has been damaged by Apple's actions in an amount to be proven at trial.

## (CAUSE OF ACTION NO. 11 – DEFAMATION - APPLE)

159. Plaintiff re-alleges the above paragraphs.

160. In order to establish a defamation claim the plaintiff must prove (1) a false and defamatory communication (2) lack of privilege (3) fault, and (3) damages.

161. Apple communicated to Amazon that H2F was selling counterfeit items.

162. Apple's communication to Amazon constituted a publication.

163. The Items were not counterfeit.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 34

164.    Apple's communication to Amazon that the Items were counterfeit was false.

165.    Apple's communication to Amazon regarding the Items' counterfeit nature was defamatory.

166.    Apple's communication regarding the Items' counterfeit nature was not privileged.

167.    Apple's communication regarding the Items' counterfeit nature caused H2F damages in an amount to be proven at trial.

## V.    JURY DEMAND

H2F requests a trial by jury pursuant to Rule 38 of the *Federal Rules of Civil Procedure*.

## VI.  PRAYER FOR RELIEF

Plaintiff respectfully prays for:

A.    Compensation for all injury and damages suffered by H2F including, but not limited to actual, incidental, and consequential damages as well as all damages allowed by law.

B.    Plaintiff's reasonable attorneys, expert fees, and costs.

COMPLAINT AND DEMAND FOR JURY
TRIAL- 35

1    C.    For such other and further relief as this Court deems just and equitable.

2          Respectfully submitted this 27th day of June, 2014.

3

4                              /s Matthew Crotty
                               MATTHEW Z. CROTTY
5                              Crotty & Son Law Firm, PLLC
                               421 West Riverside, Suite 1005
6                              Spokane, WA 99201
                               Telephone: 509.850.7011
7

8

9                              /s Bradley C. Crockett
                               BRADLEY C. CROCKETT
10                             Layman Law Firm, PLLP
                               601 S. Division Street
11                             Spokane, WA 99201
                               Telephone: 509-455-8883
12

13                             Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT AND DEMAND FOR JURY
TRIAL- 36