The Honorable Ricardo S. Martinez

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| HARD 2 FIND ACCESSORIES, INC., | ) | No. 14-cv-0950-RSM |
| | ) | |
| Plaintiff, | ) | **AMAZON.COM INC.'S** |
| | ) | **MOTION TO DISMISS** |
| v. | ) | **PURSUANT TO** |
| | ) | **FED. R. CIV. P. 12(b)(6)** |
| AMAZON.COM, INC., a Delaware | ) | |
| Corporation; and APPLE, INC., a California | ) | Note on Motion Calendar: |
| Corporation, | ) | October 3, 2014 |
| | ) | |
| Defendants. | ) | **Oral Argument Requested** |
| | ) | |

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................... 1

II.   BACKGROUND ..................................................................................... 2

      A.    The Contract and Policies Governing Sellers on Amazon.com. .................... 2

      B.    Plaintiff's Allegations and Claims. ................................................. 4

III.  ARGUMENT ...................................................................................... 5

      A.    Legal Standards. ..................................................................... 5

      B.    H2F Fails to State a Claim for Breach of Contract Based on Amazon's
            Termination of Its Selling Privileges. ............................................. 6

      C.    H2F Fails to State a Claim for Breach of Good Faith and Fair Dealing. ........ 9

      D.    H2F Fails to State a Claim for Breach of Contract Based on Amazon's
            Withholding of Remittances Pursuant to the BSA. ............................... 11

      E.    H2F Has No Claim Under the Uniform Money Services Act. .................... 13

      F.    H2F Fails to State a Consumer Protection Act Claim. ........................... 16

            1.    H2F Cannot Assert a Per Se CPA Claim. ............................. 16

            2.    H2F Otherwise Does Not Allege Any Basis for a CPA Claim. ......... 17

      G.    H2F Fails to State Any Antitrust Claim. ....................................... 18

            1.    H2F Fails to Plausibly Allege an "Agreement" to Restrain Trade. . 18

            2.    H2F Fails to Allege a Relevant Market. ............................... 20

            3.    H2F Fails to Allege Injury to Competition in Any Properly-Defined
                  Market. .......................................................................... 21

            4.    H2F Cannot Assert a Per Se Sherman Act Claim. .................... 22

      H.    H2F Cannot Assert a Claim for Breach of Fiduciary Duty. ...................... 23

      I.    H2F Cannot State a Claim for Unjust Enrichment. .............................. 24

      J.    The Court Should Dismiss H2F's Claims With Prejudice. ....................... 24

IV.   CONCLUSION ................................................................................... 24

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alliance Shippers, Inc. v. S. Pac. Transp. Co.,*
    858 F.2d 567 (9th Cir. 1988) .......................................................................22

*Am. Ad Mgm't v. GTE Corp.,*
    92 F.3d 781 (9th Cir. 1996) .........................................................................21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................................................5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................5, 17, 18, 19

*Bhatti v. Guild Mortg. Co.,*
    2011 WL 6300229 (W.D. Wash. Dec. 16, 2011) ........................................24

*Big Bear Lodging Ass'n v. Snow Summit, Inc.,*
    182 F.3d 1096 (9th Cir. 2001) ...............................................................19, 20

*BP W. Coast Prods. LLC v. SKR Inc.,*
    989 F. Supp. 2d 1109 (W.D. Wash. 2013) ..............................................6, 12

*Brantley v. NBC Universal, Inc.,*
    675 F.3d 1192 (9th Cir. 2012) ........................................................18, 21, 22

*Brazier v. Sec. Pac. Mortg., Inc.,*
    245 F. Supp. 2d 1136 (W.D. Wash. 2003) ................................................23

*Brown Shoe Co. v. United States,*
    370 U.S. 294 (1962)...............................................................................19, 20

*Cagle v. Abacus Mortg., Inc.,*
    2014 WL 4402136 (W.D. Wash. Sept. 5, 2014) ........................................24

*Coto Settlement v. Eisenberg,*
    593 F.3d 1031 (9th Cir. 2010) ......................................................................6

*Evergreen Int'l Airlines, Inc. v Boeing Co.,*
    2010 U.S. Dist. LEXIS 140547 (W.D. Wash. June 9, 2010) ....................8, 10

*Gragg v. Orange Cab Co.,*
    942 F. Supp. 2d 1111 (W.D. Wash. 2013) .................................................17

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - ii

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Graham-Bingham Irrevocable Trust v. John Hancock Life Ins. Co. USA*,
    827 F. Supp. 2d 1275 (W.D. Wash. 2011) ..................................................15

*Hairston v. Pacific-10 Conference*,
    893 F. Supp. 1485 (W.D. Wash. 1994) ......................................................18

*Hayton Farms, Inc. v. Pro-Fac Corp. Inc.*,
    2010 WL 5174349 (W.D. Wash. Dec. 14, 2010) .........................................9

*Jepson v. Ticor Title Ins. Co.*,
    2007 WL 2060856 (W.D. Wash. May 1, 2007) ..........................................15

*Johnson v. Microsoft Corp.*,
    2009 WL 1794400 (W.D. Wash. 2009)........................................................7

*Kendall v. Visa USA, Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ...................................................................19

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) .....................................................................6

*Lapinski v. Bank of Am., N.A.*,
    2014 WL 347274 (W.D. Wash. Jan. 30, 2014) ......................................9, 17

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 887 (2007)...................................................................................23

*Les Schockley Racing, Inc. v. Nat'l Hot Rod Ass'n.*,
    884 F.2d 504 (9th Cir. 1989) ................................................................21, 22

*Lowden v. T-Mobile USA, Inc.*,
    2009 WL 537787 (W.D. Wash. Feb. 18, 2009), *aff'd*, 378 Fed. Appx. 693
    (9th Cir. 2010) ...........................................................................................17

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ................................................................20, 22

*Minnick v. Clearwire US, LLC*,
    683 F. Supp. 2d 1179 (W.D. Wash. 2010) ...........................................17, 23

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984)...............................................................................19, 23

*Muniz v. Microsoft Corp.*,
    2010 WL 4482107 (W.D. Wash. Oct. 29, 2010)......................................7, 11

*Nisqually Indian Tribe v. Gregoire*,
    623 F.3d 923 (2010) ...................................................................................14

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Pa. Ave. Funds v. Borey*,
    569 F. Supp. 2d 1126 (W.D. Wash. 2008) ................................................................20

*Perkins v. LinkedIn Corp.*,
    2014 WL 2751053 (N.D. Cal. June 12, 2014)...............................................................6

*Robertson v. GMAC Mortg. LLC*,
    2013 WL 2351725 (W.D. Wash. May 30, 2013) .........................................................17

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) .....................................................................................21

*Smale v. Cellco P'ship*, ,
    547 F. Supp. 2d 1181 (W.D. Wash. 2008) .................................................................17

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993).....................................................................................................18

*State Oil Co. v. Khan*,
    522 U.S. 3 (1997)..........................................................................................................18

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ......................................................................................6

*Swartz v. Deutsche Bank*,
    2008 WL 1968948 (W.D. Wash. May 2, 2008) ..........................................................24

*Tanaka v. Univ. of S. Cal*,
    252 F.3d 1059 (9th Cir. 2001). ...........................................................................19, 20

*TMP Worldwide Adver. & Commc'ns, LLC v. LATCareers, LLC*,
    2008 WL 4603404 (W.D. Wash. Oct. 16, 2008).........................................................23

*Tritz v. U.S. Postal Serv.*,
    721 F.3d 1133 (9th Cir. 2013) .....................................................................................12

*U.S. ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*,
    290 F.3d 1199 (9th Cir. 2002) .....................................................................................23

*Westcott v. Wells Fargo Bank, N.A*,
    862 F. Supp. 2d 1111 (W.D. Wash. 2012) .................................................................23

**STATE CASES**

*Ambach v. French*,
    167 Wn.2d 167, 216 P.3d 405 (2009).........................................................................17

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - iv

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Badgett v. Sec. State Bank,*
   116 Wn.2d 563, 807 P.2d 356 (1991)......................................................9, 10

*Barstad v. Stewart Title Guar.*
   Co., 145 Wn.2d 528, 39 P.3d 984 (2002)......................................................16

*Bennett v. Hardy,*
   113 Wn.2d 912, 784 P.2d 1258 (1990)......................................................13

*Bird-Johnson Corp. v. Dana Corp,*
   119 Wn.2d 423, 833 P.2d 375 (1992)......................................................13

*Brummett v. Washington's Lottery,*
   171 Wn. App. 664, 288 P.3d 48 (2012)......................................................13

*Cazzanigi v. Gen. Elec. Credit Corp.,*
   132 Wn.2d 433, 938 P.2d 819 (1997)......................................................15

*Coulos v. Desimone,*
   24 Wn.2d 87, 208 P.2d 105 (1949)......................................................11

*Crisman v. Pierce Cnty. Fire Prot. Dist. No. 21,*
   115 Wn. App. 16, 60 P.3d 652 (2002)......................................................14, 15

*Fid. & Deposit Co. of Md. v. Dally,*
   148 Wn. App. 739, 201 P.3d 1040 (2009)......................................................12

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
   105 Wn.2d 778, 719 P.2d 531 (1986)......................................................16

*In re Pers. Restraint of Michael Matteson,*
   142 Wn.2d 298, 12 P.3d 585 (2000)......................................................16

*Johnson v. Yousoofian,*
   84 Wn. App. 755, 930 P.2d 921 (1996)......................................................9, 10

*Mayer v. Pierce Cnty. Med. Bureau, Inc.,*
   80 Wn. App. 416, 909 P.2d 1323 (1996)......................................................8

*McGee Guest Home, Inc. v. DSHS,*
   142 Wn.2d 316, 12 P.3d 144 (2000)......................................................16

*Myers v. State,*
   152 Wn. App. 823, 218 P.3d 241 (2009)......................................................7, 8, 11

*N. Coast Enters., Inc. v. Factoria P'ship,*
   94 Wn. App. 855, 974 P.2d 1257 (1999)......................................................11

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - v

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*,
   78 Wn. App. 707, 899 P.2d 6 (1995)...................................................................6

*Panag v. Farmers Ins. Co. of Wash.*,
   166 Wn.2d 27, 204 P.3d 885 (2009)..............................................................17

*Protect the Peninsula's Future v. City of Port Angeles*,
   175 Wn. App. 201, 304 P.3d 914 (2013)................................................13, 15

*Robinson v. Avis Rent A Car Sys., Inc.*,
   106 Wn. App. 104, 22 P.3d 818 (2001)........................................................17

*Spooner v. Reserve Life Ins. Co.*,
   47 Wn.2d 454, 287 P.2d 735 (1955)...............................................................9

*State v. Black*,
   100 Wn.2d 793, 676 P.2d 963 (1984)..........................................................17

*Stewart v. Chevron Chem. Co.*,
   111 Wn.2d 609, 762 P.2d 1143 (1988)...........................................................9

*Willis v. Champlain Cable Corp.*,
   109 Wn.2d 747, 748 P.2d 621 (1988)......................................................7, 10

**FEDERAL STATUTES**

15 U.S.C. § 1 ................................................................................... *passim*

**STATE STATUTES**

RCW ch. 19.86 ................................................................. 16, 17, 18

RCW ch. 19.230 .........................................................13, 14, 15, 17

**RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................1, 5, 24

Fed. R. Civ. P. 15(a) ....................................................................24

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

# I.    INTRODUCTION

In addition to selling directly to customers, Amazon.com, Inc. ("Amazon")[1] allows third-party sellers to sell products through its website.  In exchange for the privilege of selling on Amazon.com, Amazon requires sellers to accept and abide by its Business Solutions Agreement ("BSA") and related policies, and reserves rights to investigate, suspend and terminate sellers as it sees fit.  Preserving the integrity of the website and third-party sellers' activities is vitally important to ensuring buyers' trust in Amazon.

Plaintiff Hard 2 Find Accessories, Inc. ("H2F") is a former third-party seller on Amazon.com, which admits it agreed to the BSA and Amazon's seller policies.  After Apple, Inc. notified Amazon that H2F was selling counterfeit iPad covers, Amazon blocked those listings, then investigated further and found numerous customer complaints about H2F selling counterfeit or unauthorized goods.  As a result, Amazon revoked H2F's selling privileges.  H2F has now sued, alleging a laundry list of claims based on its termination.  H2F's claims cannot survive under Fed. R. Civ. P. 12(b)(6) for several reasons.

*First*, H2F's claims for breach of contract and good faith and fair dealing are fundamentally flawed because they contradict the terms of the BSA.  The BSA creates an at-will relationship that either Amazon or H2F could terminate "for any reason at any time."  H2F's claims seek to rewrite these express rights, and therefore fail as a matter of law.

*Second*, H2F has no claim under the Washington Uniform Money Services Act ("UMSA"), RCW ch. 19.230.  The UMSA is a regulatory statute, administered and enforced by the Department of Financial Institutions.  The Act allows no private right of action for H2F's claim, and its extensive regulatory regime makes clear that none can be implied.

*Third*, H2F's claim under the Washington Consumer Protection Act ("CPA"), RCW Ch. 19.86, rests on the mistaken view that it can allege a *per se* claim based on section 19.230.330 of the UMSA.  It cannot, as the Legislature has not directed that this section

---

[1] Plaintiff's complaint incorrectly names Amazon.com, Inc.  In fact, H2F contracted with Amazon Services, LLC, which is a wholly owned subsidiary of Amazon.com, Inc.

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 1

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

creates a *per se* CPA violation (indeed, the section allows no private cause of action at all). H2F otherwise fails to allege any of the required elements of a CPA claim.

**Fourth**, H2F has not alleged any plausible basis for its antitrust claims.  H2F does not allege that Amazon and Apple ever entered into any agreement or conspired to do anything.  H2F also makes no attempt to define a relevant market and cannot show competitive injury in any properly defined market.

**Finally**, settled Washington law bars H2F's tag-along claims for breach of fiduciary duty and unjust enrichment.

## II.      BACKGROUND

### A.      The Contract and Policies Governing Sellers on Amazon.com.

All third-party sellers on Amazon.com are subject to agreements setting forth their obligations in using Amazon.com as a sales platform.  These include the BSA and program policies it incorporates, which H2F admits it accepted.  *See* Compl. ¶¶ 12, 18–22, 93.

The BSA makes clear Amazon's relationship with sellers is entirely at-will.  Amazon "may terminate or suspend this Agreement or any [selling privileges] immediately by notice to you for any reason at any time."  BSA § 3; Declaration of Deserae Weitmann, Ex. A. This at-will relationship goes both ways—sellers may also "terminate this Agreement or any Service … for any reason at any time."  *Id.*  Neither side need establish cause of any kind for termination, and neither need even explain its reasons.  Amazon also has the contractual right, in its sole discretion, to "prevent or restrict access to … the Amazon site and the Selling on Amazon Service" at any time and for any reason.  *Id.* § S-7.

The BSA incorporates several polices and rules governing seller conduct, which are designed to allow customers to buy with confidence.  For example, Amazon's "Anti-Counterfeiting Policy" provides:

> Customers trust that they can always buy with confidence on Amazon.com. Products offered for sale on Amazon.com must be authentic.  The sale of counterfeit products, including any products that have been illegally replicated, reproduced, or manufactured, is strictly prohibited.

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 2

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

http://www.amazon.com/gp/help/customer/display.html/ref=help_search_1-1?ie=UTF8&nodeId=201166010&qid=1409065915&sr=1-1.  This and other provisions prohibit sellers from listing inaccurate or counterfeit merchandise.[2]  Amazon advises sellers of their "responsibility to comply with all laws and regulations and with Amazon policies when listing and describing your products," and warns that violations may result in suspension or removal of listings or selling privileges.  *See* "Listing Restrictions," at http://www.amazon.com/gp/help/customer/display.html/ref=hp_left_cn?ie=UTF8&nodeId=200832290.[3]  Amazon encourages consumers and sellers to report suspected violations, and retains the right "to make judgments in its sole discretion" about whether to suspend or terminate any seller's account for any reason, whether because of customer complaints, demonstrated or suspected violations of selling terms, or any other reason.  *See id.*; *see also* BSA §§ 2-3, 18, S-7.  H2F admits it was required to abide by the Program Policies, and in fact quotes several of them in its complaint.  *See* Compl. ¶¶ 18-22.

 Amazon collects money from customers for sales by third-party sellers and remits the funds, less applicable fees, to sellers.  *See* BSA §§ 2, S-6.  If Amazon determines a seller should be suspended or terminated, it also has the contractual right to withhold remittances for 90 days or until it completes an investigation.  BSA § 2.  The purpose of this withholding period is to allow time for setoffs due to charges because of customer complaints, including "chargebacks, refunds, [or] adjustments."  BSA § 2; *see also id.* §§ S-1.2, S-2.2, S-3.2.  For example, customers may make claims under Amazon's A-to-z Guarantee at any time up to 90 days after a transaction with a third-party seller (Amazon reimburses customers for such claims and then may recover the reimbursement from the

---

[2] *See* http://www.amazon.com/gp/help/customer/display.html/ref=hp_left_cn?ie=UTF8&nodeId=201361050 ("Intellectual Property Violations").

[3] *See also* http://www.amazon.com/gp/help/customer/display.html/ref=hp_left_sib?ie=UTF8&nodeId = 2002770400 ("Restricted Products").

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 3

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

seller).[4]  After this period (assuming the seller did not engage in fraud or illegal activity),

Amazon remits remaining funds in the seller's account (after chargebacks, refunds, etc.)

pursuant to the customary schedule prescribed by the BSA—*i.e.*, remittances are made on a

rolling bi-weekly (14-day) basis, *see* BSA § S-6, and "[i]t usually takes 3 to 5 business days

for the funds to arrive in [the seller's] bank account,"

http://www.amazon.com/gp/help/customer/display.html/ref=hp_left_sib?ie=

UTF8&nodeId=201069630 (Amazon policy regarding "When will I be paid?").

### B.      Plaintiff's Allegations and Claims.

H2F alleges it subscribed as an Amazon seller in the "January 2012 timeframe."

Compl. ¶¶11-12.  H2F alleges it made over $3.2 million in sales through Amazon.com in

the 18-month period prior to June 17, 2013.  *See id.* ¶ 23.

The complaint alleges that on June 14, 2013, Amazon informed H2F it had removed

its listings for two Apple iPad covers because Amazon had received notice from Apple the

items were counterfeit.  *Id.* ¶ 26.  H2F acknowledges Apple's notice to Amazon was based

on numerous customer complaints that iPad covers H2F sold were "Not Genuine," "Not

Authentic," "NOT A REAL APPLE SMART COVER," and "fake."  *Id.* ¶ 30.  H2F's

complaint then contains a number of allegations challenging Apple's "takedown" notice, *id.*

¶¶ 27-54, 60-64, 66-67, and alleges, on "information and belief," that Apple provided the

notice because of H2F's prices for the iPad covers, *id.* ¶¶ 41-44.  H2F further alleges that on

August 1, 2013, Apple notified Amazon it had "amicably resolved" its complaint because

H2F had agreed it would no longer list iPad covers or other Apple products under certain

identification numbers "that are associated with counterfeit products."  *Id.* ¶ 68.  In the

meantime, however, Amazon conducted a broader investigation and decided to suspend

(and ultimately terminated) H2F's selling privileges based on a host of additional customer

---

[4] *See* http://www.amazon.com/gp/help/ customer/display.html?nodeId=200783670 ("About A-to-z
Guarantee,"); http://www.amazon.com/gp/help/customer/display.html?nodeId=13832201#what
("A-to-z Guarantee:  Frequently Asked Questions").

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

complaints.  *Id.* ¶ 75 (listing five other complaints of counterfeit and unauthorized goods),
¶ 78 (another infringement complaint).  Overall, Amazon investigated and addressed H2F's
conduct and its entreaties for four months, explained its decisions repeatedly, but ultimately
adhered to its decision to terminate H2F's selling privileges.  *Id.* ¶¶ 65, 71, 75, 78.

Amazon's termination notice to H2F indicated Amazon would withhold remittances
for "90 days" and thereafter "the hold will be removed and any remaining funds will be
available per your [disbursement] schedule."  *Id.* ¶ 56.  H2F admits Amazon remitted all
remaining funds within 92 and 98 days (respectively for H2F's U.S. and Canadian sales),
*id.* ¶ 89, well within the BSA-prescribed periods, which allowing a hold of 90 days plus the
14-day disbursement schedule plus 5 days for funds to be available in a seller's account.

Based on these allegations, and despite Amazon's contractual right to suspend or
terminate seller accounts for any reason at any time, H2F asserts seven claims against
Amazon:  (1) breach of contract, *id.* ¶¶ 87-96; (2) violation of federal and state antitrust
laws (15 U.S.C. § 1 and RCW 19.86), *id.* ¶¶ 97-109; (3) violation of the UMSA (RCW ch.
19.230), *id.* ¶¶ 110-116; (4) breach of the implied covenant of good faith and fair dealing,
*id.* ¶¶ 126-135; (5) violation of the CPA (RCW ch. 19.86), *id.* ¶¶ 136-143; (6) breach of
fiduciary duty, *id.* ¶¶ 144-148; and (7) unjust enrichment, *id.* ¶¶ 149-151.[5]

## III.   ARGUMENT

### A.   Legal Standards.

Rule 12(b)(6) exists to weed out undeserving complaints.  *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 559 (2007).  A claim has "facial plausibility" when a plaintiff
"pleads factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009).  This "requires more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "Where a complaint

---

[5] H2F asserts its antitrust, CPA, and unjust enrichment claims against both Amazon and Apple, and
asserts tortious interference and defamation claims against Apple only.  *Id.* ¶¶ 117-125, 159-167.

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 5

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

On a 12(b)(6) motion, the Court may consider documents referenced in the complaint under the incorporation- by-reference doctrine. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). This "prevent[s] plaintiffs from surviving a 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (alterations omitted). The Court need not "accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

H2F's complaint specifically references, quotes and even purports to rely on provisions of both the BSA and the incorporated program policies. *See* Compl. ¶¶ 12-22, 57, 88-89, 93, 119-121, 127-134. Although H2F does not provide these contract materials, its complaint incorporates them by reference; therefore, they are properly before the Court.[6]

## B.   H2F Fails to State a Claim for Breach of Contract Based on Amazon's Termination of Its Selling Privileges.

In Washington,[7] a contract claim requires proof of four elements:  duty, breach, causation, and damages. *See BP W. Coast Prods. LLC v. SKR Inc*., 989 F. Supp. 2d 1109, 1121 (W.D. Wash. 2013) (citing *Baldwin v. Silver,* 165 Wn. App. 463, 473, 269 P.3d 284 (2011)). An alleged "breach of contract is actionable only if the contract imposes a duty,

---

[6] The complaint selectively quotes program policies for sellers—which are incorporated in the BSA and set forth in the Seller Central portion of the Amazon.com website—but does not provide them. *See, e.g.* Compl. ¶¶ 21, 93. The Court may consider these materials too. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material," as webpages should considered in the context of the website as a whole.); *Perkins v. LinkedIn Corp.*, __ F. Supp. 2d __, 2014 WL 2751053, at *7-8 (N.D. Cal. June 12, 2014) (court "may take judicial notice of matters ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned [including] publically accessible websites" (citing Fed. R. Evid. 201(b)).

[7] The BSA provides that Washington law governs the agreement. *See* BSA § 18, Definitions.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995).

A plaintiff cannot allege a breach of contract without identifying a specific contractual duty the defendant breached. *BP W. Coast Prods.*, 989 F. Supp. 2d at 1121 ("For any breach to arise, there must first be some duty to perform."); *Johnson v. Microsoft Corp.*, 2009 WL 1794400, at *2 (W.D. Wash. June 23, 2009) ("A party claiming breach of contract must show that the contract imposes a duty that was breached."). Put more simply, "a contract cannot be breached if [it] does not include the term in question." *Muniz v. Microsoft Corp.*, 2010 WL 4482107, at *3 (W.D. Wash. Oct. 29, 2010).

H2F asserts two contract claims, challenging, respectively (1) Amazon's termination of H2F's selling privileges, Compl. ¶¶ 92-96, and (2) Amazon's delay in remitting funds to H2F after the termination, *id.* ¶¶ 87-91. Amazon addresses here the claim based on termination and addresses the claim based on remittance timing below. *See* Section III.D.

H2F's claim based on Amazon's termination of its selling privileges flatly contradicts the BSA and the at-will relationship it established. The BSA provides that Amazon "may terminate or suspend this Agreement or any [selling privileges] immediately by notice to you for any reason at any time," and likewise allows sellers such as H2F to terminate "for any reason at any time" by giving appropriate notice to Amazon. BSA § 3. The BSA does not require that a party must have cause for terminating; indeed, it does not even require a party to explain its reason for terminating. In traditional contract law parlance, the BSA is a classic at-will contract allowing termination for convenience.

Contractual at-will termination rights are fully enforceable under Washington law. For example, *Willis v. Champlain Cable Corp.*, 109 Wn.2d 747, 748 P.2d 621 (1988), upheld a manufacturer's termination of a sales representative based on their contract allowing either party to terminate with 30 days' notice. 109 Wn.2d at 748. The court said: "We … decline to modify the express terms of a written contract agreed to by competent parties," and thus,

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

"[u]nder the rule that contracts shall be enforced according to their terms … neither cause nor good faith is required before the agreement may be terminated."  *Id.* at 756-57, 759.

In *Myers v. State*, 152 Wn. App. 823, 218 P.3d 241 (2009), the court upheld DSHS's termination of its contract with an in-home caregiver when it determined the caregiver had been neglectful (although the determination was later reversed by an administrative law judge), because the parties' contract allowed DSHS to terminate based on its own findings or for convenience.  152 Wn. App. at 829.  Given the "plain language" of the contract and the "broad authority" it gave DSHS to terminate, the court affirmed summary judgment dismissal of the plaintiff's claims.  *Id.* at 829-30.

Similarly, *Mayer v. Pierce County Medical Bureau, Inc.*, 80 Wn. App. 416, 909 P.2d 1323 (1995), affirmed summary judgment dismissal of a physician's claims challenging an insurer's decision to terminate him as a preferred provider, because the governing contract unambiguously stated that it could be "cancelled by either party at any time."  80 Wn. App. at 420-21.  "Provisions providing for the at will cancellation of an agreement, although sometimes harsh, are enforceable in this State."  *Id.* at 422.

And, in *Evergreen International Airlines, Inc. v Boeing Co.*, 2010 U.S. Dist. LEXIS 140547, at *12-13 (W.D. Wash. June 9, 2010), on a 12(b)(6) motion, the court dismissed plaintiff's claims alleging improper termination and enforced Boeing's "unconditional right" under the parties' agreement to choose not to renew the agreement after its initial five-year term.  *Id.* at *7.  The court noted that the contract "provisions do not require any condition, circumstance, or reason to free Boeing from its obligations; they do not even require Boeing to explain itself."  *Id.*  Accordingly, "the Court must interpret this unequivocal cancellation provision to mean exactly what it says."  *Id.* at *7-8.

The Court likewise should enforce Amazon's unequivocal termination rights under the BSA.  H2F ignores the at-will nature of its seller agreement.  Instead, H2F purports to make out a contract claim based on Amazon statements encouraging sellers to report listings "that violate Amazon's policies or applicable law," and asking them to "[i]nclude

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 8

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

all relevant information so we can conduct a thorough investigation," and thereby enforce "Seller Rules … to maintain a selling platform that is safe for buyers and fair for sellers." Compl. ¶¶ 21, 22.  None of these provisions override Amazon's at-will termination rights or impose any obligation that it may only terminate for cause.

A contractual duty requires "a manifestation of intention to act or refrain from acting *in a specified way*, so made as to justify a promisee in understanding that a commitment has been made."  *Stewart v. Chevron Chem. Co*., 111 Wn.2d 609, 613, 762 P.2d 1143 (1988) (rejecting contract claim premised on general statements that do not "constitute promises of specific treatment in specific situations") (emphasis added); *see also Spooner v. Reserve Life Ins. Co*., 47 Wn.2d 454, 458, 287 P.2d 735 (1955) (rejecting contract claim that lacked "a real promise to be enforced" because performance was "optional or entirely discretionary on the part of the promisor").  The statements H2F cites do not give sellers any enforceable rights; they are not contractual obligations at all, but are requests to assist Amazon in policing its site.  H2F cannot point to any contractual obligation overriding Amazon's discretion to terminate selling privileges "for any reason at any time."

### C.   H2F Fails to State a Claim for Breach of Good Faith and Fair Dealing.

Although Washington recognizes that contracts contain an implied duty of good faith and fair dealing, the duty has limited application.  *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991).  "The 'duty arises only in connection with terms agreed to by the parties.'"  *Hayton Farms, Inc. v. Pro-Fac Corp.*, 2010 WL 5174349, at *8 (W.D. Wash. Dec. 14, 2010) (quoting *Badgett*, 116 Wn.2d at 569).  "It does not 'inject substantive terms into the parties' contract,' but rather 'requires only that the parties perform in good faith the obligations imposed by their agreement.'"  *Lapinski v. Bank of Am., N.A.*, 2014 WL 347274, at *5 (W.D. Wash. Jan. 30, 2014) (quoting *Badgett*, 116 Wn.2d at 569).  "The court cannot recognize 'a free-floating duty of good faith unattached to the underlying legal document.'"  *Hayton*, 2010 WL 5174349, at *8 (quoting *Badgett*, 116 Wn.2d at 563).  "If

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

there is no contractual duty, there is nothing that must be performed in good faith." *Johnson v. Yousoofian*, 84 Wn. App. 755, 762, 930 P.2d 921 (1996) (internal citation omitted).

Based on these principles, Washington law holds that the implied duty of good faith cannot restrict a party's right to terminate an at-will contract, because doing so would inject a "for cause" requirement contrary to the express contract terms. *See Evergreen Int'l Airlines, Inc.*, 2010 U.S. Dist. LEXIS 140547, at *12-13 (dismissing good faith claim because the "contract contemplated termination for any reason … and the implied duty of good faith did not impose a requirement that Boeing only terminate the contract for cause"); *see also Willis*, 109 Wn.2d at 756-57.

H2F's claims based on the implied duty of good faith are flawed as much as or more so than its contract claims. H2F seeks to engraft an implied "for cause" requirement into a contract that allows termination "for any reason at any time." Amazon cannot breach the duty of good faith by standing on its contractual rights. *See Badgett*, 116 Wn.2d at 570 ("As a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms.").

Here again, H2F seeks to create duties that contradict the express contract language. For example, H2F alleges "Amazon did not … perform an investigation," which it claims required "a systematic or official inquiry into Apple's allegations." Compl. ¶¶ 129-31. But the BSA paragraph H2F cites (BSA § 2, *see* Compl. ¶ 128),[8] does not impose any obligation on Amazon to perform ***any*** investigation (much less a "systematic or official" one) or give H2F rights to complain about any investigation Amazon chooses to do. Nothing in the BSA imposes any duty on Amazon to make "findings," as H2F also suggests

---

[8] Section 2 of the BSA states:  "If we conclude that your actions and/or performance in connection with the Agreement may result in customer disputes, chargebacks or other claims then we may, in our sole discretion, delay initiating any remittances and withhold any payments to be made or that are otherwise due to you under this Agreement for the shorter of:  (a) a period of ninety (90) days following the initial date of suspension; or (b) completion of any investigation(s) regarding your actions and/or performance in connection with the Agreement."  BSA § 2; *see* Compl. ¶ 128.

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 10

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

with no basis.[9]  Because Amazon has no such contract duties in the first place, "there is nothing that must be performed in good faith." *Johnson*, 84 Wn. App. at 762 (rejecting good faith claim because the contract "simply does not impose [the] obligation" alleged by plaintiff); *Coulos v. Desimone*, 34 Wn.2d 87, 98-99, 208 P.2d 105 (1949) (where nothing in the contract qualified the prohibition on assignment without consent, the landlord had the "full and arbitrary right to refuse to give his consent to an assignment").  Because Amazon could terminate at any time for any reason in its sole discretion, H2F has no right to ask this Court to second guess Amazon's reasons for doing so.  *See Myers*, 152 Wn. App. at 829 (dismissing good faith claim where the "plain language of [the contract] authorizes termination even when a finding of neglect is later determined to be unfounded").

Because H2F's claim for breach of the duty of good faith would override Amazon's express right to terminate "for any reason at any time," this claim fails as a matter of law.

### D. H2F Fails to State a Claim for Breach of Contract Based on Amazon's Withholding of Remittances Pursuant to the BSA.

H2F's other contract claim alleges Amazon failed "to credit H2F's account within 14 to 19 days of receiving monies from the purchaser."  Compl. ¶ 88.  This claim fails at the outset for the simple reason that H2F identifies no contract term imposing such a duty.  A plaintiff cannot assert a contract claim without identifying the contract duty the defendant allegedly breached.  *See N. Coast Enters., Inc. v. Factoria P'ship,* 94 Wn. App. 855, 861, 974 P.2d 1257 (1999) (affirming Rule 12(c) dismissal); *Muniz*, 2010 WL 4482107, at *3 ("[p]laintiff misunderstands the legal doctrine of breach of contract" when he "fails to point to any provision of the contract that Defendant breached …."; "a contract cannot be breached if [it] does not include the term in question).

---

[9] H2F cites Section 18 of the BSA, *see* Compl. ¶¶ 133-135, but that section says no such thing, and again underscores Amazon's broad rights to cancel transactions or sellers if it believes listings are inaccurate, unlawful or prohibited.  *See* BSA § 18 ("Amazon retains the right to immediately halt any transaction, prevent or restrict access to the Services or take any other action to restrict access to or availability of any inaccurate listing, any inappropriately categorized items, any unlawful items, or any items otherwise prohibited by the applicable Program Policies.").

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 11

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

Indeed, this claim also contradicts the BSA's express language.  Amazon has the right to "delay initiating any remittances and withhold any payments to be made or that are otherwise due" for "a period of ninety (90) days following the date of suspension [of a seller]."  BSA § 2.  As discussed, this withholding period is necessary after a seller is terminated to allow for offsets due to chargebacks, refunds, or A-to-z Guarantee claims.  *See id*.  The BSA further provides that Amazon will remit funds remaining in a seller's account after such chargebacks pursuant to the customary bi-weekly (*i.e.,* 14-day) schedule, allowing an additional 3-5 business days for funds to arrive in the seller's bank account.  *See id.* § S-6; *see also* Section II.A, above.[10]  In other words, payments received by H2F up to 109 days after suspension were timely under the BSA.

H2F alleges Amazon breached the BSA by holding funds for 92 and 98 days after suspending its accounts.  Compl. ¶ 89-91.  Yet that is well within the time period the BSA allows.  When a plaintiff alleges a contract promises one thing, yet the contract says something different, the Court should disregard the allegations in favor of the actual contract terms.  *See, e.g.*, *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1139-40 (9th Cir. 2013) (dismissing contract claims where parties' agreement contradicted allegations in complaint).  "Without a duty, there is no breach …."  *BP W. Coast Prods.*, 989 F. Supp. 2d at 1121(granting summary judgment dismissal where parties' contract imposed no duty on fuel supplier to always to have gasoline to fill orders); *Fid. & Deposit Co. of Md. v. Dally*, 148 Wn. App. 739, 745-46, 201 P.3d 1040 (2009) (granting summary judgment dismissal

---

[10] If H2F's allegation that Amazon was "require[d] to credit H2F's account within 14 to 19 days" is meant to refer to the customary remittance schedule in Section S-6 of the BSA, again it misreads the contract.  Section S-6 applies "[e]xcept as otherwise stated in … Section 2 of the [BSA]."  Section 2 is the provision allowing Amazon to withhold remittances for an additional 90 days after suspension or termination.  H2F's claim that "Amazon held [its] funds in excess of the time allowed by the Agreement" concerns **only** the withholding period **after** Amazon suspended H2F's selling privileges.  *See* Compl. ¶ 89.

Ironically, H2F elsewhere alleges Amazon violated Section 2 of the BSA "by not returning H2F's moneys within 90 days of [its] suspension," Compl. ¶ 132, thus admitting Amazon is entitled to apply this withholding period.  Apparently, H2F fails to understand that the time periods for remittances set forth in Sections 2 and S-6 are cumulative—*i.e.*, 90 days **plus** at least 14 days.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

where contract imposed no duty to use a specific payee or verify check endorsements). H2F cannot identify a breach of any duty relating to remittance of funds Amazon owed to it, and therefore, its second contract also claim fails.

### E.   H2F Has No Claim Under the Uniform Money Services Act.

H2F's claim under the Washington Uniform Money Services Act fails because the Act does not allow a private action for H2F's claim, and there is no basis to imply one.

H2F bases its UMSA claim on RCW 19.230.330, but notably fails to point out that that section of the statute contains no provision permitting a private party to sue. *See* Compl. ¶¶ 111-116.  Indeed, **no provision** of the UMSA provides for a private cause of action for section .330.  Lacking an express right of action, H2F must establish an implied right, but the Act and Washington law make clear there is none.

In Washington, courts consider three questions to determine whether a statute creates an implied cause of action:  "first, whether the plaintiff is within the class for whose 'especial' benefit the statute was enacted; second, whether the legislative intent, explicitly or implicitly, supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the legislation."  *Bennett v. Hardy*, 113 Wn.2d 912, 920, 784 P.2d 1258 (1990).  Ultimately, the issue turns on the statute's intent, as courts "will not imply a private cause of action when the drafters of a statute evidenced a contrary intent."  *Bird-Johnson Corp. v. Dana Corp.,* 119 Wn.2d 423, 428, 833 P.2d 375 (1992).

*First*, the Legislature did not enact the UMSA for the "especial" benefit of merchants such as H2F.  The Act's purpose was to establish a system for licensing and regulating "money transmission and currency exchange businesses, to ensure that these businesses are not used for criminal purposes, to promote confidence in the state's financial system, and to protect the public interest."  RCW 19.230.005.  When, as here, "a statute protects the general public instead of an identifiable class of persons, a plaintiff is not a member of the class for whose especial benefit the statute was enacted."  *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 210, 304 P.3d 914 (2013)

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

(statute enacted to protect the public generally from legend drugs allowed no private cause of action); *see Brummett v. Washington's Lottery*, 171 Wn. App. 664, 681 n.21, 288 P.3d 48 (2012) (lottery law "does not create a special class of people the legislature intended the statute to benefit," but was promulgated for the "general welfare of the people"); *Crisman v. Pierce Cnty. Fire Prot. Dist. No. 21*, 115 Wn. App. 16, 23, 60 P.3d 652 (2002) (campaign finance disclosure law's goal was "protecting the public rather than any individual candidate").  The UMSA does not mention *any* special class of people it is intended to protect, and certainly not merchants selling online or through other marketplaces.  *See Nisqually Indian Tribe v. Gregoire*, 623 F.3d 923, 929 (9th Cir. 2010) ("courts look to whether the plaintiffs that claim a cause of action exists are specifically mentioned as beneficiaries in the statute").  The express purpose of UMSA is to protect the state's financial system and the public interest generally, not to create a private cause of action for H2F or other merchants.

*Second*, the terms of the UMSA do not support creating an implied private remedy for H2F's claim, but indicate the opposite.  The Act creates a comprehensive regulatory scheme, vesting enforcement authority in the Director of Financial Institutions ("Director"), with one exception (discussed below).  The UMSA gives the Director the authority and discretion to:  (a) issue subpoenas and conduct investigations for "discovering violations" of the Act, RCW 19.230.130-.140; (b) suspend or revoke licenses, *id.* 19.230.230; (c) settle enforcement actions and obtain "payment to the department," *id*. 19.230.233; (d) seek temporary restraining orders, *id.* 19.230.240; (e) issue cease-and-desist orders, *id.* 19.230.260; (f) enter consent decrees, *id.* 19.230.270; and (g) assess "civil penalt[ies] against [any] person that violates" the Act, *id.* 19.230.290.  The Act also contains a statute of limitations for actions "brought under this chapter by the director," *id*. 19.230.340, again indicating its intent that enforcement falls to the Director.

The UMSA contains one provision permitting a private cause of action, RCW 19.230.350, concerning "third-party account administrators," *i.e.*, parties that hold or

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

administer bank accounts for consumers for debt relief services such as renegotiating, settling, or reducing debts to creditors.  RCW 19.230.350(3)(b).  Section .350 states that a person injured by a violation of *this section* may bring a civil action to recover … actual damages … or one thousand dollars" in addition to any remedies available under the CPA (emphasis added).  This underscores that the Legislature intended *to preclude* private claims for all other sections of the UMSA (leaving enforcement to the Director).  When the Legislature meant to provide for a private cause of action, it did so expressly.  It provided no such right under section .330, which is the basis for H2F's claim.

This is not a situation in which the Legislature created rights but provided no remedy.  *See Crisman*, 115 Wn. App. at 23 (no private right of action where statute could be enforced by attorney general or county prosecutors).  "[W]hen the Legislature has provided an adequate remedy in the statute"—as it has here—"no cause of action should be implied."  *Cazzanigi v. Gen. Elec. Credit Corp.*, 132 Wn.2d 433, 445, 938 P.2d 819 (1997).

*Third*, implying a private right of action would not only be inconsistent with the purposes of the UMSA but would undermine the Act.  The UMSA gives the Director broad powers but also "discretion to administer and interpret [the Act] to fulfill the intent of the legislature."  RCW 19.230.310.  This includes, for example, the discretion to waive requirements of the Act.  *See, e.g.*, RCW 19.230.020; 19.230.040(5).  To allow a plaintiff such as H2F to pursue claims and advance interpretations of the UMSA in a private action for its own interests would undermine the Act's purpose of empowering the Director to administer and apply the Act to further the "public interest."  RCW 19.230.005; 19.230.310. The UMSA is a comprehensive regulatory scheme that the Legislature intended the Director would apply, interpret, and enforce.  *Cf. Jepson v. Ticor Title Ins. Co.*, 2007 WL 2060856, at *2 (W.D. Wash. May 1, 2007) (no private right of action under Washington insurance law which was meant to create a mechanism for regulating the insurance industry); *accord Graham-Bingham Irrevocable Trust v. John Hancock Life Ins. Co. USA*, 827 F. Supp. 2d 1275, 1281-82 (W.D. Wash. 2011).

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 15

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1  H2F's attempt "to manufacture an implied right of action … has no merit" in light of

2  the UMSA's express terms and purpose.  *See Jepson*, 2007 WL 2060856, at *2.  This is an

3  "insuperable bar," *Protect the Peninsula's Future*, 175 Wn. App. at 214, and accordingly,

4  the Court should dismiss H2F's claim under UMSA.[11]

5          **F.      H2F Fails to State a Consumer Protection Act Claim.**

6          To state a claim under the Washington CPA, H2F must establish five elements:  "(1)

7  [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public

8  interest impact; (4) injury to plaintiff in his or her business or property; [and] (5)

9  causation."  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778,

10  780, 719 P.2d 531 (1986).  Failure to allege any one element is fatal to the claim.  *Id.* at

11  793.  H2F's claim improperly attempts to create a *per se* CPA claim—when there is no

12  such claim—and fails to show that Amazon engaged in any deceptive act or practice.

13          **1.      H2F Cannot Assert a Per Se CPA Claim.**

14          H2F makes no attempt to allege any actual deception, and instead rests its CPA

15  claim on a purported *per se* violation, alleging "Amazon's failure to follow the UMSA

16  constitutes a deceptive practice."  Compl. ¶ 139.   But H2F may assert a *per se* CPA claim

17  only if it can point to an express declaration by the Washington legislature that violation of

18  the statutory provision is a deceptive practice under the CPA.  *Hangman Ridge,* 105 Wn.2d

19  at 787.  H2F's CPA claim is premised on its claim under section .330 of the UMSA.  *See*

20  Compl. ¶¶ 139-142.  The UMSA contains no declaration that a claim under section .330 is a

---

21  [11] In any event, the Legislature amended section .330 of the UMSA in June 2014 to clarify that the
22  ten-day remittance requirement does not apply "when the transmission is for the payment of goods
    or services."  *See* RCW 19.230.330(1)(a) (2014).  Instead, funds transfers for such transactions are
23  governed by "the time frame agreed upon in the merchant's agreement," here the BSA.  *Id.*
    19.230.330(1)(b) (2014).  Because this amendment is "curative in that it clarifies or technically
24  corrects [any] ambiguous statutory language," it "will be applied retroactively."  *Barstad v. Stewart
    Title Guar.* Co., 145 Wn.2d 528, 536-37, 39 P.3d 984 (2002); *see also In re Pers. Restraint of
25  Michael Matteson*, 142 Wn.2d 298, 309, 12 P.3d 585 (2000) (amendment applied retroactively
    because it was "intended to be curative" and to "clarify the scope" of the prior statute); *McGee
26  Guest Home, Inc. v. DSHS*, 142 Wn.2d 316, 325-26, 12 P.3d 144 (2000) (same).  Thus, even if H2F
    could pursue a private claim under section .330, it would still fail because the amended statute
27  applies retroactively to make clear Amazon is exempt from the ten-day requirement.

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 16

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   *per se* violation of the CPA—indeed, as discussed above, the UMSA allows *no* private

2   action under section .330.  And, given that the Legislature expressly provided that violation

3   of the UMSA could be a *per se* CPA violation for only one section in the Act (RCW

4   19.230.350, concerning claims against third-party account administrators, as discussed

5   above), the fact that it did not prescribe CPA remedies for section .330 is obviously

6   intentional.  H2F has no basis to assert a *per se* CPA claim.  *See Robertson v. GMAC*

7   *Mortg. LLC*, 2013 WL 2351725, at *2 (W.D. Wash. May 30, 2013); *Minnick v. Clearwire*

8   *US, LLC*, 683 F. Supp. 2d 1179, 1186 (W.D. Wash. 2010).

9                    **2.    H2F Otherwise Does Not Allege Any Basis for a CPA Claim.**

10          Other than its mistaken reliance on the UMSA, H2F alleges no basis (or plausible

11   facts) to assert a CPA claim against Amazon.  The complaint recites that Amazon's acts

12   "were capable of deceiving a substantial part of the public."  Compl. ¶ 141.  But this is a

13   formulaic recitation that does not state a plausible claim.  *Twombly*, 550 U.S. at 555.

14   Further, H2F cannot allege deception because the BSA expressly discloses and allows the

15   conduct about which H2F complains.  *See Robinson v. Avis Rent A Car Sys., Inc.,* 106 Wn.

16   App. 104, 119, 22 P.3d 818 (2001) (no "deceptive act … because the car rental companies

17   disclosed the concession fee to the consumers"); *Smale v. Cellco P'ship*, 547 F. Supp. 2d

18   1181, 1186, 1188-89 (W.D. Wash. 2008) (dismissing CPA claim because Verizon's

19   contract permitted the alleged deceptive act, explaining "any reasonable consumer reading

20   the Agreement would realize that Verizon reserved the right to assess surcharges"); *Lowden*

21   *v. T-Mobile USA, Inc*., 2009 WL 537787, at *3 (W.D. Wash. Feb. 18, 2009), *aff'd*, 378 Fed.

22   Appx. 693 (9th Cir. 2010) (dismissing CPA claim because plaintiff's "contract sufficiently

23   disclosed" and permitted the alleged deceptive practices).

24          H2F also fails to allege causation or any cognizable injury under the CPA.  H2F

25   alleges only that it suffered injury and lost money by … being prevented timely access to

26   [its] funds," Compl. ¶ 142, but alleges no actual losses, *i.e.*, that "[its] money has been

27   diminished."  *Ambach v. French*, 167 Wn.2d 167, 173, 216 P.3d 405 (2009); *see also*

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 17

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Lapinski*, 2014 WL 347274, at *6.  The CPA does not contemplate non-economic injuries, so a claim based on mere delay, inconvenience or "aggravation and annoyance" is not cognizable.  *See, e.g.*, *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57, 204 P.3d 885 (2009); *Gragg v. Orange Cab Co.*, 942 F. Supp. 2d 1111, 1119 (W.D. Wash. 2013).

    **G.**    **H2F Fails to State Any Antitrust Claim.**

        H2F's complaint does not come close to alleging facts sufficient to state a claim under federal or state antitrust law, 15 U.S.C. §1, and RCW 19.86.  Compl. ¶¶ 98-109.[12] The purpose of the federal antitrust law "is not to protect businesses from the working of the market .... The law directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself."  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993).  Thus, the Sherman Act "outlaw[s] only unreasonable restraints" on competition.  *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997).  To state a claim, under Section 1 of the Sherman Act, a plaintiff must allege facts that establish:

> (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition.  In addition to these elements, plaintiffs must also plead (4) that they were harmed by the defendant's anticompetitive contract, combination, or conspiracy, and that this harm flowed from an anti-competitive aspect of the practice under scrutiny.

*Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012) (internal quotations and citation omitted).  H2F wholly fails to establish these elements.

        **1.**    ***H2F Fails to Plausibly Allege an "Agreement" to Restrain Trade.***

        H2F fails to allege the first and most fundamental element of a Section 1 claim—an agreement to restrain competition.  To state a Section 1 claim, H2F is required to allege facts "tend[ing] to prove that [the parties] had a conscious commitment to a common

---

[12] "RCW 19.86.030 prohibiting contracts or conspiracies in restraint of trade is our State's equivalent of section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1," *State v. Black*, 100 Wn.2d 793, 799, 676 P.2d 963 (1984), and thus, H2F's state claim rises and falls with its Sherman Act claim.  *Accord Hairston v. Pacific-10 Conference*, 893 F. Supp. 1485, 1493 (W.D. Wash. 1994).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984). As the Supreme Court said in *Twombly* (an antitrust case), "labels and conclusions" do not suffice. 550 U.S. at 555. A plausible Section 1 claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 556. "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 556. *Twombly* describes H2F's antitrust claim to a T.

H2F alleges nothing to show Amazon made an agreement with Apple to restrain competition. It instead makes the bare and conclusory allegation that "Apple and Amazon have engaged in conspiratory and/or concerted action" and speculates that Apple delayed resolution of H2F's dispute to give Amazon time to establish reasons to close H2F's account. Compl. ¶ 103; *see id.* ¶¶ 104, 105, 108. But this speculation in no way suggests an agreement ***by Amazon*** to restrain competition. H2F's allegations simply suggest Amazon took action to enforce its seller policies and prevent sales of suspected counterfeit goods. This is "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market," and thus does not support a plausible Section 1 claim. *Twombly*, 550 U.S. at 554. H2F's "conclusory allegation of [some unidentified] agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 557; *see also Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008) (dismissing claims alleging an "agreement among all financial institutions" to charge the same minimum fee to merchants for credit card transactions because plaintiffs "failed to plead any evidentiary facts beyond parallel conduct to prove their allegation of conspiracy").[13] Without alleging plausible facts of any agreement between Amazon and Apple, H2F's antitrust claims fail as a matter of law.

---

[13] H2F's other allegations make its conspiracy claim even more implausible. H2F alleges it was a high-volume "top-notch" Amazon seller, with over $3 million in sales. Compl. ¶¶ 23-24. Amazon

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 19

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## 2.   H2F Fails to Allege a Relevant Market.

In order to allege that an agreement unreasonably restrains competition, a plaintiff "must identify the relevant geographic and product markets in which [it] and Defendants compete and allege facts demonstrating that Defendants' conduct has an anticompetitive effect on those markets." *Big Bear Lodging Ass'n v. Snow Summit, Inc.,* 182 F.3d 1096, 1104-05 (9th Cir. 1999). "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).

H2F's complaint makes no attempt to define a relevant market, offering neither a product nor geographic definition. This alone warrants dismissal. *See Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1064-65 (9th Cir. 2001) (dismissing claim where plaintiff "failed to identify an appropriately defined product market"); *Big Bear Lodging,* 182 F.3d at 1104-05 (dismissing claim where plaintiffs failed to "identify the relevant geographic and product markets in which [they] and Defendants compete"); *Pa. Ave. Funds v. Borey*, 569 F. Supp. 2d 1126, 1134-35 (W.D. Wash. 2008) ("The court must dismiss Plaintiff's antitrust claim, because Plaintiff has not alleged the existence of a relevant market in which [defendants] had market power.").

The only products H2F mentions regarding its antitrust claims are two Apple iPad covers sold only on Amazon.com under two specific identification numbers ("ASINs"). *See* Compl. ¶¶ 104-106; *id.* ¶ 26 & n.3 (referring to these as "the Items"). If H2F means for this to be a "market," the complaint's market definition is invalid because it excludes all the other iPad covers sold in the United States online or in stores (whether licensed by Apple or manufactured by others), as well as all possible substitutes.[14]   *See* Compl. ¶ 43 (admitting

---

has an obvious disincentive to conspire to remove successful sellers (assuming they comply with policies and rules).

[14] Many sellers offer iPad covers on Amazon.com under a number of different ASINs. *See* http://www.amazon.com/s/ref=nb_sb_noss_1?url=search-alias%3Daps&field-keywords= ipad%20cover&sprefix=ipad+%2Caps.

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 20

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

that iPad covers were sold by other entities in these sales channels).  H2F cannot create (or rely on) such a "him-and-me market" for antitrust purposes.  *See Tanaka*, 252 F.3d at 1065 ("By attempting to restrict the relevant market to a single athletic program in Los Angeles based solely on her own preferences, [plaintiff] has failed to identify a relevant market for antitrust purposes."); *Big Bear Lodging*, 182 F.3d at 1105 (plaintiffs failed to allege "anticompetitive effects within appropriately defined markets").  The Court should dismiss H2F's antitrust claims for this independent reason as well.

### 3.   *H2F Fails to Allege Injury to Competition in Any Properly-Defined Market.*

The antitrust laws were enacted for "the protection of competition, not competitors." *Brown Shoe*, 370 U.S. at 320.  As a result, a Sherman Act plaintiff must also allege facts to show "injury to the market or to competition in general, not merely injury to individuals or individual firms."  *McGlinchy v. Shell Chem. Co*., 845 F.2d 802, 812 (9th Cir. 1988).  "Proving injury to competition … almost uniformly requires a claimant to prove the relevant market and to show the effects of competition within that market."  *Am. Ad Mgm't, Inc. v. GTE Corp*., 92 F.3d 781, 789 (9th Cir. 1996).  "Plaintiffs may not substitute allegations of injury to the claimants for allegations of injury to competition," and "must allege an actual adverse effect on competition" caused by the practice at issue.  *Brantley*, 675 F.3d at 1200.

H2F's only allegation of supposed injury is that, during its tenure as an Amazon seller, it sold the two iPad covers for certain prices, other sellers on Amazon.com offered the covers at higher prices, and after Amazon terminated H2F, other sellers did not lower prices to be less than H2F's prior prices.  Compl. ¶¶ 105-106.  Even assuming H2F's allegations were true, they do not show injury to competition in a relevant market.  By failing to account for substitute goods, H2F makes no effort to account for the prices of competing products (either sold on Amazon.com or elsewhere), much less how H2F's termination from a single sales platform impacted market-wide prices for, or supply of, competitive products.  Indeed, H2F nowhere alleges that even *it* was excluded from

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 21

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

competition, nor would such an allegation be plausible.  H2F could have continued selling through any other channels, including its own website, in stores, or on other online sales platforms such as eBay.   It thus fails to allege competitive injury.  *See, e.g.*, *Les Schockley Racing, Inc. v. Nat'l Hot Rod Ass'n.*, 884 F.2d 504, 508 (9th Cir. 1989) ("removal of one or a few competitors need not equate with injury to competition"); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735-36 (9th Cir. 1987) (termination of a single distributor does not create plausible inference of harm to competition).

As the Ninth Circuit explained in affirming dismissal of a Sherman Act claim premised on conclusory allegations like H2F's:

> Although proof of plaintiffs' allegations would establish harm to their business interests, such proof would not, standing alone, show injury to competition in the market as a whole. … [N]one of the factual allegations in plaintiffs' complaint suggests a market in which the removal of eight plaintiffs from a pool of competing sellers would adversely and unreasonably affect overall competitive conditions.

*Les Schockley*, 884 F.2d at 508-09.  H2F alleges only harm to its own business and only its removal from one online selling platform.  None of this constitutes a sufficient showing of an adverse effect on competition in any relevant market.  Thus, H2F has "failed to state a claim under Sherman Act § 1 that would justify any measure of relief."  *Id.* at 509; *see also Brantley*, 675 F.3d at 1204 ("the complaint does not include any allegation of injury to competition, as opposed to injuries to the plaintiffs"); *McGlinchy,* 845 F.2d at 813 ("failure to allege injury to competition is a proper ground for dismissal"); *Alliance Shippers, Inc. v. S. Pac. Transp. Co.*, 858 F.2d 567, 570 (9th Cir. 1988) (plaintiff "alleged no injury to competition; [it] alleged only injury to itself").

### 4.  *H2F Cannot Assert a Per Se Sherman Act Claim.*

Recognizing it cannot plead the requisite elements to show an "unreasonable restraint," H2F seeks to assert a *per se* violation of the Sherman Act, alleging alternatively that "Amazon and Apple … engaged in horizontal price fixing."  Compl. ¶¶ 107-109.  But even an alleged *per se* violation of Section 1 requires proof of an unlawful agreement—"a

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   conscious commitment to a common scheme designed to achieve an unlawful objective."

2   *Monsanto*, 465 U.S. at 768.  As explained, H2F has alleged nothing to show ***any*** agreement.

3   More fundamentally, H2F cannot allege a *per se* violation because horizontal price-fixing is,

4   by definition, an agreement "between ***competitors***," *i.e.*, those operating on the same level

5   of a product's market.  *Brantley*, 675 F.3d at 1197-98 (emphasis added).  Apple licenses the

6   manufacture and sale of iPad covers, certain third parties to sell the covers on Amazon.com

7   (and many others sell different iPad covers on the site).  At most, H2F has alleged nothing

8   more than a vertical relationship (once removed) between a manufacturer (Apple) and

9   service provider (Amazon) to that manufacturer's distributors, not a horizontal relationship.

10   H2F has alleged nothing to show this relationship "would always or almost always tend to

11   restrict competition and decrease output …, have manifestly anticompetitive effects, and

12   lack any redeeming virtue."  *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S.

13   887, 886 (2007) (quotations omitted).  The Supreme Court has been "reluctan[t] to adopt

14   *per se* rules with regard to restraints imposed in the context of business relationships where

15   the economic impact of certain practices is not immediately obvious."  *Id.* at 887.  Even

16   apart from a lack of agreement, H2F has not shown any basis to adopt a *per se* rule here.

17               **H.      H2F Cannot Assert a Claim for Breach of Fiduciary Duty.**

18           H2F alleges Amazon "assumed a fiduciary relationship with H2F" and breached

19   unidentified "fiduciary duties."  Compl. ¶¶ 145-148.  But the BSA makes clear the parties

20   have no fiduciary relationship:  "You and we are independent contractors, and nothing in

21   the Agreement will create any partnership, joint venture, agency, franchise, sales

22   representative, or employment relationship between us."  BSA § 13.  No fiduciary

23   relationship exists because the parties "entered into a contract that specifically provided that

24   [defendant] was ***not*** Plaintiff's agent."  *Brazier v. Sec. Pac. Mortg., Inc.*, 245 F. Supp. 2d

25   1136, 1143 (W.D. Wash. 2003) (emphasis added).  H2F cannot show the existence of any

26   fiduciary duty, much less a breach of such a non-existent duty.  *See id.*; *see also TMP*

27   *Worldwide Adver. & Commc'ns, LLC v. LATCareers, LLC*, 2008 WL 4603404, at *4 (W.D.

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 23

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   Wash. Oct. 16, 2008) (dismissing fiduciary duty claim because "[u]nless the contract

2   provides otherwise, one party to a contract does not become an agent of the other).

3        **I.       H2F Cannot State a Claim for Unjust Enrichment.**

4        Finally, H2F's claim for unjust enrichment, *see* Compl. ¶¶ 150-151, fails as a matter

5   of law.  "Under Washington law, a plaintiff who is a party to a valid express contract is

6   bound by the provisions of that contract and may not bring a claim for unjust enrichment

7   for issues arising under the contract's subject matter."  *Minnick*, 683 F. Supp. 2d at 1186

8   (internal quotation omitted).  Because H2F affirms the BSA governs this dispute, and

9   asserts claims under that contract, it cannot bring an unjust enrichment claim.  *See id.*; *U.S.

10  ex rel. Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1204 (9th Cir. 2002)

11  ("[h]aving affirmed the validity of the [contract], Walton cannot proceed against Weststar

12  by way of unjust enrichment"); *Westcott v. Wells Fargo Bank, N.A*, 862 F. Supp. 2d 1111,

13  1116 (W.D. Wash. 2012) ("a party cannot bring an action for implied contract or quasi-

14  contract where a valid written agreement covers the parties' dispute"); *Swartz v. Deutsche

15  Bank*, 2008 WL 1968948, at *25 (W.D. Wash. 2008) (dismissing unjust enrichment claim

16  where plaintiff "su[ed] based on the express terms of the written agreements he signed").

17       **J.       The Court Should Dismiss H2F's Claims with Prejudice.**

18       In granting a Rule 12(b)(6) motion, the Court should freely allow leave to amend

19  "when justice so requires."  Fed. R. Civ. P. 15(a).  However, "[l]eave to amend need not be

20  granted, and dismissal may be ordered with prejudice, if amendment would be futile."

21  *Cagle v. Abacus Mortg., Inc*., 2014 WL 4402136, at *2 (W.D. Wash. Sept. 5, 2014).  Here,

22  the Court should dismiss H2F's claims with prejudice because, as shown above, they are

23  premised on faulty legal theories, and therefore cannot be saved by additional pleading.

24  *See Bhatti v. Guild Mortg. Co*., 2011 WL 6300229, at *3 (W.D. Wash. Dec. 16, 2011).

25                          **IV.   CONCLUSION**

26       For the foregoing reasons, Amazon respectfully requests that the Court dismiss

27  H2F's complaint in its entirety, with prejudice.

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 24

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    DATED this 11th day of September, 2014.

2                                         DAVIS WRIGHT TREMAINE LLP

3                                         By: s/ James C. Grant
4                                             James C. Grant, WSBA #14358
                                              John A. Goldmark, WSBA #40980
5                                             Tom Wywrich, WSBA #45719
                                              1201 Third Avenue, Suite 2200
6                                             Seattle, Washington  98101-3045
                                              Tel:  (206) 622-3150
7                                             Fax:  (206) 757-7700
                                              Email: jamesgrant@dwt.com
8                                                     johngoldmark@dwt.com

9                                             Attorneys for Amazon.com, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

CERTIFICATE OF SERVICE

I certify that on September 11, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 11th day of September, 2014.


By: *s/ James C. Grant*
James C. Grant, WSBA #14358

AMAZON'S MOTION TO DISMISS (14-cv-0950-RSM) - 26

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200
1201 Third Avenue
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax