MATTHEW Z. CROTTY                                   The Honorable Ricardo S. Martinez
Crotty & Son Law Firm, PLLC
421 West Riverside, Suite 1005
Spokane, WA 99201-0300
Telephone: 509.850.7011
Facsimile: 509.703.7957

BRADLEY C. CROCKETT
Layman Law Firm, PLLP
601 S. Division Street
Spokane, Washington 99202
Telephone: 509.455.8883
Facsimile: 509.624.2902

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HARD2FIND ACCESSORIES, INC. | **NO. 14-CV-0950-RSM** |
| Plaintiff, | PLAINTIFF'S RESPONSE TO DEFENDANT AMAZON'S MOTION TO DISMISS |
| v. | |
| AMAZON.COM, INC., a Delaware Corporation; and, APPLE, INC., a California Corporation. | Note on Motion Calendar: October 3, 2014 |
| Defendants. | |

## I.      INTRODUCTION & SUMMARY OF ARGUMENT

Amazon seeks to avoid its violations of Washington law, federal law, and its own contracts with Hard2Find Accessories, Inc. ("H2F") by asking the Court to reinstate code pleading, ignore its contracts' terms, and disregard the governing law. H2F states claims upon which relief should be granted and Amazon's Motion to Dismiss should be denied because:

1.     The single line of Amazon's Business Solutions Agreement ("BSA") - - one of the many documents at issue in this case - - - that Amazon claims allows it to terminate H2F's contract "for any reason at any time" cannot "serve as an eternal escape hatch"[1] for Amazon given (a) the numerous contracts between Amazon and H2F and the parties' conduct relating to the same (b) Amazon's acts that modified the "at will" contract termination clause and (c) the unequal bargaining power between the parties all of which require Amazon to use good faith in exercising the termination "for any reason at any time" provision.

2.     Washington law imparts the duty of good faith on a party who enjoys discretionary authority under a contract, Amazon admits to possessing such discretionary authority, and Amazon violated its obligation to execute its contractual undertakings in good faith by not performing a proper (if any) investigation, failing to reopen H2F's account, failing to remit H2F's monies violating the BSA, and misleading H2F as to the reasons for shutting its business.

3.     H2F's allegation that Amazon failed to comply with the BSA's 14-day money remittance timeframe states a breach of contract claim given the BSA's terms; and, whether those terms are ambiguous are issues inappropriate for a Rule 12 motion.

4.     H2F properly pleads a private right of action under the Uniform Money Services Act (UMSA) because the UMSA does not foreclose a private right of action, a private cause of action is consistent with the UMSA's legislative intent, and the Washington State Department of Financial Institutions ("DFI") - - the entity Amazon claims has sole authority to enforce UMSA claims - - does not claim exclusive enforcement authority as it has enforced only one UMSA action in the past 10 years.

---

[1] *Swanson v. Liquid Air Corp.,* 118 Wn.2d 512, 532 (1992).

RESPONSE TO AMAZON'S
MOTION TO DISMISS (14-CV-0950-RSM) - 2

5.      H2F pleads a right to recover under Washington's Consumer Protection Act given Amazon's unfair and deceptive practice, which undisputedly occurred in trade and commerce, of requiring H2F to agree to UMSA violations and withholding H2F's monies in violation of the UMSA - - an act that deprived H2F of its money which, in turn, establishes H2F's CPA injury and causation elements as a matter of law.

6.      H2F's anti-trust claim exceeds *Twombly's* pleading requirement as H2F alleges an agreement to restrain trade in accordance with 9th Circuit precedence, establishes a relevant market in accordance with 9th Circuit precedence, and convincingly pleads injury to competition given H2F's price fixing allegation and facts in support.

7.      H2F's fiduciary duty breach claim survives Rule 12 scrutiny given Amazon's Service Participation Agreement contract that establishes the H2F-Amazon agency relationship needed to plead H2F's claim.

8.      H2F's unjust enrichment claim is properly predicated on Amazon's failure to comply with the UMSA, grounds separate from the BSA which Amazon contends forecloses H2F's claim.

Amazon runs roughshod over small business like H2F, many of which lack the resources to fight an entity analogous to a bully.[2] It now must be held accountable. Amazon's Motion to Dismiss should be denied.

## II.      ARGUMENT

**A.      H2F's complaint survives Fed. R. Civ. P. 8(a) scrutiny.**

---

[2] Amy Martinez, Amazon sellers complain of tied-up payments, account shutdowns, Seattle Times November 17, 2012, *available at,* http://seattletimes.com/html/businesstechnology/2019705292_amazonseller18.html (last visited September 25, 2014).

Fed. R. Civ. P. 8(a)(2) requires a statement of a claim and does not require the plaintiff to show the claim will succeed on the merits. *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 515 (2002). If a defendant alleges that a plaintiff's factual allegations are insufficient to state a claim, the court reviews the allegations under Fed.R.Civ.P. 8(a)'s liberal pleading standards, construes allegations in a light favorable to the non-moving party, accepts the pled facts as true, and draws reasonable inferences in favor of the non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 946 (9th Cir.2005); *Wyler Summit P'ship v. Turner Broad. Sys., Inc.,* 135 F.3d 658, 661 (9th Cir.1998). Contrary to what Amazon suggests, *Twombly* does not "require heightened fact pleading of specifics" nor does it reinstate, as Amazon desires, code pleading under Fed. R. Civ. P. 8(a) as discovery rules exist to develop the fact record necessary to define the issues genuinely in dispute. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Swierkiewicz,* 534 U.S. at 512. H2F's complaint comports with Fed. R. Civ. P. 8(a).

**B.    H2F properly pleads its breach of contract and bad faith claims.**

  *1.    The Amazon – H2F contract contains promises Amazon breached.*

Amazon argues that the contractual relationship between it and H2F is limited to the BSA and the BSA's "at will" termination provision defeats H2F's claims. (Dkt. 15, p. 7; Dkt. 16, p. 5, ¶3) Amazon construes the contractual relationship between it and H2F too narrowly: the relationship encompasses the BSA, Amazon's Service Participation Agreement, Amazon's Program Policies, and Amazon's communication with H2F (collectively "Amazon Contract"). (Dkt. 1, ¶¶12, 20-22, 26, 92-96, 146) *Pub. Util. Dist. No. 1 of Lewis Cnty. v. Washington Pub. Power Supply Sys.,* 104 Wn.2d 353, 374 (1985)(analyzing multiple documents governing parties' relationship); *Millican of Washington, Inc. v. Wienker Carpet Serv., Inc.,* 44 Wn. App. 409, 413 (1986)("[E]ach written term of a contract need not be bargained for."); *Bell v. Hegewald,* 95 Wn.2d

686, 690 (1981)("A contract … may arise by inference or implication from circumstances…according to the ordinary course of dealing and the common understanding.").

To that end Amazon, per the Amazon Contract, committed  (1) to conduct a "thorough investigation" of customer complaints (Dkt. 1, ¶21), (2) to be "fair" to sellers like H2F (Dkt. 1, ¶22), (3) to "resolve" (read: reopen) H2F's account once Apple withdrew its complaint (Dkt. 1, ¶¶26, 56, 68), and (4) to evaluate reopening H2F's account upon receipt of H2F's plan addressing alleged customer complaints. *Id.* ¶¶75, 77. Those undertakings are promises,[3] promises are contractual obligations, and H2F pleads facts that it had a "justified understanding" that Amazon would comply with those promises. (Dkt. 1, ¶¶26, 58, 64, 66, 67, 70-71, 75-79) *Apollo, Inc. v. Parsons Infrastructure & Tech. Grp., Inc.,* 2005 WL 1405029 (E.D. Wn. June 15, 2005)("A contract is "a promise or a set of promises.") Whether a promise exists "depends on the understanding and intent of the parties, business custom, the nature of the employment, the situation of the parties and the surrounding circumstances." *See Goodpaster v. Pfizer, Inc.,* 35 Wn. App. 199, 202-03 (1983); *Baldwin v. Trailer Inns, Inc.,* 266 F.3d 1104, 1118 (9th Cir. 2001); *Hedges v. Hurd,* 47 Wn.2d 683 (1955)("[W]here an agreement might be too indefinite on its terms to be specifically enforced, it may be certain enough to constitute a valid contract, the breach of which may give rise to damages.") The existence of, reliance on, and justifications regarding those promises should not be decided on a motion to dismiss, *Velazquez v. GMAC Mortgage Corp.,* 605 F. Supp. 2d 1049, 1070-71 (C.D. Cal. 2008) as "[a] question of interpretation of an… agreement is to be determined by the trier of fact." *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.,*

---

[3] A "promise" means "[t]he manifestation of an intention to act or refrain from acting in a specified manner, conveyed in such a way that another is justified in understanding that a commitment has been made." Black's Law Dictionary, at 984 (7th Ed. 2000).

268 F.3d 829, 837 (9th Cir. 2001).

H2F properly pleads that Amazon breached its contracts' terms by not conducting a "thorough investigation" into Apple's counterfeit allegation against H2F, by not reopening H2F's account upon Apple withdrawing its complaint and/or receiving H2F's plan, and by not maintaining a selling platform "fair for sellers."[4] (Dkt. 1, ¶¶92-96) Additionally, Amazon's BSA (Dkt. 16, p. 9) provides that the Agreement supersedes "previous or contemporaneous oral or written agreements and understandings" *not* future written agreements or understandings; e.g. Amazon's undertaking to reopen H2F's account upon "resolv[ing]" Apple's counterfeit claim.

## 2. ***Amazon's "at will" termination clause does not defeat H2F's claims.***

Amazon's argument that its "at will" termination clause bars H2F's claims fails. (Dkt. 15, p. 7) <u>First</u>, contracts containing "at will" termination provisions are modified by subsequent correspondence. *See Swanson v. Liquid Air Corp.,* 118 Wn.2d 512, 519, 534-535 (1992). H2F pleads that Amazon modified the BSA via June 14, 2013, correspondence which stated H2F's "dispute" with Apple - - the event led Amazon to close H2F's selling account on June 17, 2013 - - - would be "resolve[d]" upon Apple withdrawing its complaint and/or submitting a complaint avoidance plan and that Amazon breached those undertakings. (Dkt. 1, ¶¶26, 56, 59, 75) <u>Second</u>, such "at will" disclaimers must be effectively communicated to the other party in order to be

---

[4] If Amazon disputes H2F's allegation that the terms "thorough investigation", "resolve", and "fair" are promises then the "meaning of specific contractual terms [become] unclear" thus allowing evaluation of "extrinsic evidence, such as '(1) the subject matter and objective of the contract, (2) all the circumstances surrounding the making of the contract, (3) the subsequent acts and conduct of the parties, and (4) the reasonableness of respective interpretations urged by the parties.'" *Contractors Equip. Maint. Co. ex rel. U.S. v. Bechtel Hanford, Inc.,* 514 F.3d 899, 903 (9th Cir. 2008); *Sentry Select Ins. Co. v. Royal Ins. Co. of Am.,* 481 F.3d 1208, 1221 (9th Cir. 2007).

effective. *Id.* Here Amazon submits no proof that the "at will" provision of the BSA was communicated to H2F or that H2F signed the BSA with the "at will" provision. Indeed, H2F did not sign the BSA Amazon submits in support of its Motion to Dismiss nor is H2F's name listed on the BSA. (Dkt. 16) As such, H2F disputes the authenticity of the BSA contained in Dkt. 16. Third, whether the parties "intended policies in an employment document [by analogy: Amazon's Program Policies & Seller Rules that promise a "thorough investigation" and a platform "fair to sellers"] to be part of their employment contract [by analogy: Amazon's BSA and/or Participation Agreement] involves an issue of fact." *Swanson,* 118 Wn. 2d at 523. Fourth, the obligation of good faith applies to unrestricted contract termination clauses when unequal bargaining power or reliance are present. *See Triangle Min. Co. v. Stauffer Chem. Co.,* 753 F.2d 734, 740-741 (9th Cir. 1985)(*citing Busam Motor Sales v. Ford Motor Co.,* 85 F. Supp. 790, 796 (S.D. Ohio 1949); *deTreville v. Outboard Marine Corp.,* 439 F.2d 1099, 1100 (4th Cir. 1971)("[R]egardless of broad unilateral termination powers, the party who terminates a contract commits an actionable wrong if the manner of termination is contrary to equity and good conscience."); *Randolph v. New England Mut. Life Ins. Co.,* 526 F.2d 1383, 1386 (6th Cir. 1975)("[T]he better reasoned line of cases has imposed a duty of good faith on the exercise of a facially unrestricted termination clause.")).[5] H2F alleges that Amazon did not act in good faith in, *inter alia,* conducting the investigation that led to H2F's termination. (Dkt. 1, ¶126-135) And *Triangle* applies because H2F relied on - - - by

---

[5] *Triangle* found no good faith obligation existed in a contract containing an unrestricted termination clause because the contract's termination provision was "negotiated [by the parties] for more than a year" and the parties had equal bargaining power. *Triangle,* 753 F.2d at 741. Those facts do not exist here as Amazon and H2F do not share equal bargaining power and H2F had no role in negotiating the Amazon Contract. (*Compare* Dkt 1, ¶9 n.1 setting out Amazon's 2012 $83 billion aggregate market value (Amazon's SEC 10-k, pg. 3) *with* Dkt. 1, ¶ 23, H2F's $3 million in sales for 2012)

retaining counsel to engage both Apple and Amazon from June 2013 through September 2013 to get the account reinstated vice dedicating business resources elsewhere (Dkt. 1, ¶¶26, 63, 67, 70, 74, 77) - - - Amazon's representation that the Apple matter would be "resolved" if Apple withdrew its complaint and Amazon's representation that the account would be reinstated upon submission of H2F's plan.[6] (Dkt. 1, ¶26, 56, 59, 75) Additionally, H2F and Amazon do not share equal bargaining power. *See supra.* <u>Fifth</u>, inconsistent representations and practices negate a disclaimer's effect. *Swanson,* 118 Wn.2d at 532. Here Amazon's "at will" termination clause is inconsistent with its promises to maintain a platform "fair to sellers," conduct a "thorough investigation," and "resolve" H2F's account closure upon Apple withdrawing its complaint.

Amazon cites *BP W. Coast Prods. LLC v. SKR, Inc., Johnson v. Microsoft,* and *Muniz v. Microsoft* (Dkt.15, p. 7) for the proposition that "a contract cannot be breached if [it] does not include the term in question." Those cases do not apply here because H2F identified the contract terms at issue. Amazon then cites *Willis v. Chaplain Cable, Myers v. State, Mayer v. Pierce Co. Med. Bureau, Evergreen Int'l Air, Inc. v. Boeing, Stewart v. Chevron,* and *Spooner v. Reserve Life Ins.* for the proposition that "at will" termination rights are enforceable in Washington. (Dkt. 15,

---

[6] Whether H2F's reliance was justified is an issue of fact. *See Swanson,* 118 Wn.2d at 525 ("[T]he questions whether statements in employee manuals, handbooks, or other documents amount to promises of specific treatment in specific situations, whether plaintiff justifiably relied upon any such promises, and whether any such promise was breached present material issues of fact."). Indeed courts "cannot allow one party's 'double-secret' interpretation of a word to undermine the other party's justified expectations as to what that word means." *Scribner v. Worldcom, Inc.,* 249 F.3d 902, 908 (9th Cir. 2001). H2F's complaint pleads similar conduct insofar as Amazon requiring H2F to access the Agreement's "Prohibited Content" but not posting that policy. (Dkt. 1, ¶57)

p. 7 – 8) Notwithstanding *Evergreen,* those cases occurred in an employer-employee context and were resolved at trial or on summary judgment. And the unpublished *Evergreen* opinion is distinguishable because it involved a single contract (not the case here), involving two parties with ostensibly equal bargaining power (not the case here), that was not modified (as is the case here) by one party's course of dealing with the other.

> ### 3. *Amazon has not performed its contract in good faith.*

Amazon argues that H2F has no good faith claim since "Amazon could terminate [the BSA] at any time for any reason in *its sole discretion.*" (Dkt. 15, at 11)(emphasis added). The Ninth Circuit and Washington courts disagree. <u>First</u>, "every contract implies good faith and fair dealing between the parties to it." *Anderson v. Gen. Motors Corp.,* 161 F. Supp. 668, 674 (W.D. Wn. 1958); *Jones Associates, Inc. v. Eastside Properties, Inc.,* 41 Wn.App. 462, 471 (1985). <u>Second</u>, the discretionary contractual powers Amazon possesses "must be exercised 'within the parameters of the duty of good faith'" especially "where one party retains, by virtue of the contract, a right of approval or disapproval or a discretionary power over the rights of the other." *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.,* 86 Wn.App. 732, 738 (1997)("The covenant of good faith applies when the contract gives one party discretionary authority to determine a contract term.") <u>Third</u>, "the law cannot allow contracting parties to deceive one another when there is a duty to act in good faith." *Liebergesell v. Evans*, 93 Wn.2d 881, 891-892 (1980).[7]

Here H2F alleges that Amazon acted in bad faith by, *inter alia,* (a) not properly investigating Apple's counterfeit allegations (b) by exercising its discretion to terminate the

---

[7] *Liebersgell* also applies to H2F's UMSA claim.  On remand *Liebersgell* found that a breach of contract/good faith may arise when a party fails to disclose usurious terms in the contract. *Liebersgell,* 93 Wn.2d at 891-892. Here Amazon failed to inform H2F that the BSA contained terms that violated the then-operative UMSA. *See infra.* ¶E.

RESPONSE TO AMAZON'S
MOTION TO DISMISS (14-CV-0950-RSM) - 9

contract under false reasons: the iPad cover was not counterfeit, Amazon knew it wasn't counterfeit, but Amazon shut down H2F's business anyway, (c) deceiving H2F about the true reason for the termination by utilizing after-the-fact justification (of which H2F was not put on notice at the time the alleged acts occurred) and (d) failing to remit H2F's money per the contract and then-existing Washington law. (Dkt. 1, ¶¶69, 76, 94, 88-91) And while Amazon may argue the BSA gives it permission to terminate the contract for "any reason," *Liebergesell* does not allow Amazon to lie and terminate the contract (and withhold H2F's monies) for false reasons as such conduct frustrates H2F's right to the contract's benefits. *Woodworkers of Am. v. DAW Forest Prods. Co.,* 833 F.2d 789, 795 (9th Cir.1987). Additionally, evaluating whether Amazon exercised its discretionary termination power in bad faith does not require the Court to inject a substantive term into the BSA. *See Aventa Learning, Inc. v. K12, Inc*., 830 F. Supp. 2d 1083, 1101 (W.D. Wn. 2011)(assessing whether a party "exercised its discretion with regard to accounting methods" is "not the injection of a substantive term into the [contract], but rather" a proper inquiry as to whether the underlying contract was executed in good faith). H2F's claim that Amazon did not use proper (or any) "investigation methods" in terminating H2F's contract is analogous to the *Aventa* claim regarding the bad faith exercise of discretion regarding "accounting methods."[8] Indeed, "[g]ood faith *limits* the authority of a party retaining discretion to interpret contract terms; it does not provide a blank check for that party to define terms however it chooses." *Scribner v. Worldcom,*

---

[8] *Aventa* is not an outlier. *Chatterton v. Bus. Valuation Research, Inc.,* 90 Wn. App. 150, 157 (1998) held that "[a contractual] agreement to be bound by an independent appraisal will be set aside if the court finds the appraisal was conducted on a fundamentally wrong basis." Accordingly, an agreement to be bound by an at will termination provision should be set aside if the investigation underlying the termination was conducted on a fundamentally wrong basis as is the case here.

*Inc.,* 249 F.3d 902, 909, 910 (9th Cir. 2001)(party could breach "duty of good faith and fair dealing simply by disregarding [a party's] justified expectations under the…contracts."). Additionally, the duty of good faith "obligates the parties to cooperate with one another so that each may obtain the full benefit of performance." *Frank Coluccio Const. Co. v. King Cnty.,* 136 Wn.App. 751, 764 (2007). Again H2F, like the plaintiff in *Coluccio,* alleges Amazon was dishonest in fact by falsely representing the reasons behind terminating H2F's contract and refusing to cooperate with H2F once H2F, in reliance on Amazon's September 2013 communication, sent Amazon H2F's plan. *Metro. Park Dist. of Tacoma v. Griffith,* 106 Wn.2d 425, 437 (1986)("[U]nder its implied covenant of good faith, the District may have had an implicit obligation to consider Griffith's proposals for changes and improvements.").

Amazon's reliance on *Badgett v. Sec. State Bank* is misplaced. *Badgett* involved plaintiff-bank customers who did not "contend any express term" of their contract required the bank to consider plaintiff's loan modification proposal. 116 Wn.2d 563, 569 (1991). *Badgett* held that a free-floating good faith obligation did not exist wholly independent of the underlying contract. *Id.* at 570. In contrast, H2F points to contractual terms ("thorough investigation", "resolve", remit money within 14 (or 90) days, and establish a selling platform "fair to sellers") upon which Amazon's good faith obligation rests and were violated.

Approximately 40% of Amazon's sales (and 12% of its revenues) come from third party sellers like H2F. (Dkt. 1, ¶¶10-11)[9]  Under Rule 12 a reasonable inference should be drawn (which will be conclusively established during discovery) that third-party-seller H2F and Amazon enjoy

---

[9] Faith Merino, <u>How Does Amazon Make Money</u> Vator News (Nov. 25, 2013) *available at* http://vator.tv/news/2013-11-25-how-does-amazon-make-money (last visited September 29, 2014)

RESPONSE TO AMAZON'S
MOTION TO DISMISS (14-CV-0950-RSM) - 11

unequal bargaining power and H2F had no role in negotiating the BSA's terms. H2F's good faith

claim is proper as that duty arises in this case.

**C.     Amazon breached its own contract by failing to remit funds within 14 days.**

Amazon argues H2F's "failure to remit" contract claim fails because (i) H2F did not

identify the term Amazon breached; (ii) BSA §2 (Dkt. 16, p. 5, ¶2) allows Amazon to withhold

payment "for the shorter of: (a) period of ninety (90) days following the initial date of suspension;

or (b) completion of any investigation(s) regarding your actions and/or performance in connection

with the Agreement;" and, (iii) Amazon has 109 days to remit H2F's money. (Dkt. 15, §D).

As to point (i), H2F clearly identified the term that was breached: so did Amazon.

(*Compare* Dkt. 1, ¶88 *with* Dkt. 16, p. 14, S-6) Indeed, the BSA states"[w]e will remit to you on a

bi-weekly (14 days) (or at our option, more frequent) basis any Sales Proceeds collected by us or

our affiliates..." (Dkt. 16, p. 14, S-6)  It is undisputed that Amazon failed to remit the funds within

that time period. As to point (ii), Amazon did not exercise good faith in suspending H2F's account

and did not use good faith in "completion of any investigation." *See ¶*3 *supra.*[10] As to point (iii),

Amazon argues that the BSA § 2 (allowing Amazon to remit payment within 90 days of

suspension) and BSA S-6 (requiring 14 days for remittance) are cumulative. (*Compare* Dkt. 16, p.

5 *with* Dkt. 16, p. 16) Amazon cites no provision of the contract it drafted that supports its

conclusion that BSA § 2 (14 day remit) and BSA S-6 (90 day remit) are cumulative. At best, the

terms are ambiguous and such ambiguity is construed against Amazon, requires the Court ascertain

the parties' intent, and is a question of fact. *Felton v. Menan Starch Co.,* 66 Wn.2d 792, 797 (1965);

---

[10] Additionally, issues of fact (material to H2F's loss of interest on withheld money damages)
exist as to when Amazon completed its investigations assuming, of course, that Amazon actually
conducted an investigation.

*Berg v. Hudesman*, 115 Wn.2d 657, 663 (1990); *Spradlin Rock Prods., Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor County*, 164 Wn.App. 641, 654 (2011). Since "a complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief,'" Amazon's motion should be denied as factual issues exist regarding ambiguity, the parties' intent, and Amazon's good faith with regard to its performance of the BSA's "investigation" provision and the length of time Amazon retained H2F's monies. *McLain v. Real Estate Bd. of New Orleans,* 444 U.S. 232, 246 (1979).

**D.     H2F has a private right of action for Amazon's UMSA violation.**

Amazon argues H2F has no UMSA claim for want of a private right of action. (Dkt. 14, p. 13) Amazon's argument fails because (i) a private right of action exists under *Bennett v. Hardy*, 113 Wn.2d 912, 920-921 (1990); and, (ii) Washington's legislature passed the Uniform Money Services Act (UMSA) to protect consumers, like H2F, from improper acts by money transmitters, like Amazon.

In determining whether a private right of action exists, courts consider (a) whether the plaintiff is within the class for whose "especial" benefit the statute was enacted; (b) whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and (c), whether implying a remedy is consistent with the legislation's underlying purpose. *Bennett,* 113 Wn.2d at 920-921. Applying *Bennett,* Washington's Supreme Court, operating under "the assumption that the Legislature would not enact a statute granting rights to an identifiable class without enabling member of that class to enforce those rights," created private causes of action regarding: (1) age discrimination, *Bennett*; (2) failure to report child abuse, *Beggs v. Dep't of Soc. & Health Servs*., 171 Wn.2d 69, 77 (2011); (3) failure to investigate child abuse, *Tyner v. Dep't of Soc. & Health Servs.,* 141 Wn.2d 68, 77-78 (2000); and (4) failure to provide workplace rest

periods, *Wingert v. Yellow Freight*, 104 Wn.App. 583, 593-594 (2000). The *Bennett* and *Wingert* courts rejected arguments that no implied rights of action exist when the legislation created other explicit remedies because "[w]ithout an implicit creation of a remedy, the statute is meaningless." *Wingert,* 104 Wn. App. at 593-594; *Bennett,* 113 Wn.2d at 920. *Bennett* supports a USMA private cause of action.

First*,* H2F hails from the class whose especial benefit the statute was enacted. While RCW 19.230.005 contains a broad mandate, RCW 19.230.330 establishes the class and resulting obligation that money transmitters owe to their customers. To wit:

> (1)    Every *money transmitter licensee* and its authorized delegates shall transmit the monetary equivalent of all money or equivalent value received from a customer for transmission, net of any fees, or issue instructions committing the money or its monetary equivalent, *to the person designated by the customer within ten business days after receiving the money or equivalent value….*
> (2)    Every *money transmitter licensee* and its authorized delegates *shall provide a receipt to the customer* that clearly states the amount of money presented for transmission and the total of any fees charged by the licensee; and,
> (3)    Every *money transmitter licensee* and its authorized delegates *shall refund to the customer* all moneys received for transmittal within ten days of receipt of a written request for a refund unless… [certain events occur]. RCW 19.230.330 (2011) (*emphasis added*).

Amazon is a money transmitter licensee, H2F is Amazon's customer, and RCW 19.230.330 was written for H2F's benefit. (Dkt. 1, ¶¶112, 113)

Second, the statute's language and legislative history support creating a private cause of because Amazon must maintain a surety bond. RCW 19.230.050(1). And:

> The surety bond shall run to the state of Washington as obligee, and *shall run to the benefit of the state and any person or persons who suffer loss by reason of a licensee's or licensee's authorized delegate's violation of this chapter* or the rules adopted under this chapter. *A claimant against a money transmitter licensee may maintain an action on the bond, or the director may maintain an action on behalf of the claimant.* RCW 19.230.050(2) (emphasis added).

Accordingly, RCW 19.230.050(2) contemplates claims against money transmitters by

RESPONSE TO AMAZON'S
MOTION TO DISMISS (14-CV-0950-RSM) - 14

claimants directly *or* by the director of Department of Financial Institutions ("DFI"). The legislative history also supports a private cause of action as the original statute's Final Bill Report indicates that money transmitters are required to maintain a surety bond and that "the purpose of the bond is to protect the interests of claimants against the business in the event they suffer losses due to a violation of law or rule."[11] The Senate Committee on Financial Services reported that "[s]ome users of money transmitters or currency exchange services have experienced difficulties, resulting in harm to the consumers of these services. Although the abuses have not appeared to be massive or widespread, policymakers are concerned with the apparent lack of consumer protection..."[12] Amazon's attempt to make the DFI sole UMSA enforcer fails as Amazon does not cite legislative history, DFI regulations, or any DFI policy statements indicating that a private cause of action does not exist for money transmitters violating consumers' rights or that private causes of action would somehow interfere with the administration. Indeed, DFI states that it "*may* take administrative action for violations of the" UMSA: a true statement as the DFI has conducted *one* administrative UMSA enforcement action in the last ten years.[13] Lastly, Washington courts imply private rights of action in cases involving other statutes that, like the UMSA, designate administrative agency enforcement authority. *See e.g. Cox v. Lewiston Grain Growers, Inc.,* 86 Wn.App. 357, 374 (1997)(allowing CPA claim against Seed Act violation, RCW 15.49 et. seq., a

---

[11] Final Bill Report SHB 1455, C 287 L 03, section V. p 4; House Bill Report SHB 1455 "as Passed Legislature," Section V., pps 5-6; Financial Institutions and Insurance Committee Bill Analysis HB 1455 Section V., p 5.

[12] Senate Bill Report SHB 1455 as Reported by Senate Committee on Financial Services, Insurance & Housing, March 27, 2003.

[13] Washington State DFI, *available at,* http://www.dfi.wa.gov/cs/adminactions.htm (last visited September 23, 2014)(emphasis added).   The fact that the DFI conducted one UMSA administrative action between 2014 and 2004 was derived from searching the "administrative actions by year" links for years 2014 through 2004 of the above-referenced webpage.

RESPONSE TO AMAZON'S
MOTION TO DISMISS (14-CV-0950-RSM) - 15

statute that, like the UMSA, purports to vest enforcement authority solely with a state agency.) *Compare* RCW 15.49.041&081 *with* RCW 19.230.290.

Third, implying a remedy for H2F against Amazon for clearly violating the UMSA is consistent with the purpose of protecting consumers from money transmitter abuse. Recognizing a private cause of action allows individual consumers to enforce the UMSA provisions and does not impede DFI's ability to enforce the UMSA.

Amazon mistakenly argues that RCW 19.230.350 supplies UMSA's sole private cause of action. Washington's legislature passed the UMSA, including RCW 19.230.330 in 2003. In 2012, while amending RCW 18.28, the legislature added RCW 19.230.350 to the UMSA. Nothing in RCW 19.230.350 forecloses private rights of action as to the rest of the statute and the *Cox* court allowed a CPA private right of action for a Seed Act violation when the Seed Act, unlike the UMSA, contained no language regarding *per se* CPA violations. *See supra.* Furthermore, Amazon fails to cite any authority indicating that the legislature intended to reserve rights enforcement actions solely to the Director of DFI.

Amazon's argument that a private right of action is inconsistent with RCW 19.230.020 and .40(5) is odd. Those provisions give the Department of Financial Institutions discretion related to licensing and application requirements by money transmitters but make no reference to enforcement mechanisms against licensed money transmitters. Amazon's argument fails the common sense test: the state Department of Licensing issues drivers' licenses but DOL does not contend private personal injury lawsuits regarding rules of the road violations interfere with its ability to issue drivers' licenses.  Notably, Amazon cites no authority that providing a private cause of action impacts DFI's ability to administer application and licensing.

Next, Amazon improperly relies on *Jepson v. Ticor Title Ins. Co..* (Dkt. 15, p. 15) *Jepson*

cites *Pain Diagnostics v. Brockman*, 97 Wn.App. 691, 697-698 (1999) for the proposition that no private cause of action exists under RCW 48 (Chapter on Insurance). *Pain Diagnostics* concluded that RCW 48 did not create a private cause of action because the legislature indicated that the CPA provided a remedy for such violations. *Id.* Amazon's argument that no UMSA private cause of action and no UMSA CPA cause of action exist should be rejected as it contravenes *Bennett*.[14]

Crucially, Washington's legislature expressly precluded private causes of action in other statutes. For RCW 19.182.170's legislation states "a violation of subsection (6) of this section does not provide a private cause of action… [as a] violation of subsection (6) of this section shall be enforced exclusively by the attorney general." RCW 19.182.170(17). *See also* RCW 36.70A.200. But the UMSA does not expressly forbid a private cause of action. Under *Bennett*, H2F's UMSA private right of action is appropriate.

**E.     Amazon violated the CPA by forcing consumers to agree to a UMSA violation.**

Amazon required H2F to agree to a 14-day money remittance period. (Dkt. 1, ¶88) The UMSA, operative at the time H2F entered into its contract with Amazon, required a 10 day remittance period. RCW 19.230.330.[15] Requiring H2F to agree a term that violated the UMSA is

---

[14] Amazon's other authorities are distinguishable.  (Dkt. 15, p.13-14) *Bird-Johnson Corp. v. Dana Corp.*, involved an initiative that was modeled after the Model Toxics Control Act, but specifically excluded the private right of contribution - - - not the case here. 119 Wn.2d 423, 428. *Peninsula's Future v. City of Port Angeles*, involved a private citizen's attempt to obtain a search under a criminal drug enforcement statute  - - - not the case here. 175 Wn.App. 201. *Brummett v. Washington's Lottery* involved an individual seeking to enforce statutory language that broadly spoke of the lottery's goal to maximize revenues "for the state consonant with the dignity of the state and the general welfare of the people" - - - not the case here. 171 Wn. App. 664. *Crisman v. Pierce Cnty. Fire Prot. Dist. No 21,* involved a statute that governed public disclosures of campaign finances, not transactions with consumers, and allowed a private action ***only*** if the attorney general or prosecutor's office failed to act - - - not the case here. 115 Wn. App. 16.

[15] The legislature's June 12, 2014 revision of RCW 19.230.330, which changed the 10 day remittance timeframe to "within the timeframe agreed" by the parties - - a change likely initiated

an unfair or deceptive act barred by the CPA - - - an act "liberally construed" to provide "'an efficient and effective method of filling the gaps'" in the common law and statutes. RCW 19.86.920; *Short v. Demopolis*, 103 Wn.2d 52, 61-62 (1984). Establishing a CPA claim requires showing (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and, (5) causation. *Hangman Ridge Training Stables v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780 (1986).

As to prongs (1) and (3), H2F alleges Amazon's contractual terms and practice of retaining funds beyond 10 days violated the then-operative mandate of UMSA, RCW 19.230.330 - - - an act that had the capacity to deceive a substantial portion of the public. *Id.* at 796. (Dkt. 1, ¶¶114, 140, 141) H2F does not need to show intent to deceive, just a capacity to deceive a substantial portion of the public and H2F has done so. *State v. A.N.W. Seed Corp.*, 116 Wn.2d 39, 50 (1991); *Hangman*, 105 Wn.2d at 785. As to prong (2), H2F pleads facts necessary to establish trade and commerce. (Dkt 1, ¶¶ 9, 23, 137, 138)

As to prongs (4) and (5), Amazon argues that "H2F alleges only that it suffered injury and lost money by…being prevented timely access to [its] funds" (Dkt. 15, p. 17) Amazon cites *Panang v. Farmers Ins. Co. of Wash.,* 166 Wn.2d 27, 57 (2009) in support of its position that withholding funds is not sufficient injury. But *Panang* cites *Sorrel v. Eagle Healthcare. Id.* at 57. And *Sorrel* holds "[s]ufficient injury to satisfy the fourth and fifth elements of a Consumer

by Amazon's lobbyists after the March 15, 2013 *Peters v. Amazon Services, LLC* 2:13-cv-00480-MJP UMSA class action filing - - is not retroactive as retroactivity must be expressed (it isn't) and the amendment is not curative as it did not "clarify or technically correct an ambiguous statute." *Miebach v. Colasurdo*, 102 Wn.2d 170, 180 (1984); *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 461 (1992). Instead the amendment, given retroactive effect, would improperly deprive H2F of its right to enforce the then-existing statute. *Miebach,* 102 Wn.2d at 181.

Protection Act claim is established when a plaintiff is deprived of the use of his property as a result of an unfair or deceptive act or practice. In this case, Sorrel was denied rightful possession of his funds for a period of two weeks." *Sorrel v. Eagle Healthcare*, 110 Wn. App. 290, 298-299 (2002)(emphasis added). The CPA injury element is met even where the injury alleged is both minimal and temporary. *Mason v. Mort. Am., Inc.*, 114 Wn.2d 842, 954 (1990). H2F pleads facts necessary to establish injury and causation as established under *Sorrel.* (Dkt. 1, ¶142)

**F.     H2F properly pleads its state and federal anti-trust claims.**

     H2F's anti-trust claim alleges that Amazon and Apple engaged in price fixing with regard to the iPad covers ("the Items"), that the agreement - - partially brought to light by Apple's August 20, 2013, admission that it filed its complaint with Amazon because of H2F's "aggressive price point' - - fixed the Items' prices, and that the agreement improperly raised the Items' prices "overall to the consumer" which harmed competition. (Dkt. 1, ¶¶72, 103, 104, 105)

     Amazon, citing *Twombly* (which involved a parallel anti-trust claim in which *no* specific facts were pled, 550 U.S. 544, 564, 565 n.10) argues that H2F fails to allege an "agreement" to restrain trade. (Dkt. 15, p. 18. 19[16]) Amazon is wrong. The Ninth Circuit holds:

> It is not necessary to find an express agreement [under 15 U.S.C. § 1], either oral or written, in order to find a conspiracy, but it is sufficient that a concert of action be contemplated and that defendants conform to the arrangement. Mutual consent need not be bottomed on express agreement, for any conformance to an agreed or contemplated pattern of conduct will warrant an inference of conspiracy. An exchange of words is not required. Thus not only action, but even a lack of action, may be enough from which to infer a combination or conspiracy. *Esco Corp. v. United States,* 340 F.2d 1000, 1008 (9th Cir. 1965)(internal citations omitted)("[A] written or otherwise express agreement is not required to support a finding of a Section 1 violation.").

---

[16] Amazon argues its supposed disincentive to terminate sellers, like H2F, renders plaintiff's claim implausible. (Dkt. 15, p. 19 n.13)  Such an argument is for a jury to consider.  Further, shuttering H2F for selling Apple products too low, so as to remain a forum to sell Apple products, is a plausible action.

As agreements that violate anti-trust law "are seldom capable of proof by direct testimony" they "may be inferred from the things actually done." *Standard Oil Co. of Cal. v. Moore,* 251 F.2d 188, 210 (9th Cir. 1957)("No express agreement, of course, is necessary to constitute an unlawful combination or conspiracy."). The agreement H2F pleads complies with *Esco* and *Moore*: Apple filing baseless complaints against sellers like H2F, Amazon acquiescing to those complaints even when on notice of the complaint's falsity, Apple revealing part of the agreement on August 20, 2013, and, Amazon, when unable to dodge the inaccurate report it used as a pretext for shuttering H2F's business, conjuring up after-the-fact reasons to justify shuttering H2F's business. (Dkt. 1, ¶¶64, 71, 103-105) Such circumstantial evidence allows an anti-trust jury to consider after-the-fact reasons like juries do in wrongful termination cases. And "summary procedures should be used sparingly in antitrust litigation where motive and intent play a significant role." *Westinghouse Elec. Corp. v. CX Processing Labs., Inc.,* 523 F.2d 668, 673 (9th Cir. 1975).

Amazon then argues that H2F fails to allege a relevant market. (Dkt. 15, p. 20) Amazon's argument fails for three reasons. First, as a starting point, Congress has "not adopted or rejected a particular test for measuring a relevant market" and "[t]here is no requirement that [relevant market] element of [an] antitrust claim be pled with specificity." *Brown Shoe v. U.S.,* 370 U.S. 294, 320 (1962); *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008). Additionally, "a product market is typically defined to include the pool of goods or services that qualify as economic substitutes because they enjoy reasonable interchangeability of use and cross-elasticity of demand." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.,* 875 F.2d 1369, 1374 (9th Cir. 1989). But when, as is the case here, there are few, if any, economic substitutes for the product at issue (there is only one iPad, thus iPad covers enjoy little, if any, interchangeability with other tablet covers), a party may establish a restraint on trade "within…a small part of the general market

of substitutable products." *Newcal*, 513 F.3d at 1045 ("In order to establish the existence of a legally cognizable submarket, the plaintiff must be able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product market.")(emphasis added).[17] H2F does not have to account for "substitute goods" as Apple is the sole manufacturer of iPads and, by extension, most (if not all) iPad covers.[18] Here H2F identifies a sub-market containing the Items being sold with Amazon's online selling platform. (Dkt. 1, ¶¶9-11, 98) The Items constitute the product and the "geographic" boundary constituting Amazon's online marketplace - - - the largest online electronic marketplace in the United States, if not the world. *See Ballo v. James S. Black Co.*, 39 Wn. App. 21, 29 (1984)("Relevant geographic market for purposes of antitrust law is determined, in part, by the area to which the purchaser can reasonably turn to obtain the product.")[19] Second, a plaintiff does not even need to establish a relevant market in order to prevail on an anti-trust claim. *In re NCAA I-A Walk-On Football Players Litig.*, 398 F. Supp. 2d 1144, 1150 (W.D. Wn. 2005)(*citing FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 459–61 (1986)(some horizontal conduct unlawful without the market analysis traditionally required under the rule of reason)). Third, a plaintiff can establish a market

---

[17] Indicia of a sub-market includes "industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Newcal,* 513 F.3d at 1045.  Although such criteria do not need to be set forth in a complaint under *Newcal*, a reasonable inference can be made that the iPad Items are indicative of a sub-market.

[18] This is distinct from other anti-trust cases in which courts require a showing of substitute goods in industries that contain numerous manufacturers of like products. *See Gorlick Distribution Centers, LLC v. Car Sound Exhaust Sys., Inc.,* 723 F.3d 1019, 1025 (9th Cir. 2013).

[19] Amazon cites *Am. Ad. Mgm't, Inc. v. GTE Corp.,* 92 F.3d 781, 790 (9th Cir. 1996). The *GTE* court reversed summary judgment in a case when the relevant market was designated as "yellow page advertisements" because "to whatever extent plaintiff's evidence regarding product markets is deficient the problem is formalistic." Thus if the Court finds H2F's pleading deficient leave should be made to cure those defects.

by direct or circumstantial evidence. *Pennsylvania Ave. Funds v. Borey*, 569 F. Supp. 2d 1126, 1134 (W.D. Wn. 2008). The circumstantial evidence of a market is the Items being sold in Amazon's marketplace. (Dkt. 1, ¶¶9, 10, 98, 104-105)

Amazon then argues that H2F fails to allege injury to competition. (Dkt.15, p. 21) H2F pleads injury to consumers by alleging that Amazon and Apple's acts had the effect of raising prices on the Items. (Dkt. 1, ¶¶104-106, 109)("Apple and Amazon's conduct had an actual adverse effect on competition as a whole in the relevant market.") H2F's pleading complies with the *Les Shockley v. Nat'l Hot Rod Ass'n* case Amazon cites. (Dkt 15, p. 22) *Les Shockley* held "when the restraining force of an agreement affecting trade becomes unreasonably disruptive of market functions such as price setting," 15 U.S.C. § 1 is threatened. 884 F.2d 504, 508 (9th Cir. 1989). Here H2F pled the price-fixing anti-competitive effect of the Apple-Amazon agreement. (Dkt. 1, ¶105)

Amazon concludes its anti-trust argument claiming H2F cannot asset a *per se* anti-trust claim because of H2F's alleged failure to establish an agreement. (Dkt. 15, p. 22) Yet H2F adequately pled an agreement's existence in accord with 9th Circuit precedence. *See supra*. Amazon's argument should be rejected and H2F's claim should be allowed to proceed.

**G.    Amazon breached its fiduciary duty to H2F.**

Amazon argues that H2F failed to establish a fiduciary relationship because the BSA makes clear that no fiduciary duty exists between Amazon and H2F. (Dkt. 15, p. 23) But the BSA is not the only agreement at play in this case. Paragraph 19 of Amazon's Service Participation Agreement (referenced in H2F's Complaint, ¶146) provides, in part, "Amazon is not the agent of Seller *except for the limited purpose of processing payments*." *See Peters v. Amazon Services, LLC* 2:13-cv-

00480-MJP, Dkt. 45, pg. 20, ¶19.[20] The processing payment agent relationship gives rise to "[a] fiduciary position [which] includes not only the position of one who is a trustee, executor, administrator, or the like, but that of agent…and indeed any person whose relation with another is such that the latter justifiably expects his welfare to be cared for by the former." *Liebergesell,* 93 Wn.2d at 890-91. H2F pled the existence of such a relationship and expectation. (Dkt. 1, ¶145) And in "processing payments" H2F alleges that Amazon held "H2F's monies in violation of the UMSA" and Amazon's contract with H2F. (Dkt. 1, ¶¶88, 147) H2F properly pled its breach of fiduciary duty claim.

## H. H2F properly pleads its unjust enrichment claim.

Amazon argues H2F's unjust enrichment claim fails because H2F is bound by the BSA. (Dkt. 15, p. 24) But Amazon breached the BSA by withholding H2F's monies in violation of the BSA *and* the UMSA. (Dkt. 1, ¶150)("By withholding H2F's monies for periods longer than required by contract *or law* Amazon was able to earn interest on H2F's monies which, in turn, enriched Amazon unjustly.")(emphasis added) Thus, H2F's claim is properly based on the UMSA violation as "[a] party is liable in an unjust enrichment action when she possesses another's money or property and 'in equity and good conscience, [she] ought not to retain it." *Young v. Young*, 164 Wn.2d 477, 494 (2008). Again, Amazon withheld the money in violation of the then-operative UMSA provision which, in turn, allowed "(1) the defendant [to] receive[] a benefit, (2) … at the plaintiff's expense, and (3) the circumstances [here the UMSA violation] make it unjust for the defendant to retain the benefit without payment." *Young,* 164 Wn.2d at 484-85. Accordingly, H2F

---

[20] This docket entry is a public record admissible on a Rule 12 motion. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001).

properly pled its unjust enrichment claim because the claim is based on Amazon's violation of the UMSA, not the parties' contract(s).

### III.   CONCLUSION

This is a significant case, the outcome of which may very well drive Amazon's behavior with regard to the small businesses, like H2F, upon which Amazon derives significant profit. Amazon's attempt to avoid liability for breaching its own contract and violating state and federal law by invoking one term of its contract should be rejected. H2F's Complaint pleads sufficient facts to state a claim.  Amazon's Motion to Dismiss should be denied. A jury should determine whether Amazon is in the right.

Respectfully submitted this 29th day of September 2014.


*/s Matthew Crotty*
MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC
421 West Riverside, Suite 1005
Spokane, WA 99201
Telephone: 509.850.7011

Attorneys for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I certify that on September 29, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties, if any, shall be served in accordance with the Federal Rules of Civil Procedure.

Dated this 29th day of September 2014.

*/s Matthew Crotty*
MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC
421 West Riverside, Suite 1005
Spokane, WA 99201
Telephone: 509.850.7011