The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| HARD 2 FIND ACCESSORIES, INC., | Case No. 2:14-cv-00950 |
| Plaintiff, | DEFENDANT APPLE INC.'S MOTION TO DISMISS |
| v. | NOTE ON MOTION CALENDAR: October 24, 2014 [NOTE: Fourth Friday after service per LR 7(d)] |
| AMAZON.COM, INC., a Delaware corporation, and APPLE INC., a California corporation, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

DEFENDANT APPLE INC.'S MOTION TO
DISMISS:  2:14-cv-00950

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................................... 1

II.    FACTUAL ALLEGATIONS OF THE COMPLAINT ...................................................... 3

    A.    Customers Complain about Counterfeit iPad Covers Associated with Troublesome ASINs ................................................................................................................... 4

    B.    Apple Sends Notice of Two Infringing Listings to Amazon ........................................ 4

    C.    Amazon Removes H2F's Listings, Reviews H2F, and Then Terminates H2F As A Seller .................................................................................................................... 5

    D.    Apple's Communications with H2F and Amazon ..................................................... 6

III.   LEGAL STANDARD ..................................................................................................... 7

IV.    ARGUMENT ................................................................................................................. 7

    A.    Plaintiff's Own Allegations Foreclose Any Plausible Inference of Causation As to Each of Plaintiff's Theories ............................................................................................. 8

    B.    *Noerr-Pennington* Bars All Claims For Damages Arising from Apple's Infringement Notice ................................................................................................................... 10

    C.    H2F Cannot State a Claim for Intentional Interference with a Business Expectancy Against Apple ....................................................................................................... 13

    D.    The Complaint Does Not Adequately Allege Defamation ........................................ 15

    E.    H2F's Unjust Enrichment Claim Fails Because H2F Has Not Pled Apple's Receipt of an Unjust Benefit .................................................................................................. 17

    F.    The Complaint Does Not Allege the Elements of a "Price-Fixing" Claim ................. 18

        1.    Plaintiff Alleges No Illegal Contract, Combination or Conspiracy to Restrain Trade ............................................................................................................. 19

        2.    Plaintiff Has Not Alleged A *Per Se* Horizontal Price Fixing Claim. ........................ 20

        3.    Plaintiff Alleges None of the Essential Elements to Sustain A Vertical Price Fixing Claim Either ................................................................................................. 22

    G.    The Complaint Does Not Allege Any Unfair or Deceptive Conduct Within the State of Washington to Support a Consumer Protection Act Claim ...................................... 23

V.     CONCLUSION ............................................................................................................ 24

DEFENDANT APPLE INC.'S MOTION TO
DISMISS:  2:14-cv-00950                              - i -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*A&M Records v. Napster, Inc.*,

5

    239 F.3d 1004 (9th Cir. 2001) ........................................................................................... 19

6

*Adidas Am., Inc. v. Payless Shoesource, Inc.*,

7

    546 F. Supp. 2d 1029 (D. Oregon 2008) ........................................................................... 20

8

*Aircapital Cablevision, Inc. v. Starlink Comm'ns Grp., Inc.*,

    634 F.Supp. 316 (D. Kan. 1986) ....................................................................................... 11

9

*Allstate Ins. Co. v. Tacoma Therapy, Inc.*,

10

    2014 U.S. Dist. LEXIS 52934 (W.D. Wash. Apr. 16, 2014) ............................................. 16

11

*Amaretto Ranch Breedables v. Ozimals, Inc.*,

12

    2010 U.S. Dist. LEXIS 141242 (N.D. Cal. Dec. 21, 2010) ............................................... 11

13

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009) ..................................................................................................... 7, 20

14

*Atlantic Richfield Co. v. USA Petroleum Co.*,

15

    495 U.S. 328 (1990) .......................................................................................................... 23

16

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007) ................................................................................................ 7, 19, 20

17

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,

18

    182 F.3d 1096 (9th Cir. 1999) ........................................................................................... 23

19

*The Bryant Corp. v. Outboard Marine*,

20

    1994 U.S. Dist. LEXIS 18371 (W.D. Wash. Sept. 29, 1994) ............................................ 14

21

*Business Electronics Corp. v. Sharp Electronics Corp.*,

    485 U.S. 717 (1988) .......................................................................................................... 21

22

*Camboni v. MGM Grand Hotel, LLC*,

23

    2012 U.S. Dist. LEXIS 98039 (D. Ariz. July 16, 2012) .................................................... 15

24

*Centurion Props., III, LLC v. Chi. Title Ins. Co.*,

25

    2013 U.S. Dist. LEXIS 93808 (E.D. Wash. July 3, 2013) ................................................. 15

26

*Doscher v. Swift Transp. Co.*,

    2009 U.S. Dist. LEXIS 106105 (W.D. Wash. Nov. 13, 2009) .......................................... 16

27

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,

28

    711 F. Supp. 2d 1074 (C.D. Cal. 2010) ............................................................................. 11

DEFENDANT APPLE INC.'S MOTION TO
DISMISS: 2:14-cv-00950

- ii -

*Esco v. United States*,
340 F.2d 1000 (9th Cir. 1965)...........................................................................21

*Euromodas, Inc. v. Zanella, Ltd.*,
368 F.3d 11 (1st Cir. 2004) ..............................................................................21

*Fin. & Sec. Prods. Ass'n v. Diebold*,
2005 U.S. Dist. LEXIS 45409 (N.D. Cal. July 8, 2005) ....................................19

*Fonovisa, Inc. v. Cherry Auction, Inc*.,
847 F. Supp. 1492 (E.D. Cal. 1994) *rev'd on other grounds at* 76 F.3d 259
(9th Cir. 1996)...................................................................................................12

*Formula One Licensing, B.V. v. Purple Interactive Ltd.*,
2001 U.S. Dist. LEXIS 2968 (N.D. Cal. Feb. 6, 2001)......................................22

*Hazelquist v. Guchi Moochie Tackle Co.*,
2004 U.S. Dist. LEXIS 13991 (W.D. Wash. May 12, 2004)..............................14

*Husbands for Rent, Inc. v. Handy Husbands for Rent, Inc*.,
2006 U.S. Dist. LEXIS 6843 (N.D. Cal. Feb. 23, 2006).....................................12

*Image Tech. Servs. v. Eastman Kodak Co*.,
125 F.3d 1195 (9th Cir. 1997)...........................................................................19

*The Jeanery, Inc. v. James Jeans, Inc*.,
849 F.2d 1148 (9th Cir. 1988)......................................................................20, 21

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008).............................................................................20

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Eastimpex*,
2007 U.S. Dist. LEXIS 7880 (N.D. Cal. Feb. 2, 2007)........................................12

*Lau v. Guam Dep't of Educ.*,
2011 U.S. Dist. LEXIS 67541 (D. Guam June 23, 2011) ....................................22

*Leadbetter v. Comcast Cable Communs., Inc.*,
2005 U.S. Dist. LEXIS 45365 (W.D. Wash. Aug. 19, 2005) ..............................10

*Leegin Creative Leather Prods. v. PSKS, Inc.*,
551 U.S. 877 (2007) ...........................................................................................22

*Lubic v. Fid. Nat'l Fin., Inc.*,
2009 U.S. Dist. LEXIS 62092 (W.D. Wash. July 20, 2009)................................17

*Lye v. City of Lacey*,
2012 U.S. Dist. LEXIS 91523 (W.D. Wash. June 29, 2012)................................16

DEFENDANT APPLE INC.'S MOTION TO
DISMISS:  2:14-cv-00950

- iii -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

*Manistee Town Ctr. v. City of Glendale*,
　227 F.3d 1090 (9th Cir. 2000)........................................................................12, 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
　475 U.S. 574 (1986) ...............................................................................................23

*Matsushita Elecs. Corp. v. Loral Corp.*,
　974 F. Supp. 345 (S.D.N.Y. 1997).........................................................................11

*McCann v. Quality Loan Serv. Corp.*,
　729 F. Supp. 2d 1238(W.D. Wash. 2010) ...............................................................3

*McGlinchy v. Shell Chemical Co.*,
　845 F.2d 802 (9th Cir. 1988).................................................................................23

*Microsoft Corp. v. Software Wholesale Club, Inc.*,
　129 F. Supp. 2d 995 (S.D. Tex. 2000) ...................................................................13

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
　165 F.3d 891 (Fed. Cir. 1998)...............................................................................11

*Modular Arts, Inc. v. Interlam Corp.*,
　2007 U.S. Dist. LEXIS 51225 (W.D. Wash. July 13, 2007)..................................11

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
　465 U.S. 752 (1984) ...............................................................................................19

*Mularkey v. Holsum Bakery, Inc.*,
　146 F.3d 1064 (9th Cir. 1998)...............................................................................23

*Nat'l Flood Servs. v. Torrent Techs., Inc.*,
　2006 U.S. Dist. LEXIS 34196 (W.D. Wash. May 25, 2006)..................................18

*Newcal Indus., Inc. v. Ikon Office Solution*,
　513 F.3d 1038 (9th Cir. 2008)...............................................................................22

*OG Int'l, Ltd. v. Ubisoft Entm't*,
　2012 U.S. Dist. LEXIS 145408 (N.D. Cal. Oct. 9, 2012) .....................................11

*Oregon Natural Resources Council v. Mohla*,
　944 F.2d 531 (9th Cir. 1991).................................................................................12

*Pa. Ave. Funds v. Borey*,
　569 F. Supp. 2d 1126 (W.D. Wash. 2008) ............................................................22

*Phillips v. World Publ'g Co.*,
　822 F. Supp. 2d 1114 (W.D. Wash. 2011) ............................................................15

*Pioneer Family Invs., LLC v. Lorusso*,
　2014 U.S. Dist. LEXIS 86367 (D. Ariz. June 24, 2014).......................................22

DEFENDANT APPLE INC.'S MOTION TO
DISMISS:  2:14-cv-00950
- iv -
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

*Prof'l Real Estate Investors v. Columbia Pictures Indus.*,
   508 U.S. 49 (1993) ...................................................................................................12

*Redlands Country Club, Inc. v. Cont'l Cas. Co.*,
   2011 U.S. Dist. LEXIS 155911 (C.D. Cal. Jan. 28, 2011)..................................19

*Rick-Mik Enters. v. Equilon Enters.*,
   LLC, 532 F.3d 963 (9th Cir. 2008) ....................................................................22

*Rock River Commc'ns., Inc. v. Universal Music Group, Inc.*,
   745 F.3d 343 (9th Cir. 2014).......................................................................11, 12

*Rocky Mt. Med. Mgmt., LLC v. LHP Hosp. Group, Inc.*,
   2013 U.S. Dist. LEXIS 142909 (D. Idaho Sept. 30, 2013) .................................22

*Sanders v. Brown*,
   504 F.3d 903 (9th Cir. 2007)...............................................................................10

*Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.*,
   256 F. Supp. 399 (S.D.N.Y. 1966) .....................................................................13

*Sidibe v. Sutter Health*,
   2013 U.S. Dist. LEXIS 78521 (N.D. Cal. June 3, 2013) ....................................22

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001)..................................................................................7

*Standard Oil Co. v. Moore*,
   251 F.2d 188 (9th Cir. 1957)...............................................................................21

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
   2010 U.S. Dist. LEXIS 92236 (E.D. Cal. Sept. 3, 2010) ....................................22

*Stone v. Becerra*,
   2010 U.S. Dist. LEXIS 118311 (E.D. Wash. Nov. 8, 2010).................................16

*Symantec Corp. v. Logical Plus, Inc.*,
   2009 U.S. Dist. LEXIS 97447 (N.D. Cal. Oct. 20, 2009) ....................................13

*Tan v. Univ. of S. Cal.*,
   252 F.3d 1059 (9th Cir. 2001)..............................................................................22

*Technomarine SA v. Jacob Time, Inc.*,
   2012 U.S. Dist. LEXIS 90261 (S.D.N.Y. June 22, 2012)....................................16

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
   546 F.3d 991 (9th Cir. 2008).........................................................................10, 11

*Thermos Co. v. Igloo Prods. Corp.*,
   1995 U.S. Dist. LEXIS 14221 (N.D. Ill. Sept. 27, 1995).....................................11

DEFENDANT APPLE INC.'S MOTION TO
DISMISS:  2:14-cv-00950
- v -
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*,
2010 U.S. Dist. LEXIS 115312 (S.D. Cal. Oct. 28, 2010).....................................................11

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000)..........................................................................................12

*William O. Gilley Enters. v. Atl. Richfield Co.*,
588 F.3d 659 (9th Cir. 2009).......................................................................................18, 19

**State Cases**

*Alpine Indus. v. Cowles Publ'g Co.*,
57 P.3d 1178 (Wash. Ct. App. 2002) ................................................................................17

*Blewett v. Abbott Labs.*,
938 P.2d 842,845-46 (Wash. Ct. App. 1997) (the Washington antitrust
provision is construed according to federal law.) ............................................................18

*Brown v. Safeway Stores, Inc.*,
617 P.2d 704 (Wash. 1980)...............................................................................................14

*Burkheimer v. Thrifty Inv. Co.*,
533 P.2d 449. (Wash. Ct. App. 1975) ...............................................................................10

*Golob & Sons v. Schaake Packing Co.*,
609 P.2d 444 (Wash. 1980)...............................................................................................18

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
719 P.2d 531 (Wash. 1986)...............................................................................................24

*Herron v. KING Broad. Co.*,
776 P.2d 98 (Wash. 1989)..................................................................................................16

*Klem v. Wash. Mut. Bank*,
295 P.3d 1179 (Wash. 2013)..............................................................................................24

*Leingang v. Pierce Cnty. Med. Bureau*,
930 P.2d 288 (Wash. 1997)...............................................................................................14

*Momah v. Bharti*,
182 P.3d 455 (Wash. Ct. App. 2008) ................................................................................17

*NBT Bancorp v. Fleet/Norstar Fin. Group*,
215 A.D.2d 990 (NY. Ct. App. 1995).................................................................................10

*Norcon Builders, LLC v. GMP Homes VG, LLC*,
254 P.3d 835 (Wash. Ct. App. 2011) ................................................................................17

*Panag v. Farmers Ins. Co. of Wash.*,
204 P.3d 885 (Wash. 2009)...............................................................................................24

DEFENDANT APPLE INC.'S MOTION TO
DISMISS:  2:14-cv-00950

- vi -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

*Seattle Garcia's Rest. v. Fir Assocs.*,
  2005 Wash. App. LEXIS 2545 (unpublished) (Wash. Ct. App. Sept. 26,
  2005)..............................................................................................................................9

*Tamosaitis v. Bechtel Nat'l, Inc*.,
  327 P.3d 1309 (Wash. Ct. App. 2014) ..................................................................9

*TES Liquidating, Inc. v. Smith*,
  2010 Wash. App. LEXIS 40 (Wash. Ct. App. Jan. 12, 2010) (unpublished)......................10

**Federal Statutes**

DMCA ....................................................................................................................11

§ 1 of the Sherman Act, 15 U.S.C. § 1 .......................................................18, 20, 21

**State Statutes**

Washington Consumer Protection Act, Wash. Rev. Code 19.86................................18

Wash. Rev. Code 18.165 ...........................................................................................24

Wash. Rev. Code 18.165.010 ....................................................................................24

Wash. Rev. Code 18.165.020(4) ...............................................................................24

Wash. Rev. Code 18.165.150 ....................................................................................23

Wash. Rev. Code 19.86 *et seq.*................................................................................24

Wash. Rev. Code 19.86.020 ......................................................................................24

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................7

Rule 15 ......................................................................................................................22

DEFENDANT APPLE INC.'S MOTION TO
DISMISS:  2:14-cv-00950
- vii -
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

# I.    **INTRODUCTION**

Plaintiff Hard 2 Find Accessories, Inc. ("H2F" or "Plaintiff") is an online retailer of consumer electronics accessories and was a seller on amazon.com.  By contract, Plaintiff granted Amazon.com, Inc. discretion to terminate its privileges as a seller for any reason. Amazon received complaints from multiple parties, one of whom was Apple, Inc., about Plaintiff's suspected sales of infringing or counterfeit products.  Amazon invoked its rights and terminated Plaintiff's seller privileges.  Plaintiff has sued Amazon on a laundry list of claims arising out of their at-will contractual relationship.  Plaintiff has added claims against Apple, although Apple and Plaintiff had no relationship of any kind.  Whatever the outcome of Amazon's motion to dismiss, Apple does not belong in this case.

The Complaint alleges that Apple notified Amazon in June 2013 that Plaintiff was selling counterfeit iPad cases and this turned out to be untrue.  As for Apple's alleged misconduct, that's it.  Plaintiff alleges five claims against Apple – three torts, an antitrust price-fixing claim, and a Washington CPA claim – and every one is based on this single June 2013 infringement notice.  They all fail for two overarching reasons.

First, Plaintiff's claims all share the same flawed theory of causation—that Apple "caused" Amazon to terminate Plaintiff as an amazon.com seller.  The Complaint acknowledges that Apple's complaint about counterfeit product listings was only one of multiple charges lodged against Plaintiff, that Amazon conducted its own review, and that Amazon referred to the existence of numerous complaints from multiple parties in its termination.  Amazon did *not* tell H2F that Apple's June 2013 infringement notice was the basis for its termination (as Amazon explains (Dkt. # 15 at 4-5)).  In fact, Apple never asked Amazon to take any action affecting H2F's seller status; Apple simply requested removal of two infringing product listings.  Even after Apple later advised Amazon that it had amicably resolved its dispute with Plaintiff, Amazon refused Plaintiff's request to be reinstated as a seller.  Plaintiff's pleading admissions defeat rather than support an inference that Apple caused Plaintiff's termination.

Second, Apple is also immune from all of Plaintiff's claims under the *Noerr-Pennington* doctrine.  That doctrine immunizes Apple against any claim that is predicated on Apple's legitimate effort to protect its trademarks and fight counterfeiting, whether by filing a lawsuit or, as here, by sending an infringement notice as the first step toward filing a possible lawsuit.  Plaintiff could not overcome *Noerr-Pennington* unless it had alleged *with particularity* facts to show that Apple's notice to Amazon was an "objectively baseless" sham.  The few facts Plaintiff does allege—including numerous consumer complaints about counterfeit iPad cases and Plaintiff's suspiciously low prices—are known indicators of infringing.  Far from alleging a sham, those facts supply an objective basis for Apple's report to Amazon.

Beyond these two overarching grounds, Plaintiff's various other claims also fail individually.  For example, Plaintiff's defamation claim fails because in the absence of allegations of bad faith Apple's report is privileged and not actionable.  Plaintiff's tortious interference claim fails because it does not allege that Apple interfered with Plaintiff's seller privileges, or that Apple took any action for an improper purpose or using improper means.  Plaintiff's unjust enrichment claim fails to allege any "benefit" to Apple.

Plaintiff's effort to convert Apple's presumptively valid infringement notice into an antitrust "price-fixing" conspiracy is particularly deficient.  The keystone of any price-fixing claim is an *agreement* to fix the *price* of specific goods.  Plaintiff points to nothing but the infringement notification, which is not an agreement on anything, and certainly not an agreement *on price*.  This alone dooms every antitrust claim, whether labeled "vertical" or "horizontal."  Because Plaintiff has not alleged any *per se* antitrust violation, Plaintiff must meet the standards under the rule of reason.  Here, Plaintiff fails to define a relevant product market, and to allege facts demonstrating that Defendants harmed competition in the relevant market—both fatal omissions.  Eliminating a single competitor who sold just 134 cases for iPads would not constitute harm to competition in any relevant market.

In sum, Plaintiff has failed to allege sufficient facts to state any plausible claim that justifies its effort to drag Apple into its contractual dispute with Amazon.  The only plausible

DEFENDANT APPLE INC.'S MOTION TO
DISMISS:  2:14-cv-00950

- 2 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

explanation for the sparse facts Plaintiff alleges is that Apple acted in good faith to protect its intellectual property rights, and Amazon acted independently to exercise its contractual rights to terminate Plaintiff as an at-will seller. Bound by the adverse facts it has already admitted, and barred by *Noerr-Pennington*, Plaintiff cannot remedy the Complaint's pleading deficiencies by amendment.  All claims against Apple should be dismissed with prejudice.

## II.   FACTUAL ALLEGATIONS OF THE COMPLAINT[1]

Defendant Amazon is the host of "amazon.com."  Compl. ¶¶ 9-11.  Plaintiff H2F was a "seller" on amazon.com.  From January 1, 2012 to June 17, 2013, Plaintiff sold various electronic accessories to consumers through amazon.com, including 134 covers for Apple iPad devices.  Compl. ¶ 12, 40.[2]

Defendant Apple, in addition to selling iPads, manufactures the Apple® iPad® Smart Cover™ for use as a case with its iPad products (referred to below as "iPad cases").  *See* Compl. ¶ 26.  A genuine Smart Cover for Apple's iPad 2 device—the product at issue in this case—is depicted below.



Compl. ¶ 26.  Apple's intellectual property rights in the Apple iPad 2 Smart Cover cases include, among other rights, Apple's federally registered trademarks for the word marks APPLE, IPAD, and SMART COVER.  Request for Judicial Notice ("RJN") Exs. 3-5.  The Complaint does not allege that Plaintiff was ever an authorized online retailer of any Apple products.

---

[1] This factual background is not intended to be an admission that any of the alleged facts are true or sufficient.

[2] The Court may take judicial notice of H2F's publically available business website, *see, e.g., McCann v. Quality Loan Serv. Corp.*, 729 F. Supp. 2d 1238, 1241(W.D. Wash. 2010), which presents some indicators of dubious retailing, as it does not disclose H2F's place of business, mailing address or phone number, and offers only a gmail address as a point of contact.  *See* http://www.hard2findaccessories.com/ (last visited on 9/30/2014).

A. **Customers Complain about Counterfeit iPad Covers Associated with Troublesome ASINs**

During 2013, Plaintiff sold purportedly genuine iPad cases under two Amazon identification numbers, or "ASINs."[3] Numerous customers complained about the quality and authenticity of iPad cases associated with those ASINs.  Compl. ¶¶ 26, 30.  Plaintiff includes a sampling of the complaints posted to amazon.com in its Complaint: "NOT A REAL APPLE SMART COVER," "Not the real Smart Cover," "Not Genuine!," "Not authentic," "fake, don't buy," "the quality isn't the same, feels cheaper," "the magnetic part where it attaches to Ipad [sic] is very week," and "Looks & feel (70%) similar to actual (Apple) ones."  Compl. ¶ 30.[4] It admits that these complaints pertained to these ASINs, but alleges that the complaining customers purchased from other sellers, not H2F.  Compl. ¶¶ 37, 39.  It also includes the bare allegation that the items it sold were "not counterfeit," but Plaintiff pleads no facts to support this proposition.  Compl. ¶ 39.  Plaintiff does not assert, for example, that it was an authorized retailer of Apple products, or what price and from whom H2F obtained purportedly genuine new iPad cases for sale at remarkably low prices.  *See id.*

B. **Apple Sends Notice of Two Infringing Listings to Amazon**

In June 2013, Apple, through its outside legal counsel in California, contacted Amazon to report sales under two ASINs of iPad cases Apple believed to be counterfeit.  Compl. ¶¶ 26, 45.  Like other major rights holders, Plaintiff acknowledges that Apple has a process for conducting "takedowns" of product listings that infringe Apple's rights, Compl. ¶ 27-28, and such "takedown" notices are common events in online marketplaces.  Plaintiff also concedes that Apple's belief was based in part on multiple customer complaints about counterfeit goods

---

[3] Amazon assigns a unique number known as an Amazon Standard Identification Number ("ASIN") to identify each distinct product sold on its website.  Compl. ¶ 73.

[4] Plaintiff's compendium of complaints is by no means complete.  According to an archived version of the webpage at the URL Plaintiff cites, Compl. ¶ 55, other similar complaints for the subject ASIN that posted on amazon.com during the relevant time period include statements such as "I find it incredible that the seller is allowed to market a counterfeit product…;" "Beware of Knock-off.  Not leather, not Apple…Bought the real item at Best-buy (paid more) but genuine…;" and "I should've known better when I saw the difference of the price (was 54.95…).  RJN Ex. 1. Of the 15 reviews visible on the archived version of the webpage captured by the undersigned, 7 raised concerns about quality, authenticity, or related issues.

DEFENDANT APPLE INC.'S MOTION TO DISMISS:  2:14-cv-00950

- 4 -

sold under these two ASINs, and the fact that Plaintiff was selling goods at a price that was "aggressively" low.  Compl. ¶ 29; RJN Ex. 1.

The Complaint also discloses that Plaintiff had something of a history.  Plaintiff acknowledges that Apple had lodged a complaint with Amazon against Plaintiff in January 2013 concerning an issue that the Complaint declines to discuss in detail.  Compl. ¶ 75.[5]  Apple lodged another complaint against Plaintiff in March 2013 that prompted Amazon to warn Plaintiff not to post goods under ASINs associated with Apple; other companies had lodged complaints against Plaintiff as well, including complaints about Plaintiff's unauthorized trademark usage.  Compl. ¶ 75.  Plaintiff does not allege that Apple's previous complaints were in error or made in bad faith, nor does it challenge them in any way.

### C.   Amazon Removes H2F's Listings, Reviews H2F, and Then Terminates H2F As A Seller

On June 14, 2013, Amazon informed Plaintiff that it had removed two of Plaintiff's listings for Apple iPad cases from the amazon.com website due to the June 13 notice from the impacted rights holder, Apple.  Compl. ¶ 26.  The pleadings indicate that such notices and "takedowns" are a standard protocol under Amazon's Anti-Counterfeiting policy.  Compl. ¶ 26; Dkt. 15 at 2-3.  Under its contract with Plaintiff, Amazon retained the right to immediately "restrict access to or availability of any inaccurate listing."  Compl. ¶¶ 11, 12, 18, 19.

Three days later, Amazon notified Plaintiff that it had taken the *separate* step of terminating Plaintiff's *seller* privileges under their contract because of indications that Plaintiff was violating Amazon's rules, including rules regarding trademark usage.  Compl. ¶¶ 56, 75.  As explained in Section IV.A concerning causation, the distinction between specific product *listings* and broad *seller* privileges is important.  Plaintiff alleges no complaint by Apple about

---

[5] H2F's allegations discuss numerous prior complaints against H2F received by Amazon but only clearly attribute the January, March, and June 2013 complaints to Apple.  The Complaint makes clear that parties other than Apple lodged complaints with Amazon.  *Id.*

DEFENDANT APPLE INC.'S MOTION TO
DISMISS:  2:14-cv-00950                              - 5 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

1   Plaintiff's status as an amazon.com *seller*—only that Apple indicated its belief that certain

2   iPad covers Plaintiff sold under troubled ASINs were counterfeit.

3          Plaintiff appealed Amazon's decision to terminate its seller status on June 17, 2013.

4   Compl. ¶ 58.  On June 27, 2013, Amazon denied the appeal and advised Plaintiff that it was

5   permanently terminating it as a seller after a "review of [H2F's] account by an account

6   specialist."  Plaintiff continued to contest the termination over the next several months, Compl.

7   ¶¶ 65-71, but Amazon continually declined to reinstate its seller status, "cit[ing] as grounds for

8   its decision" events that "occurred months before the June 17, 2013, account suspension."

9   Compl. ¶ 71.

10         **D.      Apple's Communications with H2F and Amazon**

11         As Plaintiff was contesting Amazon's decision, it contacted Apple about Apple's

12  notice concerning counterfeit iPad cases.  Compl. ¶¶ 60-75.  Plaintiff alleges that "[o]n or

13  about June 25, 2013, Apple admitted to H2F that the infringement claim it lodged with

14  Amazon was in error and represented that Apple had withdrawn its complaint with Amazon."

15  Compl. ¶ 63.  The Complaint alleges no specific facts about the purported June 25, 2013

16  communication, but it does quote in detail an August 1, 2013 email from Apple's

17  representative to Amazon, seeking to resolve the issue:

18              I am contacting you about Hard 2 Find, a seller who posted
                products against an ASIN number that was associated with
19              counterfeit products.  We appreciate Amazon's removal of
                listings associated with the damaging ASIN.  Hard 2 Find has
20              agreed not to list any Smart Covers or other Apple products
                under any ASIN numbers that are associated with counterfeit
21              products.  Based on that agreement and Hard 2 Find's
                cooperation in addressing our concerns, Apple considers this
22              matter amicably resolved . . .

23  Compl. ¶ 68.  Despite Apple's correspondence to Amazon, Amazon did not reinstate Plaintiff.

24  Compl. ¶¶ 69-71.

25         On August 20, 2013, Plaintiff asked Apple to contact Amazon again to withdraw its

26  infringement claim.  Compl. ¶ 72.  During this conversation, according to the Complaint,

27  Apple told Plaintiff that it had initially lodged the claim because Plaintiff's iPad cases were

28  associated with a "troublesome ASIN," and because of "the aggressive price point" at which

DEFENDANT APPLE INC.'S MOTION TO
DISMISS:  2:14-cv-00950                       - 6 -

H2F was listing the purportedly authentic iPad cases.  Compl. ¶ 72.  In September, "Apple (again) contacted Amazon and (again) withdrew its complaint against H2F," Compl. ¶ 74, but Amazon stood by its decision to permanently terminate H2F's seller privileges.  Compl. ¶ 75.

## III.   LEGAL STANDARD

A party may move to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) if, from the face of the complaint, the plaintiff fails to state a claim upon which relief can be granted.  A plaintiff must "provide the grounds of his 'entitle[ment] to relief' … [which] requires more than labels and conclusions … [f]actual allegations must be enough to raise a right to relief above the speculative level…." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)(citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 679.  The Court may reject assertions that are contradicted by specific facts properly considered in deciding a Rule 12(b) (6) motion.  *E.g., Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.   ARGUMENT

Two overarching defects require dismissal of all of Plaintiff's claims.  First, the Complaint fails to allege with plausibility that Apple's conduct was the cause *in fact* of any injury to Plaintiff.  Second, each of Plaintiff's claims arises from Apple's good faith attempt to protect its intellectual property rights, conduct that is constitutionally protected by the *Noerr-Pennington* doctrine.  And even beyond these two fatal defects, Plaintiff's claims all fail individually, because Plaintiff simply has not plead specific facts establishing one or more of the essential elements necessary to each of its claims.  Accordingly, for all of these reasons, the Court should dismiss the claims against Apple with prejudice.

### A.   Plaintiff's Own Allegations Foreclose Any Plausible Inference of Causation As to Each of Plaintiff's Theories

Plaintiff's entire case against Apple suffers from a gaping hole.  Plaintiff does not and cannot allege that anything Apple did caused Plaintiff's alleged injury: termination of Plaintiff's seller status on amazon.com.  All five of Plaintiff's claims rest on the theory that Apple's June 2013 infringement notice concerning two iPad covers caused Amazon to terminate Plaintiff's *seller* status permanently.  This theory is implausible and inconsistent with Plaintiff's own factual allegations.  Amazon retained discretion to terminate its at-will contracts with independent sellers at any time and for any reason.  Amazon's independent exercise of its contractual right to terminate Plaintiff as a seller—with or *without* cause— severs any causal link to Apple's notice of an infringing product listing.

Importantly, Plaintiff alleges that Amazon removed its iPad case *listings* in response to Apple's June 2013 infringement notice.  Compl. ¶ 26.  But conspicuously absent are factual allegations to suggest that Amazon's *separate* decisions to suspend and terminate Plaintiff as an amazon.com *seller*—the injury on which H2F sues—was caused by Apple's June 2013 notice about two product *listings*.  Amazon did not state that it terminated Plaintiff as a seller due to Apple's June 2013 notice of two infringing product listings, and Plaintiff alleges no other facts to make this inference plausible.

The balance of the Complaint illustrates why H2F not only does not, but cannot make that factual claim.  As Plaintiff admits in the Complaint, Amazon had received complaints about Plaintiff in January, February, March, April, and May 2013 from multiple parties *other than Apple*.  Compl. ¶ 75.  According to correspondence between Amazon and Plaintiff included in the Complaint, Amazon originally suspended Plaintiff's selling privileges because its items "fit a set of criteria that indicated they may be unauthorized. . ." Compl. ¶ 65.  Subsequently, Amazon conducted its own internal review of Plaintiff's seller history and based on its review decided to terminate Plaintiff's seller status permanently.  Compl. ¶ 65.  Plantiff alleges that Amazon "shuttered H2F's account as a result of factors that were not listed on Amazon's June 14, 2013, communication to H2F." Compl. ¶ 71.  In other words, Amazon did

*not* based its seller termination on Apple's June 2013 notice of infringing iPad case listings. Amazon gave Plaintiff the opportunity to appeal its termination decision,  Compl. ¶ 59, and to "develop a plan" to remedy any issues.  Compl. ¶ 75.  While all this was ongoing, Apple even told Amazon—twice—that it had resolved its dispute with Plaintiff.  Compl. ¶¶ 68, 74. Amazon terminated Plaintiff anyway.  We need not guess as to why:  according to Plaintiff, Amazon explained that multiple complaints made against Plaintiff months *before* Apple's June 2013 notice of infringing iPad case listings were the basis for terminating Plaintiff's seller privileges. Compl. ¶ 71.[6]  These facts do not support an inference that Apple caused Amazon to terminate seller privileges; they foreclose it.  Where, as here, the injury plaintiff complains of is caused by forces independent from the defendant's conduct, causation fails.  *See Tamosaitis v. Bechtel Nat'l, Inc*., 327 P.3d 1309, 1316 (Wash. Ct. App. 2014) (causation element of intentional interference claim rejected where no facts suggested that defendant was responsible for adverse action taken against plaintiff).

The details of Amazon and its seller's contractual relationship—related in both the Complaint and Amazon's motion—confirm that Apple could not have caused Plaintiff injury on the facts set forth in the Complaint.  As Amazon's motion explains, Amazon's contract with Plaintiff did not require cause or proof of infringement from any third party for Amazon to revoke Plaintiff's terminable-at-will seller privileges, and Amazon had no need to rely on information from Apple or others to act.  Dkt. No. 15 at 7; Dkt. No. 15 at 5-6.[7]  Amazon's independent exercise of its at-will termination rights against Plaintiff severs any causal link between Apple's June 2013 notice of infringing listings and Plaintiff's purported injury.  *See Seattle Garcia's Rest. v. Fir Assocs*., 2005 Wash. App. LEXIS 2545, at*18-19, 24-25 (unpublished) (Wash. Ct. App. Sept. 26, 2005) (claim for intentional interference with lease agreement failed where lessor exercised its right to terminate lease in good faith).

---

[6] Plaintiff labels Amazon's explanation a "pretext," Compl.¶ 76, and speculates that "Amazon conjure[d] up after-the-fact reasons for closing H2F's account."  Compl. ¶ 103.  Plaintiff cannot have it both ways:  it cannot be true that Amazon "conjure[d] up after-the-fact reasons" for the termination, and that Amazon relied on the purported truth of Apple's notice of infringement – especially if Amazon did not believe the notice to be true.

[7] Apple incorporates Amazon's contract arguments in support of its Motion to Dismiss by reference.

Indeed, even if Amazon *did not* possess an unqualified contractual right to terminate Plaintiff, the existence of any other unrebutted complaint about counterfeiting in violation of Amazon's seller policies would still have constituted grounds for Plaintiff's termination under Plaintiff's construction of the seller agreement. *See Burkheimer v. Thrifty Inv. Co*., 533 P.2d 449, 451. (Wash. Ct. App. 1975) ("Thrifty would have breached its lease regardless of Grandmore's act; the argument that Grandmore was a moving cause, the proximate cause or the cause in fact of the breach must therefore fail"); *TES Liquidating, Inc. v. Smith*, 2010 Wash. App. LEXIS 40, 11 (Wash. Ct. App. Jan. 12, 2010) (unpublished) (intentional interference claim fails where antecedent acts caused alleged injury); *cf. NBT Bancorp v. Fleet/Norstar Fin. Group*, 215 A.D.2d 990, 990 (NY. Ct. App. 1995) (actions of dissenting director were a superseding cause defeating causation element of claim for tortiously interfering with merger).

All of Plaintiff's claims must be dismissed for failure to allege facts establishing plausibly that Apple caused the termination of Plaintiff as a seller.  Giving effect to Plaintiff's pleading admissions, amendment would be futile and dismissal should be with prejudice.

### B.   *Noerr-Pennington* Bars All Claims For Damages Arising from Apple's Infringement Notice

Plaintiff's lawsuit is also foreclosed by the *Noerr-Pennington* doctrine.  The *Noerr-Pennington* doctrine "bars any claim, federal or state, common law or statutory, that has as its gravamen constitutionally-protected petitioning activity."  *Leadbetter v. Comcast Cable Communs., Inc.,* 2005 U.S. Dist. LEXIS 45365, at *12 (W.D. Wash. Aug. 19, 2005) (citation omitted); *see also Sanders v. Brown*, 504 F.3d 903, 919 (9th Cir. 2007).  In other words, it bars plaintiffs from suing defendants for good faith efforts to protect or assert legal rights.  *See Sosa v. DIRECTV*, Inc., 437 F.3d 923, 933 (9th Cir. 2006); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1006-07 (9th Cir. 2008).[8]  *Noerr-Pennington* immunizes Apple from suit here because the gravamen of *all* of Plaintiff's claims is the single infringement notice

---

[8] Apple's *Noerr-Pennington* privilege is distinct from the even broader privilege applicable under Washington law discussed below in connection with H2F's tort claims.

1   Apple sent to Amazon in June 2013.

2        The Ninth Circuit has made clear that pre-suit demand letters and other efforts "to

3   settle legal claims short of filing a lawsuit" are privileged under the *Noerr-Pennington* doctrine

4   and are not actionable in U.S. courts.  *Sosa*, 437 F.3d at 932-933 (settlement-related conduct);

5   *Theme Promotions*, 546 F.3d at 1007 (pre-suit demand letter).  The doctrine applies to

6   infringement notices, including infringement notices sent to third parties, like the one in this

7   case.  *See, e.g., Rock River Commc'ns., Inc. v. Universal Music Group, Inc*., 745 F.3d 343, 351

8   (9th Cir. 2014) (infringement notice from rights holder to accused infringer's business partners

9   protected by *Noerr-Pennington*); *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp*.,

10   711 F. Supp. 2d 1074, 1082-83 (C.D. Cal. 2010) (defendant's threats to third parties to

11   terminate their licenses if they continued dealing in plaintiff's non-conforming goods protected

12   under *Noerr-Pennington*); *Weiland Sliding Doors & Windows, Inc. v. Panda Windows &*

13   *Doors, LLC,* 2010 U.S. Dist. LEXIS 115312, at \*13-16 (S.D. Cal. Oct. 28, 2010) (discussing

14   application of Noerr-Pennington doctrine to licensing demands to accused patent infringer's

15   customers);[9] *Thermos Co. v. Igloo Prods. Corp*., 1995 U.S. Dist. LEXIS 14221, at \*13-14

16   (N.D. Ill. Sept. 27, 1995) (attempts to protect trademark, including cease and desist letters to

17   third parties, privileged under *Noerr-Pennington*).  *Modular Arts, Inc. v. Interlam Corp.*, 2007

18   U.S. Dist. LEXIS 51225, at \*8-9 (W.D. Wash. July 13, 2007), is instructive.  In that case, a

19   copyright owner had sent a letter to a third-party distributor demanding that the distributor stop

20   selling a particular manufacturer's infringing items.  *Id.* at \*2.  When the manufacturer sued

21   the copyright owner under Washington's Consumer Protection Act, the district court relied on

22   *Noerr-Pennington* to dismiss the suit.  *Id.* at \*8-9.

23        To overcome *Noerr-Pennington*'s bar, a plaintiff must establish that the defendant's

24

---

25   [9] Citing *Matsushita Elecs. Corp. v. Loral Corp*., 974 F. Supp. 345, 359 (S.D.N.Y. 1997); *see also Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) (patent infringement notices); *Aircapital*

26   *Cablevision, Inc. v. Starlink Comm'ns Grp., Inc*., 634 F.Supp. 316, 322 (D. Kan. 1986) (litigation publicity aimed at customers); *but see Amaretto Ranch Breedables v. Ozimals, Inc*., 2010 U.S. Dist. LEXIS 141242, at \*5 (N.D.

27   Cal. Dec. 21, 2010) (no privilege where DMCA notice was not "an offer of settlement or necessarily a pre-suit step to the bringing of an infringement action."); *contra OG Int'l, Ltd. v. Ubisoft Entm't*, 2012 U.S. Dist. LEXIS

28   145408, at \*6-8 (N.D. Cal. Oct. 9, 2012) (*Noerr-Pennington* "does not require that a lawsuit actually be filed").

---

efforts to protect its legal rights were a "sham".  *Rock River Commc'ns*., 747 F.3d at 351.  The

sham exception requires a two-part showing.  *See Prof'l Real Estate Investors v. Columbia*

*Pictures Indus*., 508 U.S. 49, 60-61 (1993); *Manistee Town Ctr. v. City of Glendale,* 227 F.3d

1090, 1094 (9th Cir. 2000).  First, a plaintiff must establish that defendant's litigation-related

conduct was "objectively baseless." *Manistee Town Ctr.*, 227 F.3d at 1094.  Second, a plaintiff

must establish that the baseless conduct was motivated by a subjective intent "to interfere

directly with the business relationships of a competitor."  *Id*.  Proof that conduct was

objectively baseless is a "threshold prerequisite;" a court may not even consider the

defendant's allegedly illegal objective "unless it first determines that the underlying conduct

was objectively baseless."   *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000) (citation

omitted).  Sham litigation allegations must be pleaded with particularity.  *Oregon Natural*

*Resources Council v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991) (particularity required).

Plaintiff does not come close to satisfying this test.  Not a single allegation in the

Complaint suggests that Apple's infringement notice to Amazon was "objectively baseless."

On the contrary, the Complaint discloses an objective basis for sending the notice Plaintiff

complains of.  Plaintiff acknowledges that numerous customers had lodged counterfeiting

complaints regarding the ASINs associated with Plaintiff's iPad cases, Compl. ¶¶ 29-30, 68,

72; Apple had previously contacted Amazon regarding Plaintiff's objectionable use of another

ASIN associated with Apple, Compl. ¶¶ 71, 75; and Plaintiff, who was not an authorized

online distributor of Apple products, was selling iPad cases at suspiciously low prices, which

is often an indicator of counterfeiting activity in and of itself, Compl. ¶ 29, 41, 72.  *See, e.g.,*

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Eastimpex*, 2007 U.S. Dist. LEXIS 7880,

at *33-34 (N.D. Cal. Feb. 2, 2007) (goods priced far below market price for genuine branded

goods support inference of high risk of counterfeiting); *Fonovisa, Inc. v. Cherry Auction, Inc*.,

847 F. Supp. 1492, 1494-95 (E.D. Cal. 1994) *rev'd on other grounds at* 76 F.3d 259 (9th Cir.

1996) (vendors selling "at tellingly low prices" supports finding of infringement); *Husbands*

*for Rent, Inc. v. Handy Husbands for Rent, Inc*., 2006 U.S. Dist. LEXIS 6843, at *9 (N.D. Cal.

Feb. 23, 2006) (customer complaints evidence infringement).[10]  Thus, even if the Court were to credit Plaintiff's conclusory allegation that Apple's notice turned out to be in error (Compl. ¶ 39), it would not make the notice a sham.

The Complaint fails the second step in the sham litigation analysis as well.  The Complaint does not even contain a conclusory allegation that Apple subjectively believed that its infringement notice was false when made.  Nor does the Complaint allege facts with particularity suggesting that Apple knew Plaintiff was selling *genuine* new iPad cases when it sent the June 2013 notice.  Instead, Plaintiff alleges that when Plaintiff contacted Apple about the notice, they "amicably resolved" the issue based on Plaintiff's agreement "not to list any Smart Covers [sic] or other Apple products under [ASINs] associated with counterfeit products," and Apple so advised Amazon in  writing several times. Compl. ¶ 68.  Apple's course of conduct, as demonstrated by Plaintiff's own allegations, is flatly inconsistent with a subjective intent to interfere with Plaintiff's business relationships, as is required to satisfy the sham exception.  *Manistee Town Ctr.*, 227 F.3d at 1094.

Plainly, Apple had an objective basis to believe that its rights were being infringed and acted appropriately by sending notice to protect those rights.  Plaintiff cannot amend around its own admissions to allege that Apple's conduct was objectively unreasonable and that Apple did not subjectively believe its notice.  *Noerr-Pennington* requires dismissal with prejudice.

## C.   H2F Cannot State a Claim for Intentional Interference with a Business Expectancy Against Apple

There are five elements of a claim for intentional interference with business expectancy under Washington law: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendant[] had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendant[] interfered for an improper purpose or used improper means; and (5) resultant

---

[10] *Accord Symantec Corp. v. Logical Plus, Inc*., 2009 U.S. Dist. LEXIS 97447, at *21 (N.D. Cal. Oct. 20, 2009) (similar); *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.,* 256 F. Supp. 399, 404 (S.D.N.Y. 1966) (a suspiciously low price allows an inference of constructive knowledge of the illegitimacy of the product); *Microsoft Corp. v. Software Wholesale Club, Inc.*, 129 F. Supp. 2d 995, 1010 (S.D. Tex. 2000) (same).

damage." *Leingang v. Pierce Cnty. Med. Bureau*, 930 P.2d 288, 300 (Wash. 1997).  Plaintiff strikes out on the last three.  It has not plausibly alleged that Apple intentionally interfered with its seller relationship with Amazon, or that Apple did so for an improper purpose or used improper means.  Even if it could plausibly plead both of those essential elements, it could not plead that Apple's conduct caused Plaintiff injury, as explained above.  *Supra* at Section IV.A.

To begin with, Plaintiff has not alleged facts to show that Apple *interfered* with Plaintiff's *seller agreement* with Amazon.  The Complaint acknowledges that Apple's notice of June 2013 infringement was limited to two ASIN *listings* for purportedly genuine Apple iPad Smart Cover cases.  Amazon's separate and distinct decisions to suspend and then permanently terminate H2F's *seller privileges* arose from Amazon's *independent* contractual relationship, to which Apple was not a party.  The element of interference is absent because Plaintiff does not allege that Apple requested suspension, termination, or even referred to any action by Amazon concerning Plaintiff's contractual status as an amazon.com *seller*.

Plaintiff also fails to allege improper purpose and improper means.  Indeed, Apple's conduct as alleged in Plaintiff's Complaint is categorically inconsistent with such a finding.  It is settled law that "[o]ne who in good faith asserts a legally protected interest is not liable for tortious interference."  *Hazelquist v. Guchi Moochie Tackle Co.,* 2004 U.S. Dist. LEXIS 13991, at *3 (W.D. Wash. May 12, 2004) (patent infringement notice not actionable under Washington intentional interference law) (citing *The Bryant Corp. v. Outboard Marine*, 1994 U.S. Dist. LEXIS 18371, at *16 (W.D. Wash. Sept. 29, 1994) and *Brown v. Safeway Stores, Inc.*, 617 P.2d 704, 713 (Wash. 1980)).  A good faith assertion of legal rights is the only inference that can be drawn from Plaintiff's pleadings here.

Plaintiff's allegations do not amount to a lack of good faith.  Plaintiff alleges: (1) Apple simply didn't like Plaintiff's "aggressive price point"; (2) Apple delayed informing Amazon of the inaccuracies in its report and withdrawing its complaint with Amazon; and (3) Apple "failed to undertake a good faith investigation of customer allegations giving rise to the "takedown." Compl. ¶¶ 122-24.  None of these allegations suggests anything "improper."  First, a trademark owner is entitled to regard the unusually low prices of an unauthorized seller

as an indication of possible counterfeiting, so Plaintiff's pure speculation that Apple "didn't like" its pricing is not a plausible "improper motive." *See supra* at 11 and note 8.

Second, as to the conclusory assertion that Apple "unduly delayed" resolution of its counterfeiting allegations against Plaintiff, the facts alleged fail to support this contention. After Amazon terminated Plaintiff on June 18, 2013, Apple accommodated Plaintiff and contacted Amazon voluntarily sometime within the following week (prior to June 25, 2013) to advise that it had withdrawn its complaint.  Compl. ¶¶ 59, 63.  Although it had no obligation to do so, Apple continued to follow up with Amazon at Plaintiff's request in the following weeks. Compl. ¶¶ 66, 68.  Amazon followed its own course, however.  The notion that Apple sent an infringement notice in bad faith only to accommodate Plaintiff's subsequent requests for assistance is implausible.

Third, there is no justification for drawing an inference of bad faith from the allegations that Apple did not do more before sending its notice.  The numerous consumer complaints of counterfeit iPad cases and Plaintiff's abnormally low pricing indicative of counterfeit products, *see supra* at p. 5-6, provided a sufficient objective basis, without more, for a notice of potential infringement.  Notably, Plaintiff does not allege that Apple possessed *contradictory* facts in June 2013 imply a lack of good faith.  *See Centurion Props., III, LLC v. Chi. Title Ins. Co.,* 2013 U.S. Dist. LEXIS 93808, at *18 (E.D. Wash. July 3, 2013) (intentional interference "require[s] the Plaintiffs to show the absence of good faith.").  We have identified no authority that a rights holder armed with consumer complaints and suspiciously low prices acts in bad faith when it serves a notice of infringement without first interviewing another retailer's customers, conducting "test buys," or communicating directly with a potential infringer as Plaintiff contends.  *See* Compl. ¶¶ 35 - 40.[11]

## D.    The Complaint Does Not Adequately Allege Defamation

"The elements of a cause of action for defamation in Washington are (1) a false statement; (2) lack of privilege; (3) fault; and (4) damages."  *See Phillips v. World Publ'g Co.,*

---

[11] "[T]rademark owners have a duty to police the market and protect their trademarks."  *Camboni v. MGM Grand Hotel, LLC,* 2012 U.S. Dist. LEXIS 98039, at *13 (D. Ariz. July 16, 2012)

1   822 F. Supp. 2d 1114, 1118 (W.D. Wash. 2011) (citing *Herron v. KING Broad. Co.*, 776 P.2d

2   98, 101 (Wash. 1989).  To state a claim, the plaintiff's "complaint must consist of specific,

3   material facts, rather than conclusory statements, that would allow a jury to find that each

4   element of defamation exists." *Lye v. City of Lacey*, 2012 U.S. Dist. LEXIS 91523, at *13

5   (W.D. Wash. June 29, 2012) (internal citations and quotations omitted).  Plaintiff has not

6   alleged facts to support three of these elements: falsity, lack of privilege, and fault.

7            Beginning with falsity, Plaintiff's sole allegation is that "the Items sold by H2F were

8   not counterfeit," Compl. ¶ 39.  But Plaintiff does not make the slightest attempt to substantiate

9   the assertion, even though one would expect such a showing to be easy for a seller of genuine

10  new articles.  Plaintiff does not allege that it was an authorized online Apple retailer, nor does

11  it otherwise explain how it managed to sell genuine new Apple iPad cases at inexplicably low

12  prices.  Plaintiff's conclusory allegation that the counterfeiting notice was "in error" is

13  insufficient to support a plausible claim that Apple's infringement notice was false. *See*

14  *Doscher v. Swift Transp. Co.*, 2009 U.S. Dist. LEXIS 106105, at *10 (W.D. Wash. Nov. 13,

15  2009) ("for a complaint to survive a motion to dismiss the non-conclusory factual content, and

16  reasonable inferences from that content must be plausibly suggestive of a claim entitling the

17  pleader to relief") (citation omitted); *Stone v. Becerra*, 2010 U.S. Dist. LEXIS 118311, at *19

18  (E.D. Wash. Nov. 8, 2010) ("sheer speculation" and "conclusory" allegations insufficient to

19  survive motion to dismiss); *see also Technomarine SA v. Jacob Time, Inc.*, 2012 U.S. Dist.

20  LEXIS 90261, at *6 (S.D.N.Y. June 22, 2012) ("The amended complaint is devoid of facts that

21  plausibly show that the watches at issue are either counterfeit or non-genuine, or authentic but

22  unlawfully acquired").

23           The Complaint also has not alleged facts to *establish* that Apple's notice was not

24  privileged, another required element of a defamation claim.  "Statements are privileged if they

25  are made: (1) in good faith; (2) if there is an interest to be upheld; (3) if the statement was

26  limited in its scope to this purpose; (4) if the statement was made at a proper occasion; and

27  (5) if publication was made in a proper manner to the appropriate parties only."  *Allstate Ins.*

28  *Co. v. Tacoma Therapy, Inc.*, 2014 U.S. Dist. LEXIS 52934, at *12 (W.D. Wash. Apr. 16,

DEFENDANT APPLE INC.'S MOTION TO
DISMISS:  2:14-cv-00950                                    - 16 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

2014).  For reasons explained already, Plaintiff has not alleged plausible facts—such as contradictory information in Apple's possession when it sent the notice—to suggest that Apple made a statement in bad faith.  Even if the Court were to accept Plaintiff's conclusory allegation that Apple's infringement notice turned out later to be "in error," this still falls short of the facts required to show the absence of good faith.  Plaintiff's Complaint establishes that: (1) Apple sent its infringement notice in good faith; (2) to uphold its trademark rights; (3) Apple's notice was limited in its scope to only the products listed under the troubled ASINs; (4) the report was made at a proper occasion (when the listings were live); and (5) the report was made to Amazon alone through normal channels.  *See* Compl. ¶¶ 26; 161.

Finally, Plaintiff has failed to allege "fault."  Under Washington law, a notice of infringement of intellectual property rights is a matter of public concern, so Plaintiff must establish that Apple acted with actual malice in order to state a defamation claim.  *See Alpine Indus. v. Cowles Publ'g Co.*, 57 P.3d 1178, 1191 (Wash. Ct. App. 2002) (applying actual malice standard because software piracy is a "matter of public concern"); *see also Momah v. Bharti*, 182 P.3d 455, 462 (Wash. Ct. App. 2008) (counterfeiting is a matter of public concern).  Having alleged no facts to show that Apple had knowledge or was reckless with respect to the truth or falsity of its notice, Plaintiff has failed to allege the actual malice needed to satisfy the element of "fault."

**E.      H2F's Unjust Enrichment Claim Fails Because H2F Has Not Pled Apple's Receipt of an Unjust Benefit**

"A claim of unjust enrichment requires proof of three elements—(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Norcon Builders, LLC v. GMP Homes VG, LLC,* 254 P.3d 835, 844 (Wash. Ct. App. 2011) (quotation omitted).  Here, Plaintiff's unjust enrichment claim appears to be based on the Complaint's insufficient antitrust allegations, and thus fails for the same reasons set forth in Section IV.F.  *See Lubic v. Fid. Nat'l Fin., Inc*., 2009 U.S. Dist. LEXIS 62092, at *17 (W.D. Wash. July 20, 2009) (dismissing unjust enrichment claim predicated on deficiently pled antitrust claim).

In addition, the Complaint fails to allege facts to show that Apple received a benefit at Plaintiff's expense.  The Complaint does not allege that Apple received any benefit from Plaintiff *directly*, of course, because it alleges no relationship or commercial transaction between them.  The Complaint alleges equivocally that Apple *may* have been enriched "*to the extent* it gained market share as a result of H2F's closure,*" Compl. ¶ 151 (emphasis added), but does not allege any facts showing that Apple actually gained any market share.  Plaintiff alleges that it sold only 134 iPad cases in 2013, Compl. ¶ 40, so Apple obviously did not gain market share in any relevant market for iPad covers from any actions related to Plaintiff.[12]

### F.  The Complaint Does Not Allege the Elements of a "Price-Fixing" Claim[13]

To state a claim under Section 1 of the Sherman Act, 15 U.S.C. § 1, plaintiff must allege (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce, (3) which actually injures competition.  *William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 (9th Cir. 2009) (citations omitted).[14]  The Complaint does not allege the elements to sustain any antitrust claim, labeled "vertical," "horizontal" or otherwise.

Before turning to Plaintiff's failure to plead the basic elements of its claim, it is apparent that the conspiracy seemingly alleged is utterly implausible.  Identifying no other conspirators and no other affected sellers, Plaintiff asks the Court to indulge the fanciful notion that Apple and Amazon conspired to fix prices for iPad cases by barring *only* Plaintiff—seller of 134 covers in two years—while permitting other sellers to continue selling iPad cases at essentially the same prices offered by Plaintiff.[15]  Plaintiff's solipsistic theory is not "plausible

---

[12] H2F's market share allegation is also nonsensical.  Regardless whether H2F or some other retailer sold genuine Apple iPad Smart Cover cases, Apple's market share as licensor and manufacturer would be identical.

[13] Apple adopts by reference the arguments Amazon makes to dismiss Plaintiff's antitrust claims.  CITE.

[14] Analysis of H2F's antitrust claims under Washington law is guided by the same principles applicable to H2F's federal claims.  *See, e.g., Golob & Sons v. Schaake Packing Co.*, 609 P.2d 444, 445 (Wash. 1980) ("Washington's comprehensive antitrust law, the Consumer Protection Act, RCW 19.86, closely parallels federal antitrust laws.");  *Blewett v. Abbott Labs.*, 938 P.2d 842,845-46 (Wash. Ct. App. 1997) (the Washington antitrust provision is construed according to federal law.); *Nat'l Flood Servs. v. Torrent Techs., Inc.*, 2006 U.S. Dist. LEXIS 34196 at *35-36 (W.D. Wash. May 25, 2006) (analyzing state antitrust claims under federal standards).

[15] Apple does not concede the truth of H2F's allegation that Apple "permits" other sellers to sell products where

in light of basic economic principles." *See William O. Gilley Enters.*, 588 F.3d at 662 (citing *Twombly*, 550 U.S. at 556).  The only plausible explanation for the termination of one seller as insignificant as Plaintiff is that Apple acted in good faith to protect its rights, and Amazon acted independently, on the information at its disposal, to maintain a safe site for consumers to purchase genuine goods.   Under *Twombly*, the Court must dismiss Plaintiff's antitrust claims if the facts alleged give rise to an inference of lawful conduct that is just as plausible as Plaintiff's theory of unlawful conduct.  *E.g., Redlands Country Club, Inc. v. Cont'l Cas. Co*., 2011 U.S. Dist. LEXIS 155911, *7-8 (C.D. Cal. Jan. 28, 2011).   Here, the inference that Apple's conduct was lawful is far more plausible than the inference of unlawful conduct.

### 1.    Plaintiff Alleges No Illegal Contract, Combination or Conspiracy to Restrain Trade

Whether labeled "vertical" or "horizontal" price fixing, Plaintiff fails to allege any contract, combination or conspiracy intended to harm or restrain trade.  Plaintiff's conspiracy contentions are predicated entirely on Apple's notices of infringing listings to Amazon.  No other communications are alleged.  Plaintiff implies that Apple's complaint about infringing product listings evidences a larger antitrust agreement or conspiracy, but this precise inference has been rejected by the Supreme Court as a matter of law.  *Monsanto Co. v. Spray-Rite Serv. Corp.,* 465 U.S. 752, 763 (1984) ("Permitting an agreement to be inferred merely from the existence of complaints, or even from the fact that termination came about 'in response to' complaints, could deter or penalize perfectly legitimate conduct").

In addition to *Noerr-Pennington* immunity, Apple's notices cannot constitute the subject of the illegal conspiracy because the Ninth Circuit has adopted a presumption that a business's desire to exclude others from its intellectual property is a "presumptively valid" business justification for purposes of antitrust law.  *Fin. & Sec. Prods. Ass'n v. Diebold*, 2005 U.S. Dist. LEXIS 45409, at *14-15 (N.D. Cal. July 8, 2005) (citing *Image Tech. Servs. v. Eastman Kodak Co*., 125 F.3d 1195, 1218 (9th Cir. 1997)); *A&M Records v. Napster, Inc.,* 239

---

indicia of counterfeiting (including suspiciously low prices) are present.

DEFENDANT APPLE INC.'S MOTION TO
DISMISS:  2:14-cv-00950

- 19 -

F.3d 1004, 1027 (9th Cir. 2001).  Plaintiff's allegations evince nothing more than presumptively valid efforts to protect Apple's intellectual property rights — conduct that *does not* give rise to a plausible inference of antitrust violations as a matter of law.  *E.g., Adidas Am., Inc. v. Payless Shoesource, Inc*., 546 F. Supp. 2d 1029, 1078 (D. Oregon 2008) ("To the extent that Payless' … antitrust defenses are premised upon adidas' aggressive trademark enforcement efforts, those claims are barred").  Factual allegations do not cross the line between possibility and plausibility when the actions alleged are "more likely explained by lawful, unchoreographed free-market behavior" or "obvious alternative explanation[s]."  *Iqbal*, 556 U.S. at 680-82 (emphasis added; internal quotation marks and punctuation omitted).

Apple's complaints about infringing listings cannot constitute an unlawful antitrust agreement as a matter of law, and Plaintiff offers no other communications or events to satisfy this element.  Plaintiff's formulaic recitation of "conspiratory and/or concerted action," Compl. ¶ 103, is insufficient.  *See Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1046 (9th Cir. 2008).  A "common scheme" or "meeting of the minds" is a "prerequisite to section 1 liability."  *The Jeanery, Inc. v. James Jeans, Inc*., 849 F.2d 1148, 1155 (9th Cir. 1988).  But Plaintiff never alleges what Apple and Amazon schemed or agreed to do here.  Plaintiff also has failed to allege how the purported conspiracy came into existence.  "To allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a specific time, place, or person involved in the alleged conspiracies to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall*, 518 F.3d at 1047 (citing *Twombly*).  Complaints must provide specificity, "particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements daily." *Id*.  Who at each company communicated with whom, when, what did they agree to do, and what markets were they seeking to affect?  Plaintiff offers no answers to these basic questions.  With no combination, contract or conspiracy alleged, Plaintiff has failed to state any antitrust claim, vertical or horizontal.  This failure requires dismissal of Plaintiff's antitrust claims.

## 2. Plaintiff Has Not Alleged A *Per Se* Horizontal Price Fixing Claim.

As one "alternative" antitrust claim, Plaintiff alleges a *per se* illegal price fixing

conspiracy.  In the absence of an agreement to fix prices, even if Plaintiff alleged facts

showing that Apple and Amazon had conspired or agreed to "terminate" Plaintiff as a seller—

which Plaintiff indisputably has not—it still would not satisfy this essential element of a *per se*

Section 1 claim.  Simply agreeing to terminate a purported price-cutter is not *per se* illegal

under the antitrust laws.  *See Business Electronics Corp. v. Sharp Electronics Corp.,* 485 U.S.

717, 726 (1988) ("an agreement between a manufacturer and a dealer to terminate a 'price

cutter,' without a further agreement on the price or price levels to be charged by the remaining

dealer" held insufficient to state a *per se* antitrust claim); *see also Jeanery, Inc.*, 849 F.2d at

1157 (evidence that manufacturer and distributor acted in concert to terminate price-cutter

insufficient to permit price-fixing claim to go to the jury where there was no evidence of

agreement on price); *Euromodas, Inc. v. Zanella, Ltd.,* 368 F.3d 11, 21 (1st Cir. 2004)  ("An

agreement to terminate a price-cutter to placate another dealer does not constitute a *per se*

violation of *section 1* the Sherman Act") (emphasis added).[16]

Plaintiff makes no allegation of an agreement between competitors to fix prices for

particular products.  Instead, Plaintiff argues in its opposition to Amazon's motion to dismiss

that Amazon and Apple's conduct, viewed together, constitutes circumstantial evidence of a

conspiracy to eliminate Plaintiff from amazon.com.  Dkt. # 24 at 25.  But Plaintiff still fails to

offer allegations supporting an inference of a *per se* unlawful conspiracy to affect price, unlike

the cases Plaintiff invokes, neither of which concern pleading.  *See id.* (citing *Esco v. United

States*, 340 F.2d 1000, 1006 (9th Cir. 1965) and *Standard Oil Co. v. Moore*, 251 F.2d 188, 208

(9th Cir. 1957).[17]  Without such allegations Plaintiff cannot state a claim for per se antitrust

violations based on an alleged conspiracy to terminate Plaintiff as an amazon.com seller.

---

[16] The Complaint does not alleged that H2F was a dealer, that Amazon was a dealer, or that Amazon had any existing distribution agreement with H2F, so Plaintiff's position is decidedly *weaker* than the failed claims in these cases.  *Compare Business Electronics,* 485 U.S. at 721 (discussing details of plaintiff's claim).

[17] In *Esco*, one conspirator called its competitors to announce its new pricing scheme and subsequently pled nolo contender to criminal price-fixing charges; these facts taken together amounted to circumstantial evidence of conspiracy.  340 2d at 1006.  And in *Moore*, concerted refusal to deal with the plaintiff was sufficient circumstantial evidence where one of the defendants had previously threatened: "we break a service station operator like you if you don't do what you are told on these price signs." 251 F.2d at 208.

DEFENDANT APPLE INC.'S MOTION TO
DISMISS:  2:14-cv-00950                    - 21 -

ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, Washington  98104-7097
+1-206-839-4300

### 3.   Plaintiff Alleges None of the Essential Elements to Sustain A Vertical Price Fixing Claim Either

Vertical price-fixing occurs where a supplier and a distributor agree to set resale prices charged by the distributor.  *See, e.g., Stanislaus Food Prods. Co. v. USS-POSCO Indus*., 2010 U.S. Dist. LEXIS 92236, at *73 (E.D. Cal. Sept. 3, 2010) (citations omitted).  Because so-called "vertical" price-fixing agreements are not *per se* unlawful, they must be "judged according to the rule of reason" and are unlawful only when the alleged restraint on trade is unreasonable.  *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 907 (2007).  Plaintiff has not pleaded any of the additional elements required to state an antitrust violation under the rule of reason.

To properly plead a claim that invokes the rule of reason, a plaintiff must (1) define the relevant geographic and product markets, *e.g.*, *Tan v. Univ. of S. Cal*., 252 F.3d 1059, 1063 (9th Cir. 2001);[18](2) allege that the defendant has market power within the relevant market, *Rick-Mik Enters. v. Equilon Enters*., LLC, 532 F.3d 963, 972-73 (9th Cir. 2008);[19] and (3) allege that the conduct at issue caused harm to competition in a properly defined market. *See, e.g*., United States v. *eBay Inc.*, 968 F. Supp. 2d 1030, 1037 (N.D. Cal. 2013).  Plaintiff makes no effort to satisfy any of these three pleading elements, and any one of these deficiencies is enough in and of itself to require dismissal of Plaintiff's vertical price-fixing claim.  *See Rick-Mik Enters.*, 532 F.3d at 972-73 (failure to define market warrants dismissal); *Pa. Ave. Funds v. Borey*, 569 F. Supp. 2d 1126, 1134 (W.D. Wash. 2008) (citing *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008) (allegation of market power is a "threshold" pleading requirement));[20] *eBay*, 968 F. Supp. 2d at 1037 (complaint

---

[18] Merely referencing the market for Apple products is insufficient to define a cognizable market for purposes of an antitrust claim.  *See Formula One Licensing, B.V. v. Purple Interactive Ltd.*, 2001 U.S. Dist. LEXIS 2968, at *8 (N.D. Cal. Feb. 6, 2001) (dismissing antitrust claim where market was improperly defined by reference to trademarked products).

[19] Abrogated on other grounds by amendment to Rule 15.  *See Lau v. Guam Dep't of Educ*., 2011 U.S. Dist. LEXIS 67541, at *6 (D. Guam June 23, 2011).

[20] *See also Pioneer Family Invs., LLC v. Lorusso*, 2014 U.S. Dist. LEXIS 86367, at *12, 22 (D. Ariz. June 24, 2014); *Rocky Mt. Med. Mgmt., LLC v. LHP Hosp. Group, Inc*., 2013 U.S. Dist. LEXIS 78521, at *48 (D. Idaho Sept. 30, 2013); *Sidibe v. Sutter Health*, 2013 U.S. Dist. LEXIS 78521, at * 46 (N.D. Cal. June 3, 2013).

1  must allege market effects for rule of reason analysis).  Plaintiff does not even try to identify a

2  relevant market or allege market power.

3          Plaintiff also fails to allege harm to competition in a relevant market.  The only

4  allegations concerning the effects caused by Defendants' purported conspiracy are that

5  (1) Amazon "shuttered" H2F's Amazon account (Compl. ¶¶ 65, 71); and (2) the price of iPad

6  cases in interstate commerce purportedly increased by some indeterminate amount (Compl. ¶¶

7  41, 55, 105, 108).  "[E]conomic injury to a competitor does not equal injury to competition,"

8  *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 812 (9th Cir. 1988) (internal citations

9  omitted), and even accepting Plaintiff's conclusory statement that Apple's prices for iPad

10 cases increased, a price increase imposed by a manufacturer on its own product does not

11 establish injury to competition.[21]  *See, e.g., Mularkey v. Holsum Bakery, Inc*., 146 F.3d 1064,

12 1065 (9th Cir. 1998) (manufacturer's unilateral imposition of minimum pricing not an antitrust

13 violation).  Plaintiff makes no other allegations to make out a plausible case for harm to

14 competition.   Plaintiff has alleged none of the elements of a rule of reason claim.

15         In any event, Plaintiff lacks standing to assert antitrust claims based on alleged price

16 increases that *benefit* rather than harm competitors.  *See Matsushita Elec. Indus. Co. v. Zenith

17 Radio Corp*., 475 U.S. 574, 583 (1986) (competitor lacks standing where injury alleged is

18 increased market prices); *Atlantic Richfield Co. v. USA Petroleum Co*., 495 U.S. 328, 337

19 (1990) (same, overruled on other grounds); *Big Bear Lodging Ass'n v. Snow Summit, Inc*., 182

20 F.3d 1096, 1102 (9th Cir. 1999) (same).

21         **G.     The Complaint Does Not Allege Any Unfair or Deceptive Conduct Within
22                  the State of Washington to Support a Consumer Protection Act Claim**

23         Plaintiff's CPA claim is based entirely on the allegation that a paralegal employed by

24 Apple's outside counsel in California acted as a "private investigator" without a Washington

25 business license in violation of Wash. Rev. Code 18.165.150, and that this constitutes a

26

27 _____
   [21] The Complaint defines the relevant "Items" to be the Apple iPad 2 Leather Smart Cover and the Apple iPad
28 Smart Cover-Polyurethane-Blue as referenced in the correspondence quoted in paragraph 26.  Compl. ¶ 26 n.3.

violation of Washington Consumer Protection Act, Wash. Rev. Code 19.86.020.  Plaintiff's claim is frivolous.

"To prevail on a CPA action, the plaintiff must prove an (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation."  *Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1185 (Wash. 2013); *quoting Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 532 (Wash. 1986).  Plaintiff's CPA claim fails for at least three reasons.  First, there is no private right of action for a violation of Wash. Rev. Code 18.165, the predicate violation alleged by Plaintiff, and the Legislature has not declared a violation of Wash. Rev. Code 18.165 to be a *per se* violation of the Washington Consumer Protection Act, Wash. Rev. Code 19.86 *et seq*.  *See Hangman Ridge*, 719 P.2d at 536 (discussing *per se* CPA claims).  Second, Plaintiff has not alleged facts to suggest that the conduct of Apple's outside legal counsel was "unfair or deceptive," or that H2F was deceived.  *See Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 901 (Wash. 2009).  Instead, Plaintiff alleges it was fully aware of the activities of Kilpatrick and its case assistant.  *See* Compl. ¶ 60.

Finally, the predicate business licensing statute simply does not apply to the conduct at issue.  The statute defines a private investigator as a person "employed by a private investigator agency for the purpose of investigation, escort or body guard services, or property loss prevention activities."  Wash. Rev. Code 18.165.010.  The statute specifically exempts law firms.  Wash. Rev. Code 18.165.020(4).  And none of the "investigative" conduct underlying this claim is alleged to have occurred within the State of Washington, so none of it is subject to the Washington business licensing statute to begin with.

## V.    **CONCLUSION**

For the foregoing reasons, Apple respectfully requests dismissal of each of Plaintiff's claims against Apple.  In light of Plaintiff's pleading admissions regarding causation, as well as Plaintiff's pleading admissions establishing the objectively reasonable basis for Apple's infringement notice under *Noerr-Pennington*, dismissal should be with prejudice.

1      DATED:  September 30, 2014.

2

3                                                    ORRICK, HERRINGTON & SUTCLIFFE LLP

4                                                    By:  s/Daniel J. Dunne
                                                          s/Robert A. Rosenfeld
5                                                         s/Gabriel M. Ramsey
                                                          s/Robert L. Uriarte

6                                                          Daniel J. Dunne   WSBA# 16999
                                                          ddunne@orrick.com
7                                                         701 Fifth Avenue, Suite 5600
                                                          Seattle, Washington  98104-7097
8                                                         Telephone:  +1-206-839-4300
                                                          Facsimile:  +1-206-839-4301

9
                                                          Robert A. Rosenfeld, *pro hac vice*
10                                                        405 Howard Street
                                                          San Francisco, CA 94105
11                                                        rrosenfeld@orrick.com
                                                          Telephone: +1-415-733-5700
12                                                        Facsimile: +1-415-733-5759

13                                                        Gabriel M. Ramsey, *pro hac vice*
                                                          Robert L. Uriarte, *pro hac vice*
14                                                        1000 Marsh Road
                                                          Menlo Park, CA 94025
15                                                        Telephone: +1-650-614-7400
                                                          Facsimile:  +1-650-614-7401

16
                                                          *Attorneys for Defendant Apple Inc.*
17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT APPLE INC.'S MOTION TO
DISMISS:  2:14-cv-00950

- 25 -

1                      CERTIFICATE OF SERVICE

2        I hereby certify that on September 30, 2014 I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF System, which will send notification of such filing to the

4   those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be

5

6   served in accordance with the Federal Rules of Civil Procedure.

7

8        Dated this 30th day of September, 2014.

9

10                  By:   /s/ Daniel J. Dunne
                         Daniel J. Dunne  WSBA# 16999

11                       ddunne@orrick.com
                         701 Fifth Avenue, Suite 5600

12                       Seattle, Washington  98104-7097
                         Telephone:  +1-206-839-4300

13                       Facsimile:  +1-206-839-4301

14                   *Attorneys for Defendant Apple Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28