The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| HARD 2 FIND ACCESSORIES, INC., | ) | No. 14-cv-0950-RSM |
| | ) | |
| Plaintiff, | ) | **REPLY IN SUPPORT OF** |
| | ) | **AMAZON.COM INC.'S MOTION** |
| v. | ) | **TO DISMISS PURSUANT TO** |
| | ) | **FED. R. CIV. P. 12(b)(6)** |
| AMAZON.COM, INC., a Delaware | ) | |
| Corporation; and APPLE, INC., a California | ) | Note on Motion Calendar: |
| Corporation, | ) | October 3, 2014 |
| | ) | |
| Defendants. | ) | **Oral Argument Requested** |
| | ) | |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

REPLY IN SUPPORT OF AMAZON'S
MOTION TO DISMISS (14-cv-0950-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    ARGUMENT ............................................................................................................. 1

    A.    H2F Invokes and Relies upon an Obsolete Pleading Standard. ........................... 1

    B.    H2F's Breach of Contract and Good Faith and Fair Dealing Claims
          Contradict the Plain Terms of the BSA. ................................................................ 1

    C.    H2F Has No Claim Under the Uniform Money Services Act. ............................. 7

    D.    H2F's Antitrust Claims Fail. ............................................................................. 10

    E.    H2F's Ancillary Claims Fail. ............................................................................ 12

III.    CONCLUSION ...................................................................................................... 12

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................1

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 563 (2007) .......................................................................1, 10, 11, 12

*Conley v. Gibson*,
   355 U.S. 41 (1957) .....................................................................................................1

*deTreville v. Outboard Marine Corp.*,
   439 F.2d 1099 (4th Cir. 1971) .................................................................................5

*Evergreen Int'l Airlines, Inc. v Boeing Co.*,
   2010 U.S. Dist. LEXIS 140547 (W.D. Wash. June 9, 2010) .............................3, 6

*Kaplan v. Burroughs Corp.*,
   611 F.2d 295 (9th Cir. 1979) .........................................................................11, 12

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ...............................................................................10

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988) ...................................................................................12

*McLain v. Real Estate Bd. of New Orleans*,
   444 U.S. 232 (1980) ...................................................................................................1

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984) .................................................................................................10

*Muniz v. Microsoft Corp.*,
   2010 WL 4482107 (W.D. Wash. Oct. 29, 2010)....................................................4

*Newcal Indus. v. Ikon Office Solution*,
   513 F.3d 1038 (9th Cir. 2008) ................................................................................12

*Nw. Fin. Agency, Inc. v. Transamerica Occidental Life Ins. Co.*,
   773 F. Supp. 75 (1991) ..............................................................................................5

*Peters v. Amazon Services LLC*,
   2 F. Supp. 3d 1165 (W.D. Wash. 2013) ................................................................12

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

*Randolph v. New England Mut. Life Ins. Co.*,
    526 F.2d 1383 (6th Cir. 1975) ...................................................................5

*Siu Man Wu v. Pearce*,
    2012 WL 1463307 (W.D. Wash. Apr. 27, 2012) ...................................11

*Stoner & Assoc. v. JKC Nampa, Inc.*,
    2009 WL 901920 (W.D. Wash. Mar. 31, 2009) .....................................7

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
    875 F.2d 1369 (9th Cir. 1989) .............................................................11

**State Cases**

*Badgett v. Sec. State Bank*,
    116 Wn.2d 563, 807 P.2d 356 (1991) ...................................................6

*Ballo v. James S. Black Co.*,
    39 Wn. App. 21, 692 P.2d 182 (1984).................................................11

*Bennett v. Hardy*,
    113 Wn.2d 912, 784 P.2d 1258 (1990) .................................................7

*Cox v. Lewiston Grain Growers, Inc.*,
    86 Wn. App. 357, 936 P.2d 1191 (1997)...............................................8

*Davis v. Dep't of Transp.*,
    138 Wn. App. 811, 159 P.3d 427 (2007)...............................................7

*Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*,
    86 Wn. App. 732, 935 P.2d 628 (1997)...............................................6

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wash.2d 778, 719 P.2d 531 (1986) ...............................................10

*In re F.D. Processing, Inc.*,
    119 Wn.2d 452, 832 P.2d 1303 (1992) ..................................................9

*Lawson v. Boeing Co.*,
    58 Wn. App. 261, 792 P.2d 545 (1990)................................................4

*Myers v. State*,
    152 Wn. App. 823, 218 P.3d 241 (2009)...............................................5

*Protect the Peninsula's Future v. City of Port Angeles*,
    175 Wn. App. 201, 304 P.3d 914 (2013)...............................................8

*Roe v. TeleTech Customer Care Mgmt. (Colo.) LLC*,
    171 Wn.2d 736, 257 P.3d 586 (2011) ...................................................5

REPLY IN SUPPORT OF AMAZON'S
MOTION TO DISMISS (14-cv-0950-RSM) – iii

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

*Stewart v. Chevron Chem. Co.*,
  111 Wn.2d 609, 762 P.2d 1143 (1988) ...................................................................3, 4, 5

*Swanson v. Liquid Air Corp.*,
  118 Wn.2d 512, 826 P.2d 664 (1992) .........................................................................4, 5

*Thompson v. St. Regis Paper Co.*,
  102 Wn.2d 219, 685 P.2d 1081 (1984) ...........................................................................3

*Willis v. Champlain Cable Corp.*,
  109 Wn.2d 747, 748 P.2d 621 (1988) .........................................................................2, 5

**State Statutes**

RCW 15.49.091 ..........................................................................................................................8

RCW 19.230.005 ........................................................................................................................7

RCW 19.230.050 ........................................................................................................................8

RCW 19.230.330 ........................................................................................................7, 8, 9, 10

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### I.      INTRODUCTION

Like its complaint, H2F's Opposition (Dkt. No. 24) fails to articulate any viable claim.  H2F tries to make out contract claims by plucking a few words out of context to concoct "promises" that do not exist and improperly relying on the doctrine of good faith to contradict the express terms of the contract.  Its attempt to manufacture an implied private cause of action under the UMSA, and a derivative *per se* violation of the CPA, contradict the Legislature's intent not to allow such claims.  As for its antitrust claims, H2F's resort to pre-*Twombly* cases underscores that it cannot plead a plausible conspiracy, relevant antitrust market or injury to competition.  Finally, H2F's admission that it accepted the BSA and is suing under that contract forecloses its fiduciary duty and unjust enrichment claims.

### II.      ARGUMENT

#### A.      H2F Invokes and Relies upon an Obsolete Pleading Standard.

H2F seeks to invoke "liberal pleading standards" from pre-*Twombly* cases, Opp. at 4, and relies on language from *Conley v. Gibson*, 355 U.S. 41 (1957), to claim its complaint "should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief.'"  Opp. at 13 (citing *McLain v. Real Estate Bd. of New Orleans*, 444 U.S. 232, 246 (1980) (quoting *Conley*)).  In *Twombly* the Supreme Court **overruled** the *Conley* standard and described it as "best forgotten as an incomplete, negative gloss on an accepted pleading standard."  550 U.S. 544, 563 (2007).  H2F must instead provide "well-pleaded factual allegations," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), setting forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  H2F has failed to do so.

#### B.      H2F's Breach of Contract and Good Faith and Fair Dealing Claims Contradict the Plain Terms of the BSA.

In its Opposition, H2F continues to disregard the actual terms of the BSA—most notably Amazon's right to "terminate or suspend [the] Agreement … for any reason at any time," BSA § 3—and instead takes individual words out of context to create "promises"

REPLY IN SUPPORT OF AMAZON'S
MOTION TO DISMISS (14-cv-0950-RSM) – 1

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

where there are none.  H2F then cites old authorities from other states, ignoring Washington law that termination-at-will provisions "shall be enforced according to their terms [and] neither cause nor good faith is required before [an] agreement may be terminated." *Willis v. Champlain Cable Corp.*, 109 Wn.2d 747, 756-57, 748 P.2d 621 (1988).

H2F attempts to create contractual duties and rights based on three isolated terms it plucks from statements on the Amazon.com website and a notice Amazon sent to H2F—specifically: "thorough investigation," "fair," and "resolve."  Opp. at 5, 6 n.4, 8, 11. As a matter of law, these statements do not create contractual obligations.

H2F takes the phrase "thorough investigation" from a statement concerning an online form Amazon provides "encourag[ing] sellers to report listings" that violate laws or Amazon policies, and asking that they "[i]nclude all relevant information so we can conduct a thorough investigation."[1]  Amazon's request for information to help it police the site does not create any duty to conduct a "thorough investigation" before exercising its at-will termination right, much less any enforceable right of H2F (or other sellers) to challenge whether any investigation by Amazon is, in their view, sufficiently "thorough."

H2F similarly misstates the BSA to contend it provides a right to challenge Amazon's termination decision as not "fair."  The word comes from a statement in which Amazon explains that the "Seller Rules are established to maintain a selling platform that is safe for buyers and fair for sellers."[2]  Again, this statement cannot create a contractual duty

---

[1] The complete statement is:

> Amazon encourages sellers to report listings that violate Amazon's policies or applicable law by using our Contact Us form.  Select "Report a violation of our rules" from the drop-down menu and fill out the form.  Include all relevant information so we can conduct a thorough investigation.

Compl. ¶ 21 (Dkt. No. 1).  This is not contained in the BSA, but comes from a webpage for sellers on Amazon.com.  *See* http://www.amazon.com/gp/help/customer/display.html?nodeId=200832290.

[2] The complete statement in this instance is:

> Amazon.com Seller Rules are established to maintain a selling platform that is safe for buyers and fair for sellers.  Failure to comply with the terms of the Seller Rules can result in cancellation of listings, suspension from use of Amazon.com tools and reports, or the removal of selling privileges.

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

or give sellers rights to challenge anything Amazon does as allegedly "unfair." *See*

*Evergreen Int'l Airlines, Inc. v Boeing Co.*, 2010 U.S. Dist. LEXIS 140547, at *15-17

(W.D. Wash. June 9, 2010) (provision stating Boeing would "conduct its business fairly" is

"aspirational language" that cannot "give rise to an enforceable promise").

Finally, H2F misstates an email notice to claim Amazon committed to "'resolve'

(read:  reopen) H2F's account once Apple withdrew its complaint."  Opp. at 5.  The notice

(which Amazon sent when it blocked two listings after Apple complained of infringement)

urged H2F to "resolve this matter with the rights owner;"[3] it did not say Amazon would not

exercise its termination right.[4]  To the contrary, Amazon warned that "[f]ailure to comply

with our policies may result in the removal of your selling privileges."  Compl. ¶ 26.

H2F cannot pick isolated words out of context to create commitments or rights

contradicting the parties' contract.  For that matter, none of the statements H2F cites

modifies (or says anything about) Amazon's right to terminate a seller's account "for any

reason at any time."  Under Washington law, these statements do not create any contractual

obligations at all.  *See Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613, 762 P.2d 1143

(1988) (enforceable promises require "a manifestation of intention to act or refrain from

acting *in a specified way*" (emphasis in original)); *Thompson v. St. Regis Paper Co.*, 102

---

Compl. ¶ 23.  Again, this does not come from the BSA.  *See* http://www.amazon.com/gp/help/
customer/display.html?nodeId=200414320 (current version of webpage re seller activities).

[3] H2F's complaint quotes the notice, which stated in part:

> We are writing to inform you that these offers have been removed from our site [identifying
> listings for two iPad covers]. … We took this action because we were notified by the rights
> owner that the offers infringe their intellectual property rights and may be counterfeit.  To
> resolve this dispute, we suggest that you contact the rights owner directly [providing agent's
> name and email].  If you resolve this matter with the rights owner, please advise them to
> contact us at notice@amazon.com to withdraw their complaint.  We ask that you refrain from
> posting items manufactured by this rights owner until you have resolved this matter.  Failure
> to comply with our policies may result in the removal of your selling privileges.

Compl. ¶ 26.

[4] Indeed, as H2F acknowledges, Amazon conducted a broader review of H2F's account and
declined to reinstate its privileges based on a host of *other complaints*.  Compl. ¶¶ 65, 71, 75, 78.

REPLY IN SUPPORT OF AMAZON'S
MOTION TO DISMISS (14-cv-0950-RSM) – 3

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1   Wn.2d 219, 230-31, 685 P.2d 1081 (1984) ("general statements of company policy … may

2   not amount to promises of specific treatment," and are "not binding").  Because H2F cannot

3   point to any **actual** contract duties or rights, its contract claims fail as a matter of law.  *See*

4   *Muniz v. Microsoft Corp.*, 2010 WL 4482107, at *3 (W.D. Wash. Oct. 29, 2010) ("a

5   contract cannot be breached if [it] does not include the term in question").

6          H2F's attempt to avoid these settled principles of Washington law fails.  It contends

7   the Court cannot interpret the BSA as a matter of law, *see* Opp. at 5, but it is well

8   established in Washington that "[t]he interpretation of a writing is a question of law for the

9   court."  *Stewart*, 111 Wn.2d at 613; *see also Lawson v. Boeing Co.*, 58 Wn. App. 261, 264,

10  792 P.2d 545 (1990) ("the question of whether a written policy is a promise of specific

11  treatment is one for the court").  H2F also cannot claim the BSA does not bind it or was not

12  "effectively communicated," Opp. at 6-7, inasmuch as H2F admits in the complaint that it

13  entered into the BSA, Compl. ¶ 12, and H2F is suing on the contract, *id.* ¶¶ 87-96.[5]

14         H2F also argues that "contracts containing 'at will' termination provisions are

15  modified by subsequent correspondence."  Opp. at 6.  But, here again, H2F is alluding to the

16  email notice Amazon sent suggesting H2F contact Apple and "resolve this matter" with "the

17  rights owner directly," Compl. ¶ 26, and nothing about this notice remotely suggests any

18  modification of the BSA.  (Indeed, the BSA precludes such informal modification.  *See*

19  BSA § 16.)  The case H2F cites for this proposition and relies on throughout its brief, *see*

20  Opp. at 1 n.1, 6-8 (citing *Swanson v. Liquid Air Corp.*, 118 Wn.2d 512, 826 P.2d 664

21  (1992)), has no bearing here.  In *Swanson*, the employer-defendant sought to enforce an at-

22  will disclaimer buried in a 200-page manual provided to the employee-plaintiff months after

23  he started work.  118 Wn.2d at 515.  A year later, when employees threatened to unionize,

24  the defendant provided a Memorandum of Working Conditions, detailing sixteen promises

25  and conditions of employment.  *Id.* at 515-16, 523-24.  The plaintiff claimed he was fired

26

27  [5] Amazon's termination right is plainly stated in the third section of the BSA under the heading
    "**Term and Termination**."  BSA § 3.  H2F cannot claim this is hidden or not understandable.

1  contrary to the Working Conditions memo, and the court found fact issues regarding

2  whether that memo created "promises *of specific treatment in specific situations*" upon

3  which the plaintiff relied.  *Id.* at 520 (emphasis in original); *see also id.* at 525.  Here, in

4  contrast, H2F has not shown (and cannot show) that Amazon made any promises of specific

5  treatment in specific circumstances modifying the BSA and its at-will relationship.  *See*

6  *Stewart*, 111 Wn.2d at 614 (rejecting claim that parties modified at-will relationship where

7  policy contained discretionary language, and thus, "was not a specific promise").

8     Unable to identify any contract breach, H2F again seeks to invoke the doctrine of

9  good faith and fair dealing.  Opp. at 7, 9-11.  As it does elsewhere, H2F sidesteps

10  Washington law, instead citing old cases from other states.  For example, H2F cites

11  *deTreville v. Outboard Marine Corp.,* 439 F.2d 1099 (4th Cir. 1971), and *Randolph v. New*

12  *England Mut. Life Ins. Co.,* 526 F.2d 1383 (6th Cir. 1975), to suggest at-will termination

13  rights are subject to the duty of good faith.  Opp. at 7.  In *deTreville*, the court recognized

14  that while other states "give full effect" to at-will termination rights, South Carolina law

15  was unique.  439 F.2d at 1100.  In *Randolph*, the Sixth Circuit predicted that Ohio law

16  would impose a duty of good faith on unrestricted termination rights, 526 F.2d at 1386, but

17  Ohio's own courts have rejected that interpretation.  *See Nw. Fin. Agency, Inc. v.*

18  *Transamerica Occidental Life Ins. Co.*, 773 F. Supp. 75, 80-81 (S. D. Ohio1991).

19     In any event, Washington law controls here.  In Washington, although contracts

20  generally carry a duty of good faith, this duty "do[es] not trump express terms or

21  unambiguous rights in a contract."  *Myers v. State*, 152 Wn. App. 823, 828, 218 P.3d 241

22  (2009).  Washington law squarely holds the duty of good faith does ***not*** apply to restrict a

23  party's at-will termination rights.  *See, e.g.*, *Willis*, 109 Wn.2d at 757 (it would be

24  "incongruous to hold that an implied covenant of good faith …can override express

25  contract terms" for at-will termination); *Roe v. TeleTech Customer Care Mgmt. (Colo.)*

26  *LLC*, 171 Wn.2d 736, 754-55, 257 P.3d 586 (2011) (a party may terminate an at-will

27  relationship for "no cause, good cause or even cause morally wrong without fear of

REPLY IN SUPPORT OF AMAZON'S
MOTION TO DISMISS (14-cv-0950-RSM) – 5

liability").  "As a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms."  *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 570, 807 P.2d 356 (1991).

H2F also attempts to invoke the duty of good faith by asserting vaguely that Amazon has "discretionary contractual powers."  Opp. at 9.  But the cases H2F cites concern a very different situation; when a contract gives one party unilateral "authority to determine certain terms of the contract, such as quantity, price, or time," the exercise of that discretion is bounded by the duty of good faith.  *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 739, 935 P.2d 628 (1997).  *Goodyear* and the other cases H2F cites, *see* Opp. at 9-11, do not involve at-will termination rights and they underscore that the duty of good faith may not be used to contradict contract terms.  *See Goodyear*, 86 Wn. App. at 738 ("The covenant of good faith … does not apply to *contradict* contract terms."  (emphasis in original)).  H2F's claims have nothing to do with some missing contract term to be set later by Amazon.  Rather, the issue is whether H2F can modify Amazon's at-will termination rights through the covenant of good faith and fair dealing.  Washington law is clear that Amazon is fully entitled to enforce its contract rights.  "[T]erminating the [BSA] according to its express terms … does not give rise to a claim for a breach of the implied duty of good faith and fair dealing."  *Evergreen Int'l Airlines*, 2010 U.S. Dist. LEXIS 140547, at *12.

H2F's argument challenging the timing of its remittances likewise misreads the BSA.  *See* Mot. 3-4, 11-13.  H2F asserts Amazon was "require[d] to credit [its] account within 14 to 19 days," citing section S-6 of the BSA, Opp. at 12, but fails to mention its claim is based on delays that occurred after Amazon terminated H2F's seller account.  *See* Compl. ¶¶ 87-91, 132.  The terms of the BSA are clear that the 14-day remittance schedule applies in the ordinary course, but when a seller is suspended or terminated, Amazon will hold remittances for an additional 90 days.  Section S-6 states that the regular schedule applies "[e]xcept as otherwise stated in … Section 2 of the [BSA]."  BSA § S-6.  Section 2, in turn, authorizes Amazon to "delay initiating any remittances and withhold any payments"

for 90 days to allow for "customer disputes, chargebacks or other claims." *Id.* § 2.  In other words, Amazon remits funds under the bi-weekly schedule ***after*** the 90-day withholding period ends.  H2F has no basis for its assertions that "Amazon cites no provision in the contract [showing the two periods] are cumulative," or that "the terms are ambiguous." Opp. at 12.  H2F cannot manufacture ambiguity where none exists.  *See Stoner & Assocs. v. JKC Nampa, Inc.*, 2009 WL 901920, at *2-3 (W.D. Wash. Mar. 31, 2009) (that a party "has imagined an unreasonable interpretation of [a contract] term . . . does not mean that the term is ambiguous"); *Davis v. Dep't of Transp.*, 138 Wn. App. 811, 818, 159 P.3d 427 (2007). Because the BSA expressly permitted Amazon to withhold H2F's funds for 92 and 98 days, *see* Compl. ¶ 89, H2F's claim about the timing of remittances also fails.

### C.  H2F Has No Claim Under the Uniform Money Services Act.

H2F continues to try to manufacture a private cause of action under the UMSA by misreading the Act and misapplying *Bennett v. Hardy*, 113 Wn.2d 912, 920, 784 P.2d 1258 (1990).  If anything, H2F's argument underscores that the Legislature did ***not*** originally intend to create a private right of action for merchants under RCW 19.230.330, and made this intent clear by amending the statute earlier this year.  H2F has no private cause of action directly under the UMSA or indirectly as a *per se* violation of the Washington CPA.

H2F admits that nothing in the UMSA provides an express cause of action for section .330, the provision on which H2F bases its claim.  *See* Mot. at 13.  Its sole argument is that the Court should imply a right of action.  *See* Opp. at 13.  H2F cites *Bennett* and its three-part analysis for assessing whether the Legislature intended to allow private actions, *id.*, but then misstates the UMSA in applying the analysis.

H2F cannot show the Legislature enacted the UMSA for its "especial benefit."  Opp. at 14.  Nothing in the Act, its statement of purpose, or history indicates the Legislature meant to protect merchants selling goods through online marketplaces.  The Legislature said expressly that the Act is meant to protect the general public interest.  *See* RCW 19.230.005. When "a statute protects the general public instead of an identifiable class of persons, a

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1    plaintiff is not a member of the class for whose especial benefit the statute was enacted."

2    *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 210, 304 P.3d

3    914 (2013); *see* Mot. at 14.  H2F notes references in the UMSA to "customers" of money

4    transmitters, *see* Opp. at 14, but the statute and its history make clear it is referring to

5    persons who give funds to a money transmitter to be transferred to someone else.  *See*

6    House Bill Report, SHB 1455 (Dkt. No. 25, at 8).  H2F is not a customer in this sense and

7    cannot show section .330 was meant for its "especial benefit" on this basis.

8          H2F's allusion to the requirement that money transmitters maintain a bond with the

9    State, *see* Opp. at 15 (citing RCW 19.230.050), underscores that in the few instances when

10   the Legislature meant to allow private claims under the UMSA, it did so expressly.  To be

11   clear, H2F does ***not*** assert a bond-related claim under section .050, so its argument about

12   this section is irrelevant.  In any event, as the legislative history cited by H2F shows, the

13   purpose of the bond is to protect consumers if they give funds to a money transmitter that

14   becomes insolvent or fails to transfer the funds.  *Id.*  Again, nothing in section .050

15   indicates the UMSA was meant to protect H2F or other merchants.  *See also* Mot. at 14-15.

16         H2F offers nothing else to show the Legislature intended to create a private cause of

17   action for merchants under section .330.  H2F merely contends the Act does not expressly

18   "foreclose[] private rights of action," Opp. at 15, but that is not the test.  The case on which

19   H2F relies, *Cox v. Lewiston Grain Growers, Inc.,* 86 Wn. App. 357, 936 P.2d 1191 (1997),

20   did not concern an implied right of action at all, but rather a claim under the Seed Act,

21   which expressly permits private claims.  *See Cox*, 86 Wn. App. at 373-74; RCW 15.49.091.

22   H2F's strained comparison to drivers' licenses, Opp. at 16, similarly fails because the

23   Director of Financial Institutions has comprehensive authority to enforce the UMSA in

24   ways the Department of Licensing lacks.  *See* Mot. at 14.

25         Otherwise, H2F admits it has no claim under the UMSA as it now stands, given the

26   June 2014 amendment to section .330, which clarified that the ten-day remittance

27   requirement does not apply "when the transmission [of funds] is for the payment of goods

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

or services," and such transfers are instead governed by "the time frame agreed upon in the merchant's agreement."  *See* RCW 19.230.330(1)(a), (b) (2014); Opp. at 17-18 n.15. Amazon showed before that the amendment applies retroactively because it clarifies language in the Act (the ambiguity of which is illustrated by H2F's improper claim under UMSA here).  *See* Mot. at 16, n.11.  With no analysis, H2F insists the amendment is not curative and would deprive H2F of a right to enforce the UMSA.  Opp. at 17-18 n.15.  But the cases H2F cites defeat its argument.  *In re F.D. Processing, Inc.*, 119 Wn.2d 452, 460-61,832 P.2d 1303 (1992), explains that the Legislature need not expressly declare a statute has retroactive effect (as H2F claims); this can be discerned from a statute's purpose and history.  *Id* at 461.  "Curative amendments will be given retroactive effect if they do not contravene any judicial construction of the statute," *id.*, and H2F can point to no interpretations of section .330 allowing merchants a private action.  Moreover, statutory amendments that are remedial (*i.e.*, related to "practice, procedure or remedies") and do not affect a "vested right" generally apply retroactively.  *Id.* at 462-63.  The Legislature's amendment to section .330 is purely remedial, clarifying that merchants are not entitled to any remedy for the timing of funds transfers that comply with governing contracts.  H2F also cannot contend the amendment interfered with its rights, because retroactive effect of a statute should be rejected only when it interferes with a "vested right," meaning "a title, legal or equitable, to the present or future enjoyment of property."  *Id.* at 463.  H2F has no vested property rights based on its claim under the UMSA—it has no claim at all.

H2F thus cannot assert a claim directly under section .330 of the UMSA.  It also cannot assert such a claim indirectly through the CPA.  H2F bases its CPA claim on the premise that Amazon allegedly violated the UMSA.  *See* Opp. at 18 ("Amazon's contractual terms and practice of retaining funds beyond 10 days violated the then-operative mandate of UMSA").  This is an attempt to assert a *per se* CPA violation with different phrasing.  As noted previously, *see* Mot. at 16-17, H2F cannot assert a CPA claim based on the violation of another statute absent an express declaration of the Legislature creating such a *per se*

REPLY IN SUPPORT OF AMAZON'S
MOTION TO DISMISS (14-cv-0950-RSM) – 9

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

1    claim.  *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778,

2    787, 719 P.2d 531 (1986).  The UMSA contains no such declaration as to section .330;

3    indeed, the UMSA allows ***no*** private action under section .330.

4         **D.    H2F's Antitrust Claims Fail.**

5         H2F's opposition further demonstrates the deficiencies of its antitrust claims—*i.e.*,

6    its failure to allege any plausible facts of a conspiracy to restrain competition, a valid

7    market definition, or any injury to competition.  *See* Mot. at 18-23.

8         Rather than allege plausible facts, H2F attempts to evade dismissal of its antitrust

9    claim by going back in time—to before the Supreme Court's decision in *Twombly*.  *See*

10   Opp. at 19-20.  H2F contends it can plead Sherman Act claims based on speculation, *i.e.*,

11   that Apple's notice about violation of its intellectual property rights and Amazon's

12   independent decision to terminate H2F's seller privileges based on numerous complaints

13   about counterfeit products indicate some unspoken price-fixing agreement.  *See id.*  But

14   H2F's theory is premised on nothing but "a bare assertion of conspiracy," precisely what

15   *Twombly* rejects.  550 U.S. at 557 (allegations of "parallel conduct that could just as well be

16   independent action" do not suffice to state a conspiracy).[6]

17        Moreover, a "complaint must allege facts such as a 'specific time, place, or person

18   involved … to give a defendant seeking to respond to allegations of a conspiracy an idea of

19   where to begin." *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1047 (9th Cir. 2008) (quoting

20   *Twombly*, 550 U.S. at 565 n.10).  H2F does not allege what Amazon and Apple agreed to

21   do, how or when the supposed agreement came into existence, or any communication

22   evidencing any agreement.  Instead, H2F claims motions to dismiss "should be used

23   sparingly in antitrust litigation" and suggests it should be entitled to uncover "circumstantial

24   evidence" to support its claims.  Opp. at 20.  *Twombly*, which affirmed dismissal of an

25   ———————————————

26   [6] "Permitting an agreement to be inferred merely from the existence of complaints, or even from the

     fact that termination came about 'in response to' complaints, could deter or penalize perfectly

27   legitimate conduct." *Monsanto Co. v. Spray-Rite Serv. Corp*., 465 U.S. 752, 763 (1984).

REPLY IN SUPPORT OF AMAZON'S
MOTION TO DISMISS (14-cv-0950-RSM) – 10

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

antitrust complaint, rejects this contention too:  "[I]t is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal evidence to support a § 1 claim.'"   550 U.S. at 559-60. H2F cannot "assert [conspiracy] claims in federal court based on nothing more than the prospect of unearthing supporting evidence during discovery."  *Siu Man Wu v. Pearce*, 2012 WL 1463307, at *3 (W.D. Wash. Apr. 27, 2012) (citing *Twombly*, 550 U.S. at 561-62)). H2F's antitrust claims are wholly deficient under *Twombly*.

H2F also fails to show its complaint plausibly alleges the other elements necessary to assert an antitrust claim.  H2F recognizes the complaint fails to define relevant geographic and product markets, but contends it means to allege a "sub-market containing the Items being sold with Amazon's selling platform."  Opp. at 21.  In other words, H2F seeks to define a market consisting of *only* black leather and blue polyurethane iPad covers, sold *only* on Amazon.com, and *only* under two specific product numbers (ASINs).  *See* Compl. ¶ 26 & n.3.  H2F's definition excludes all iPad covers with different colors, styles, and ASINs sold on Amazon.com, all covers offered by manufacturers that are not Apple licensees, as well as all covers sold by hundreds of *other retailers* online and in stores, with no explanation why those products are not reasonable substitutes.  *See* Mot. at 20 & n.14; *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 292 (9th Cir. 1979) (the "market must correspond to the commercial realities of the industry and it must be 'economically significant'").  Thus, H2F improperly excludes "the group or groups of sellers … who have actual or potential ability to deprive each other of significant levels of business."  *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989).  Having admitted iPad covers are sold by other retailers, *see* Compl. ¶43, H2F cannot exclude all these sellers from its market definition.  *See Kaplan*, 611 F.2d at 295 (rejecting submarket definition because it disregarded a "wide variety" of customers using the services at issue); *Ballo v. James S. Black Co.*, 39 Wn. App. 21, 29, 692 P.2d 182 (1984) (a market is

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

determined "by the area to which the purchaser can reasonably turn to obtain the product").[7]

Lastly, H2F contends it has alleged an "adverse effect on competition as a whole in the relevant market" by simply reciting those words in the complaint. Opp. at 22 (quoting Compl. ¶ 109). This conclusory statement cannot satisfy *Twombly*. H2F's allegations that it lost its selling privileges on Amazon.com do not show injury *to competition*, but, at most, a claimed injury to H2F's interests as one seller in the market. *See McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 812 (9th Cir. 1988) ("economic injury to a competitor does not equal injury to competition); *Kaplan*, 611 F.2d at 291 ("elimination of a single competitor … does not prove anti-competitive effect"); *see* Mot. at 21-22.

**E.   H2F's Ancillary Claims Fail.**

H2F seeks to save its fiduciary duty claim by invoking language from a different agreement applicable to other sellers. Opp. at 22.[8] H2F admits the BSA governs its relationship with Amazon, Compl. ¶ 12, and premises its claims on the BSA. *Id.* ¶¶ 18-20, 87-96. It cannot pretend language in another agreement creates a fiduciary relationship that is expressly disclaimed by the contract on which it has sued. *See* Mot. at 23-24.

Recognizing its claims are governed by contract, H2F attempts to recast its unjust enrichment claim as one for "violation of the UMSA." Opp. at 23-24. H2F thus concedes it cannot sue for unjust enrichment, and calling the claim by a different name cannot save it from dismissal. *See* Mot. at 24; Section II.C, above.

**III.   CONCLUSION**

H2F's opposition demonstrates any amendment would be futile. The Court should dismiss H2F's complaint in its entirety, with prejudice.

---

[7] To justify its micro-market definition, H2F cites *Newcal Industries v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008), Opp. at 19-20, but that case found a submarket in the unique circumstance that Ikon leased office equipment and thus had a "contractually-created monopoly" "in the wholly derivative aftermarket for replacement equipment and lease-end services." *Id.* at 1045, 1050. Here, consumers are not contractually committed to buy iPad covers from Amazon.

[8] The Participation Agreement is a separate seller agreement applying to legacy sellers. *See Peters v. Amazon Services LLC*, 2 F. Supp. 3d 1165 (W.D. Wash. 2013).

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
206.622.3150 main · 206.757.7700 fax

DATED this 3rd day of October, 2014.

DAVIS WRIGHT TREMAINE LLP

By: _s/ James C. Grant_
   James C. Grant, WSBA #14358
   John A. Goldmark, WSBA #40980
   Tom Wywrich, WSBA #45719
   1201 Third Avenue, Suite 2200
   Seattle, Washington  98101-3045
   Tel:  (206) 622-3150
   Fax:  (206) 757-7700
   Email: jamesgrant@dwt.com
          johngoldmark@dwt.com

   *Attorneys for Amazon.com, Inc.*

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**CERTIFICATE OF SERVICE**

I certify that on October 3, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system. All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED this 3rd day of October, 2014.

By: *s/ James C. Grant*
    James C. Grant, WSBA #14358

Davis Wright Tremaine LLP
LAW OFFICES
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
206.622.3150 main · 206.757.7700 fax