MATTHEW Z. CROTTY                                    The Honorable Ricardo S. Martinez
Crotty & Son Law Firm, PLLC
421 West Riverside, Suite 1005
Spokane, WA 99201-0300
Telephone: 509.850.7011
Facsimile: 509.703.7957

BRADLEY C. CROCKETT
Layman Law Firm, PLLP
601 S. Division Street
Spokane, Washington 99202
Telephone: 509.455.8883
Facsimile: 509.624.2902

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| HARD2FIND ACCESSORIES, INC.<br><br>                          Plaintiff,<br>   v.<br><br>AMAZON.COM, INC., a Delaware<br>Corporation; and, APPLE, INC., a<br>California Corporation.<br><br>                          Defendants. | **NO. 14-CV-0950-RSM**<br><br>PLAINTIFF'S RESPONSE TO<br>DEFENDANT APPLE'S<br>MOTION TO DISMISS<br><br>Note on Motion Calendar: October<br>24, 2014 |

## I.      INTRODUCTION & SUMMARY OF ARGUMENT

Apple's Motion to Dismiss misstates Hard2Find's ("H2F") complaint disregards the law

and should be denied because:

1.      Apple's "H2F didn't-prove-causation" argument ignores Washington law - - which

makes clear that there can be more than one proximate cause to H2F's business loss - - - and ignores

the facts - - - H2F pled causation by alleging, *inter alia,* that Apple's baseless June 14, 2013, counterfeit allegation caused Amazon to end H2F's business on June 17, 2013. H2F pled no other intervening events between those dates and temporal proximity is sufficient to establish causation.

2.      Apple's *Noerr-Pennington* defense fails because Apple never petitioned (nor threatened to petition) the government (read: a court) to address H2F's alleged infringement and such petitioning activity is needed to establish a *Noerr-Pennington* defense and none exists.

3.      H2F pled the causation, improper means/purpose, and damage elements of its tortious interference claim in accord with the governing law - - - not the unbinding unpublished decisions upon which Apple bases its argument - - - by, *inter alia,* alleging Apple (a) singled out H2F from other like-situated iPad sellers in filing its groundless counterfeit allegation with Amazon, (b) retaliated against H2F for its "aggressive price point," and, (c) delayed informing Amazon that its counterfeit complaint was wrong - - - all improper means that caused H2F over $180,000/month in damages.

4.      Falsely accusing H2F of selling counterfeit product without conducting *any* investigation as to the truth or falsity of that allegation is precisely the conduct Washington's defamation law is designed to stop and H2F pled numerous facts associated with the defamation claim's "falsity," "lack or privilege," and "fault" elements in accord with the law.

5.      H2F properly pled that Apple's elimination of H2F from the market place unjustly enriched Apple and, contrary to Apple's argument, no contractual privity is needed to bring that claim.

6.      H2F's anti-trust claim exceeds *Twombly's* pleading requirement as H2F alleges a contract, combination, or conspiracy to restrain trade, vertical price fixing, and horizontal price fixing in accord with 9th Circuit precedence.

RESPONSE TO APPLE'S
MOTION TO DISMISS (14-CV-0950-RSM) - 2

7.      Washington's Consumer Protection Act (CPA) is a remedial statute geared to promote fair and free competition and Apple's conduct in retaining an unlicensed investigator to file a false report about H2F's alleged sale of counterfeit goods is precisely the unfair and deceptive practices the CPA was designed to stop.  Apple's arguments that (a) the investigator licensing statute (RCW 18.165) it violated does not provide a private right of action or apply to Apple and (b) that H2F failed to plead "unfair or deceptive" practices, fail legally and factually.

Apple's motion should be denied. H2F should be able to tell its story to a jury.

## II.      FACTS

Apple's misrepresentations of H2F's complaint are many.  The salient parts follow:

- Apple states H2F's Complaint fails to allege Apple's conduct was a "cause in fact" of its injury. (Dkt. 29, p. 15[1])  H2F pleads that Apple caused H2F's injury. (Dkt. 1, ¶121)

- Apple implies H2F had a history of customer complaints. (Dkt. 29, p. 12)  H2F denies those allegations and pleads they are a pretext to conceal unlawful acts. (Dkt. 1, ¶76)

- Apple hints that the customer complaints listed on Complaint, ¶30 were H2F specific. (Dkt 29, p. 12) Those complaints are not H2F specific but associated with other Amazon sellers who sold the iPad covers at issue in this case. (Dkt 1, ¶73, 75, 76)

- Apple argues H2F is not an "authorized seller" of iPad covers. (Dkt. 26, p. 12) That is a red-herring, as the "first sale rule" allows H2F to resell genuine Apple product. *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,* 53 F.3d 1073, 1074, 1076 (9th Cir. 1995)("When a purchaser resells a trademarked article under the producer's trademark, and nothing more, there is no actionable misrepresentation under the [Lanham Act].").

---

[1] The page numbers reference the ECF stamped page numbers at the *top* of each page of Apple's brief.

RESPONSE TO APPLE'S
MOTION TO DISMISS (14-CV-0950-RSM) - 3

- Apple argues it did not cause Amazon to terminate H2F's account because of events predating Apple's June 14, 2013, takedown. (Dkt. 26, p. 14)  H2F pleads those pre-June 14, 2013, events were a pretext designed to conceal unlawful acts. (Dkt. 1, ¶76)

- Apple argues H2F "alleged no facts to show that Apple…was reckless with respect to the truth or falsity of its [infringement] notice." (Dkt. 26, p. 34)  H2F alleges significant contrary facts that show Apple's reckless disregard for the truth, including alleging Apple conducted *no* investigation before filing the infringement notice with Amazon. (Dkt. 1, ¶¶30-39, 45-54)

### III.   ARGUMENT

**A.    H2F's complaint meets Fed. R. Civ. P. 8(a)'s notice pleading standard.**

Apple argues that H2F's complaint fails under *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). (Dkt. 26, p. 15)  Neither case announces the heightened pleading standard Apple (and Amazon) desire. Neither *Twombly* nor *Iqbal* overruled *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168-169 (1993) (stating "evidentiary facts generally need not be set forth in the complaint" and holding that "[f]ederal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims") or *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 512 (2002)("the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic'" as "Rule 8(a)'s *simplified pleading standard applies to all civil actions*, with limited exceptions.")(emphasis added).[2]  Nor did *Twombly* or *Iqbal*

---

[2] Those "limited exceptions" are set out in Fed. R. Civ. P. 9. "[T]he Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under §1983….Just as Rule 9(b) makes no mention of municipal liability under … 42 U.S.C. § 1983 (1994 ed., Supp. V), neither does it refer to employment discrimination. Thus, complaints in these cases, as in most others, must satisfy only the simple requirements of Rule 8(a)."

RESPONSE TO APPLE'S
MOTION TO DISMISS (14-CV-0950-RSM) - 4

change the long standing principle that "[a]ll pleadings shall be so construed as to do substantial justice" given the "liberality with which [courts] should judge whether a complaint gives the defendant sufficient notice of the court's jurisdiction." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 839 (9th Cir. 2007).

Accordingly, Fed. R. Civ. P. 8(a)(2) requires a statement of a claim and does not require the plaintiff to show the claim will succeed on the merits. *Swierkiewicz.*, 534 U.S. at 515. If a defendant alleges that a plaintiff's factual allegations are insufficient to state a claim, the court reviews the allegations under Fed.R.Civ.P. 8(a)'s liberal pleading standards, construes allegations in a light favorable to the non-moving party, accepts the pled facts as true, and draws reasonable inferences in favor of the non-moving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.2005); *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.1998). Contrary to what Apple suggests, *Twombly* does not "require heightened fact pleading of specifics" nor does it reinstate code pleading under Fed. R. Civ. P. 8(a) as discovery rules exist to develop the fact record necessary to define the issues genuinely in dispute. *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570; *Swierkiewicz*, 534 U.S. at 512. H2F's complaint comports with Fed. R. Civ. P. 8(a).

**B.     H2F properly pleads causation.**

Apple argues that H2F's claims fail because H2F supposedly failed to plead that Apple's June 2013 complaint to Amazon caused Amazon to terminate H2F's selling privileges. (Dkt. 26, p. 16)  Apple is wrong: H2F's Complaint, ¶121 - - - of which Apple does not inform the Court - -

---

*Swierkiewicz*, 534 U.S. at 513.  Indeed, Fed. R. Civ. P. 9 does *not* require a heightened pleading standard for *any* of H2F's claims.

- states "Apple's intentional interference was the cause of Amazon's termination of H2F's contract/business expectancy." (Dkt 1, ¶121)   The Court should deny Apple's motion on this ground alone. Nonetheless, Apple's argument still fails legally and factually.

As a starting point, Apple's argument that H2F's claims fail because Amazon's acts, not Apple's, caused H2F's loss, misses the mark as Washington's proximate cause jury instruction states there "can be more than one proximate cause of" an injury or event.   To wit:

> The term 'proximate cause' means a cause which in a direct sequence [unbroken by any superseding cause,] produces the *[injury] [event]* complained of and without which such *[injury] [event]* would not have happened.
>
> [There may be more than one proximate cause of an *[injury] [event]*.] WPI 15.01

Washington courts are in accord. *Jonson v. Chicago, M., St. P. & P. R. Co.,* 24 Wn. App. 377, 380-81 (1979)(Holding "[a]n event may have one or more proximate causes."); *Brashear v. Puget Sound Power & Light Co.,* 100 Wn. 2d 204, 208 (1983).  And contrary to what Apple argues, "the concurrent negligence of a third party does not break the chain of causation between original negligence and the injury…If the defendant's original negligence continues and contributes to the injury, the intervening negligence of another is an additional cause. It is not a superseding cause and does not relieve the defendant of liability."  *Travis v. Bohannon*, 128 Wn. App. 231, 242 (2005).  By analogy, *Joyce v. State, Dep't of Corr.,* 155 Wn.2d 306, 322 (2005) illustrates this point.  *Joyce* found that a wrongful death plaintiff established causation against the State Department of Corrections ("DOC") for the DOC's failure to supervise a parolee who subsequently killed the plaintiff after running a red light and hitting the plaintiff.[3] *Id.* at 309.

---

[3] *Joyce* is not an outlier.  "We reject Nordstrom's argument that it was not the cause-in-fact of the injury because the [shoplifting] suspect, and not the detective, bumped into the customer. Assuming that Nordstrom did not meet its duty to warn the customers, both Nordstrom and the

1   Accordingly, if the DOC's failure to supervise a parolee is a cause of a roadway death then Apple's

2   baseless infringement complaint to Amazon is a cause of H2F's business loss.

3        Additionally, a party, like H2F, alleging multiple independent causes, alternate liability, or

4   concerted action does not need to establish causation. *Hue v. Farmboy Spray Co.,* 127 Wn. 2d 67,

5   91 (1995)(holding plaintiff did not have to prove individual causal responsibility but show

6   defendant's action "was ... part of a cloud that then was the proximate cause of damage."); *Martin*

7   *v. Abbott Labs.,* 102 Wn. 2d 581, 591, 596 (1984)("[W]here all defendants are equally culpable,

8   and their negligence precludes an innocent plaintiff from identifying them, basic considerations of

9   fairness demand that the burden of proof shift from plaintiff to defendant."); *Westview Investments,*

10  *Ltd. v. U.S. Bank Nat. Ass'n,* 133 Wn. App. 835, 853 (2006).[4]

11       H2F's pleading, in addition to expressly pleading causation (Dkt. 1, ¶121) meets the above-

12  referenced standards. <u>First</u>, Apple's argument that Amazon's receipt of "complaints about Plaintiff

13  in January, February, March, April and May 2013" caused H2F's harm fails under *Jonson* and

14  *Brashear* as there can be more than one proximate cause and Apple's June 14, 2013, complaint

15  regarding H2F is such a cause.[5] Additionally, Amazon took *no* action against H2F following those

16  complaints; instead Amazon shuttered H2F's account three days *after* Apple's June 14th complaint.

17

18

19  ───────────────

20  suspect would be concurrent tortfeasors, and each could be held liable for the injury caused by
    their negligence." *Passovoy v. Nordstrom, Inc.,* 52 Wn. App. 166, 174 (1988).
    [4] *Hue, Martin* and *Westview* are factually distinguishable but the legal principles apply here
21  especially at the Rule 12 stage wherein no discovery has been conducted.
    [5] In making this point Apple references Complaint ¶75 and argues that the January, February,
22  March, April, and May 2013 complaints came from parties "*other than Apple.*" (Dkt. 26, p. 8
    *citing* Dkt. 1, ¶75)(emphasis in original). Apple is wrong. Complaint ¶75 references "a previously
23  unknown Apple complaint from January 2013!"  Apple also implies that H2F concedes that the
    January – May 2013 complaints relate to H2F; but, that is not true either as H2F pleads all but the
24  May 2013 complaints were "not related to H2F's specific sale of the Items." (*Compare* Dkt. 26,
    p. 16-17 *with* Dkt. 1, ¶¶37, 76) And Apple's causation argument is further hindered because the
25  May 2013 complaint was withdrawn. (Dkt. 1, ¶76)

    RESPONSE TO APPLE'S
    MOTION TO DISMISS (14-CV-0950-RSM) - 7

<u>Second</u>, H2F alleges Apple complained to Amazon on or about June 14, 2013, and that Amazon terminated H2F's selling privileges on June 17, 2013. (Dkt. 1, ¶¶26, 56)  H2F alleges no intervening event between June 14 and June 17.  As such, "causation can be inferred from timing alone where an adverse…action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 (9th Cir. 2002). *See infra.* Note 10(f).  <u>Third</u>, H2F alleges, as part of its anti-trust claim, that Amazon and Apple acted in concert. (Dkt. 1, ¶¶105)("The anti-competitive effect of Apple and Amazon's concerted action…")  H2F's "acting in concert" liability theory does not require H2F to establish causation. 16 Washington Practice, <u>Tort Law and Practice</u>, §§4.4 & 4.7, p. 149-152 (2006)(*citing Martin* and *Westview, supra*).

Apple cites *Tamosaitis v. Bechtel Nat., Inc.,* 327 P.3d 1309, 1316 (2014) for the proposition that if plaintiff complains of injury "caused by forces independent from defendant's conduct, causation fails." (Dkt. 26, p. 17) *Tamosaitis* does not address what Apple claims it addresses: it involved dismissal of a tortious interference claim because of the plaintiff's failure to establish damages - - - not the case here. Apple then cites the unpublished opinion of *Seattle Garcia's Rest., P'ship v. Fir Associates,* 129 Wn. App. 1034 (2005) for the proposition that Amazon's use of its "at will termination" provision cuts off the causal link between Apple's 2013 complaint and Amazon terminating H2F's selling privileges. The Court should reject *Fir* outright.  Unpublished Washington appellate court opinions should not be cited. *See* General Rule 14.1(a). Further, *Fir* is distinguishable because it involved a two-party landlord-tenant agreement, not a third party (Apple) interfering with the two party Amazon-H2F agreement. Lastly, Apple's citations to *Burkheimer, TES Liquidating* and *NBT Bancorp* (Dkt. 26, p 10) should be rejected as they are unpublished, non-precedential, and predicated on the (unproven and denied-by-H2F) fact that H2F was selling counterfeit product. *See* 9th Cir. Rule 36-3.

**C.     Apple's *Noerr-Pennington* defense fails because Apple did not participate in Constitutionally protected petitioning activity.**

Apple's *Noerr-Pennington* argument fails legally and factually because Apple did not petition the government for protection vis-à-vis H2F's acts, threaten H2F with litigation, or threaten Amazon with litigation should Amazon allow H2F to sell the iPad covers.

The *Noerr-Pennington* doctrine exists to protect the 1st Amendment Constitutional right to petition the government. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 56 (1993); *Oregon Natural Res. Council v. Mohla,* 944 F.2d 531, 534 (9th Cir. 1991)("*Noerr–Pennington* protection is appropriate so long as [a party] was genuinely seeking governmental action."). *Noerr-Pennington* "[i]mmunity thus applies only to what may fairly be described as *petitions,* not to litigation conduct generally." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005).  "Petition" means "[a] formal written request presented to a court or other official body." Black's Law Dictionary, at 934 (7th Ed. 2000). In the *Noerr-Pennington* context "petitions" include "[a] complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something." *Freeman,* 410 F.3d at 1184.

H2F's complaint contains no allegation of Apple petitioning the government for relief. H2F's complaint contains no allegation of Apple making a pre-suit threat to petition the government. Apple cites no H2F complaint allegation to the contrary. (Dkt 26, p. 19) Apple is asking the court to create a petition-to-the-government where none exists.[6] The Court should reject

---

[6] Indeed Apple's Request for Judicial Notice (Dkt. 27) contains no mention of litigation (real or contemplated) at all.

Apple's *Noerr-Pennington* argument outright.

Knowing this Apple appears to couch its "infringement notice"[7] to Amazon as a pre-suit demand letter sufficient to trigger *Noerr-Pennington* protection.[8] (Dkt. 26, p. 19) While "communications between private parties are sufficiently within the protection of the Petition Clause to trigger the *Noerr–Pennington* doctrine" such communication must be "sufficiently related to petitioning activity." *Select Portfolio Servicing v. Valentino,* 875 F. Supp. 2d 975, 983 (N.D. Cal. 2012). H2F's complaint makes no reference to the petitioning activity upon which Apple must base its defense. Again, Apple's June 14, 2013, "infringement notice" is not related to any petitioning activity. Nor does Apple's August 1, 2013, email to Amazon, or Apple's August 20, 2013, communication with H2F relate to petitioning activity. (Dkt. 26, p. 20) And since *Noerr-Pennington* protected petitioning activity does not apply in instances of (1) "[s]ubpoenaing private parties in connection with private commercial litigation" as such action "bears little resemblance to the sort of governmental petitioning the doctrine is designed to protect;" (2) discovery related communications "between parties as an aid to litigation" as such "a communication [is not] to the court and is therefore not a petition;" or, (3) "filing of a .. Takedown Notification" as such an act "is not an offer of settlement or necessarily a pre-suit step to the bringing of an infringement

---

[7] Apple does not identify the "infringement notices" it allegedly sent in this case. (Dkt. 27, p. 19) To that end, H2F will assume, but not concede, that such a communication is an "infringement notice."

[8] Apple cites *Rock River Comms., Inc. v. Universal Music Group, Inc.,* 745 F.3d 343 (9th Cir. 2013) in support of its argument. (Dkt. 26, p. 19) *Rock River* is distinguishable because it involved a plaintiff basing its business interference claim off of "cease and desist letters and threats of litigation UMG made to Rock River." *Rock River,* 745 F.3d at 351. No such letters and threats exist here. In fact, H2F alleges that Apple did not communicate with H2F *at all* before complaining to Amazon. (Dkt. 1, ¶38) Apple's other authorities are distinguishable for the same reason: the cases involve A threatening B with litigation (or A suing B) and B bringing action based on those threats/suits. (Dkt. 26, p. 19-20) Here Apple did not threaten H2F with litigation or sue H2F.

RESPONSE TO APPLE'S
MOTION TO DISMISS (14-CV-0950-RSM) - 10

action," it follows that the activity Apple references is not petitioning activity. *Theofel v. Farey-Jones,* 359 F.3d 1066, 1078-79 (9th Cir. 2004), *Freeman,* 410 F.3d at 1184; *Amaretto Ranch Breedables v. Ozimals, Inc.,* 2010 WL 5387774, *2 (N.D. Cal. Dec. 21, 2010)(*citing Sosa v. DIRECTV, Inc.,* 437 F.3d 923 (9th Cir. 2006)).

And even if Apple is able to convince the Court that it actually petitioned the government, H2F pleads facts necessary to establish the *Noerr-Pennington* sham defense. The sham exception applies if the party contesting the *Noerr-Pennington* defense shows "(1) no reasonable litigant could have realistically expected success on the merits, and (2) the [party] filed the suit for the purpose of coercing, intimidating, threatening, or interfering with a person's exercise of rights." *White v. Lee,* 227 F.3d 1214, 1232 (9th Cir. 2000). Here H2F shows that no reasonable litigant could expect to succeed on Apple's supposed infringement allegation by alleging Apple never communicated with any customer (or human being), did not know the identities of the customers, did not obtain the alleged counterfeit product, relied on un-vetted sources in making its allegation, and used an unlicensed entity to conduct the "investigation" giving rise to the baseless infringement notice that Apple partially withdrew. (Dkt. 1, ¶¶31, 32, 33, 34, 35, 45-54, 63)  As to the second *Noerr-Pennington* sham prong, H2F alleges that Apple filed the complaint for the purpose of interfering with H2F's contractual expectancies. (Dkt. 1, ¶¶117-125) Lastly, H2F does not need to plead the sham exception with particularity. *Swierkiewicz,* 534 U.S. at 513.

**D.    H2F properly states a tortious interference with a business expectancy claim.**

Apple claims H2F fails to plead the (a) "causation", (b) "improper means/purpose," and (c) damages elements of H2F's tortious interference with a business expectancy claim. (Dkt. 26, p. 21) Once again, Apple's argument fails factually and legally.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

As to point (a), H2F pled "Apple's intentional interference was the cause of Amazon's termination of H2F's contract/business expectancy." (Dkt. 1, ¶121) H2F pled facts in support of that contention such as: (i) the temporal proximity[9] between Apple's June 14, 2013, complaint about the iPad covers and Amazon's June 17, 2013, termination of H2F's account; (ii) no intervening non-Apple complaints between the June 14 – June 17 timeframe; and, (iii) Apple going behind H2F's back and falsely communicating to Amazon that H2F was selling counterfeit iPad covers. (Dkt 1, ¶¶38, 26, 56, 120) While Apple claims it did not specifically request Amazon terminate H2F's account, H2F does not have to prove that interference was Apple's primary motive for Apple to be liable. Instead, H2F only has to show that "the actor was motivated, in whole *or in part*, by a desire to interfere…The desire to interfere with the other's contractual relations need not, however, be the sole motive." *Pleas v. Seattle*, 112 Wn.2d 794, 806 (1989)(emphasis added).  Indeed, there can be more than one proximate cause. *See supra.* Apple knew H2F sold products on Amazon. Apple intentionally filed an unsupported complaint against H2F with Amazon.  These are sufficient facts to establish the causation element.

As to point (b), H2F pled facts in support of the "improper purpose"/"improper means" elements. WPI 352.03[10]; *Pleas*, 112 Wn.2d at 774. Greed, retaliation, hostility, singling out one

---

[9] Proximity in time between the actor's conduct and interference is a factor considered in evaluating a tortious interference claim. *See infra* WPI 352.03 & Comments.

[10] The Washington Pattern Jury instruction for "Improper Purpose/Improper Means" cites Restatement (Second) of Torts § 767 (1979), which states in, "determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given" to the following factors:(a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the societal interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) *the proximity or remoteness of the actor's conduct to the interference;* and, (g) the relations between the parties. *See* WPI 352.03 *available at* https://govt.westlaw.com/wciji/Document/I2cd3bf81e10d11dab058a118868d70a9?viewType=F

entity from other entities, delay, arbitrary and capricious acts, and violation of statutes are "improper motives" satisfying the "improper purpose/improper means" element. *See Moore v. Commercial Aircraft Interiors, LLC,* 168 Wn. App. 502, 511 (2012); *Westmark Dev. Corp. v. City of Burien*, 140 Wn. App. 540, 558, 560 (2007); *Pleas*, 112 Wn.2d 794. H2F's complaint, construed in H2F's favor as required under Rule 12, contains allegations of: *greed* related to keeping iPad prices at an inflated level (Dkt. 1, ¶¶41, 72); *retaliation* for H2F selling the iPad covers at a price lower than Apple liked (Dkt. 1, ¶72); *hostility* toward H2F for H2F's "aggressive price point" (Dkt. 1, ¶122); *singling out* H2F from other sellers who sold the iPad covers even though H2F and the other sellers were selling the iPad cover under the ASIN Apple deemed "troublesome" (Dkt. 1, ¶¶42-44, 72-73); *delay* in contacting Amazon to resolve the unfounded allegation and then failing to convincingly retract the false allegation (Dkt. 1, ¶¶63-68); the *arbitrary and capricious* act of filing a unsubstantiated counterfeit allegation with Amazon (Dkt. 1, ¶122[11]); and, *violation* of Washington's investigator statute (Dkt. 1, ¶¶45-54, 152-158).

As to point (c), H2F pleads damages as it alleges Apple's acts caused H2F $180,112.61/month in economic loss. (Dkt. 1, ¶80)

Apple argues H2F failed to allege lack of good faith. (Dkt. 26, p.22) The above-allegations sufficiently allege lack of good faith. *See supra* analyzing point (b).[12] Further, the issue of whether

---

ullText&originationContext=documenttoc&transitionType=CategoryPageItem&contextData=(sc .Default)(last visited October 15, 2014)(emphasis added).

[11] Arbitrary and capricious" means willful and unreasoning action that disregards the facts and circumstances. *Vanderpool v. Rabideau*, 16 Wn.App. 496, 498 (1976).   Bringing an unsubstantiated counterfeit allegation without conducting *any* investigation, as H2F alleges, constitutes disregard of the facts and circumstances. (Dkt. 1, ¶¶27-38)

[12] Additionally, the complaints Apple supposedly relied on in filing its complaint with Amazon were allegations against other sellers who were selling the iPad covers under the same ASIN. (Dkt. 1, ¶¶72,73) As such, without a current complaint against H2F, Apple's allegation to Amazon that H2F was selling counterfeit products was arbitrary and capricious.

a party acted in good faith should not be resolved at the motion to dismiss stage. *See Prestin v. Mobil Oil Corp.,* 741 F.2d 268, 270 (9th Cir. 1984); *Percival v. Bruun,* 28 Wn. App. 291, 293 (1981)("Federal courts have held that summary judgment should not be used to resolve the issue of the defendant's good faith.")(citations omitted).

The legal authorities Apple cites in support of its motion to dismiss the tortious interference claim are equally unavailing. Apple cites *Hazelquist v. Guchi Moochie Tackle Co.*, 2004 U.S. Dist. LEXIS 13391 (W.D. Wn. May 12, 2004)[13] and *Brown v. Safeway,* 617 P.2d 704 (1980) for the proposition that a party who in good faith acts to protect its legal interests is not liable for tortious interference. (Dkt. 26, p. 22) The *Hazelquist* court dismissed the counter-claimant's tortious interference claim on different grounds. *Brown* involved Safeway initiating litigation to protect its interest in a shopping center lease whereas this case involves Apple, behind H2F's back, filing a baseless counterfeit allegation that caused the termination of H2F's selling contract with Amazon. Apple then cites *Centurion Props., III, LLC v. Chi. Title Ins., Co.,* case - - a suit in which tortious interference was not a claim - - for the proposition that H2F needed to allege Apple had "contradictory facts in June 2013 to imply a lack of good faith." (Dkt. 26, p. 23) *Centurion* does not stand for that proposition and H2F is aware of no authority requiring a party claiming tortious interference to show "an absence of good faith" at the pleading stage.  H2F properly pled its tortious interference claim.

**E.    H2F's defamation claim is proper.**

Apple tries to breathe life into the now-defunct code pleading standard by claiming H2F failed to plead facts sufficient to support the falsity, lack of privilege, and fault

---

[13] *Hazelquist* cites the *Bryant Corp* and *Brown* cases upon which Apple cites for the same "good faith exercise of rights" proposition thus H2F addresses Apple's argument collectively.

RESPONSE TO APPLE'S
MOTION TO DISMISS (14-CV-0950-RSM) - 14

defamation claim elements. (Dkt. 26, p. 24)  Apple's arguments misapply the facts and law.

As to falsity, H2F pled Apple accused H2F of selling counterfeit goods and that the allegation was false. (Dkt. 1, ¶¶39, 161, 163-164) In doing so H2F pled, as its obligation under Fed. R. Civ. P. 8(a), that Apple made a false statement that H2F was selling counterfeit products. *Id.* Apple cites a series of nonbinding district court cases for the proposition that H2F's allegation that the iPad covers were genuine is "conclusory."[14] Apple cites *Technomarine SA v. Jacob Time, Inc.*, 2012 U.S. Dist. LEXIS 90261 (S.D.N.Y, June 22, 2012), a case (ironically) involving a manufacturer's trademark infringement claim against a retailer selling a product at reduced price. Since the manufacturer did not possess or inspect the products - - facts needed to establish the products' genuine status - - the court dismissed the case. Apple cannot, as H2F alleges, destroy H2F's business by making (to Amazon) an unfounded counterfeit allegation after conducting *no* inspection of the alleged counterfeit product and then place the burden on H2F, at the Rule 12 stage, to prove that the iPad covers were genuine. Further, H2F did not need to plead facts necessary to establish the genuine nature of the iPad covers. Why? Because Apple tacitly conceded the products' authenticity by agreeing to withdraw its counterfeit claim. (Dkt. 1, ¶63) Nonetheless, assuming *Jacob Time, Inc* carries some weight, H2F pled that the iPad covers that it possessed and sold were not counterfeit and buttressed that allegation by pleading H2F sold 134 of those items and

---

[14] It is not clear why Apple cited *Doscher v. Swift Transp. Co.,* C09-5582-RJB, 2009 WL 3831542 (W.D. Wn. Nov. 13, 2009) and *Stone v. Becerra,* CV-10-138-RMP, 2010 WL 4641954 (E.D. Wn. Nov. 8, 2010) as those cases relate to a plaintiff failing to plead the publication element of a defamation claim (*Doscher*) and a plaintiff failing to plead facts necessary to bring a 42 U.S.C. §1983 claim (*Stone*).

received *no* customer complaints relating to those products being counterfeit. (Dkt. 1, ¶¶39-40)

As to the lack of privilege argument, Apple cites *Allstate Ins. Co. v. Tacoma Therapy Inc.,* 2014 U.S. Dist. LEXIS 52934 (W.D. Wash. Apr. 16, 2014), which cites the non-binding 50 Am.Jur.2d Libel and Slander § 25, for the proposition that H2F failed to establish that "Apple's notice was not privileged" by not adhering to a five part test set out in the American Jurisprudence treatise. (Dkt. 26, p. 24) What Apple cites is not binding, what H2F pleads is consistent with what the Washington Supreme Court requires to establish "lack of privilege." *Mark v. Seattle Times*, 96 Wn.2d 473, 492 (1981)("[P]roof of falsity alone cannot overcome the privilege. Instead, the plaintiff must "prove by affidavit or otherwise that the statement was published without fair and impartial investigation or without reasonable grounds for belief in its truth.") Here H2F repeatedly pled that Apple lacked privilege because Apple made its counterfeit allegation to Amazon without conducting a "fair and impartial investigation" as to whether H2F was selling counterfeit product. (Dkt. 1, ¶¶31-40)  H2F pled ample facts to establish the "lack of privilege" element of its claim.

Finally, H2F properly alleged "fault." Apple argues that since infringement of intellectual property rights is a matter of public concern, the "actual malice" standard inures to H2F's defamation claim. Apple cites *Alpine Indus. v. Cowles Publ'g Co.,* 114 Wn.App. 371, 393 (2002) in support. *Alpine* involved a lawsuit against a newspaper regarding the newspaper's reporting of a software piracy case. *Id.* at 394. *Cowles* dismissed plaintiff's defamation claim (on summary judgment) upon finding that "the record shows [the newspaper] attempted to verify his facts, and ran the story by the paper's business editor." *Id.*  *Cowles* did *not* hold that the "actual malice" standard applied to *all* defamation cases, including those that (like the case here) involve

newspapers (who customarily enjoy heighted protection from defamation claims) and address

intellectual property. Indeed, murder and rape are also matters of public concern but a private party

falsely accused of such need not show "actual malice." *Momah v. Bharti*, 144 Wn.App. 731,

743 (2008).[15] *Momah*, which Apple cites, reaffirms that negligence – not "actual malice"

applies in defamation cases like this:

> [A] private individual, who is neither a public figure nor official, may recover actual
> damages for a defamatory falsehood, concerning a subject of general or public
> interest, where the substance makes substantial dangers to reputation apparent, on
> a showing that in publishing the statement, the defendant knew or, in the exercise
> of reasonable care, should have known that the statement was false, or would create
> a false impression in some material respect. *Bharti*, 144 Wn. App. at 745.

H2F is not a public figure. H2F does not need to establish "actual malice." *Id.*

Apple enjoys no qualified privilege with regard to the counterfeit allegation it made to

Amazon. *Id.* Under *Momah*, H2F properly showed Apple failed to use reasonable care in making

the false statement. (Dkt. 1, ¶¶27-40) Assuming *arguendo*, a heightened standard applies, H2F

still alleges sufficient facts to show that Apple "acted with reckless disregard as to the truth

or falsity" of its claim. *See Herron v. KING Broad. Co.*, 112 Wn.2d 762, 775 (1989). H2F

alleged Apple made claims against H2F based on unverified complaints made against

unrelated retailers. The *Cowles* defamation defendant (a newspaper) defeated the claim

because it "attempted to verify [its] facts" before making the allegation. *Alpine*, 114 Wn.App.

at 394. Apple, however, failed to inquire or otherwise investigate whether H2F's products

---

[15] *Momah* clarified that *Cowles* did not create a privilege for communications on matters of
public concern but instead applied the heightened standard because of the "fair reporting
privilege" at issue in *Cowles* - - - an issue not in play here because this case does not involve a
newspaper report. *Momah*, 144 Wn. App. at 743.

RESPONSE TO APPLE'S
MOTION TO DISMISS (14-CV-0950-RSM) - 17

were authentic before making the false statement. (Dkt. 1, ¶¶27-40) H2F properly pled fault and its defamation claim should survive Apple's Motion to Dismiss.

**F.     Removing H2F from Amazon's selling platform unjustly enriched Apple.**

Apple argues that the unjust enrichment claim fails because (a) no relationship exists between Apple and H2F; and (b) H2F did not have a large market share vis-à-vis the Apple products it sold.  (Dkt. 26, p. 33-34) Apple's arguments lack merit.  <u>As to point (a)</u>, "[u]njust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young,* 164 Wn.2d 477, 484 (2008). Thus, H2F did not need to allege a contractual relationship in order to succeed on its claim at the Rule 12 stage.  <u>As to point (b)</u>, Apple cites no case for the proposition that a "small market share" is a defense to an unjust enrichment claim. Therefore H2F properly pled its unjust enrichment claim by alleging Apple was unjustly enriched by the market share it gained when it eliminated H2F as a competitor. (Dkt 1. ¶151)

**G.     H2F properly pleads its state and federal anti-trust claims.**

H2F's anti-trust claim alleges that Amazon and Apple engaged in price fixing with regard to the iPad covers ("the Items"), that the agreement - - partially brought to light by Apple's August 20, 2013, admission that it filed its complaint with Amazon because of H2F's "aggressive price point' - - fixed the Items' prices, and that the agreement improperly raised the Items' prices "overall to the consumer" which harmed competition. (Dkt. 1, ¶¶72, 103, 104, 105)

Apple argues that H2F's anti-trust claim fails because H2F did not (a) allege a contract, combination, or conspiracy (b) allege elements necessary to establish a *per se* horizontal price fixing claim, and (c) allege elements necessary to establish a vertical price fixing claim. (Dkt. 26, p. 27-31)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### 1.      H2F alleges a "contract, combination, or conspiracy."

Apple cites *Monsanto v. Spray Rite Serv. Corp.,* 465 U.S. 752 (1984), *Adidas v. Payless,* 546 F.Supp.2d 1029 (D. Or. 2008), *Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042 (9th Cir. 2008), and *Jeanery, Inc. v. James Jeans, Inc.* 849 F.2d 1148 (1988) for the proposition that H2F's claim fails for H2F not establishing "[w]ho at each company communicated with whom, when, what did they agree to, and what markets were they seeking to affect." (Dkt. 26, p. 28) Apple's argument fails legally and factually. H2F properly alleges a conspiracy to restrain trade.  The Ninth Circuit holds:

> It is not necessary to find an express agreement [under 15 U.S.C. § 1], either oral or written, in order to find a conspiracy, but it is sufficient that a concert of action be contemplated and that defendants conform to the arrangement. Mutual consent need not be bottomed on express agreement, for any conformance to an agreed or contemplated pattern of conduct will warrant an inference of conspiracy. An exchange of words is not required. Thus not only action, but even a lack of action, may be enough from which to infer a combination or conspiracy. *Esco Corp. v. United States,* 340 F.2d 1000, 1008 (9th Cir. 1965)(internal citations omitted)("[A] written or otherwise express agreement is not required to support a finding of a Section 1 violation.").

H2F alleges that Apple filed a baseless complaint against H2F, Amazon acquiesced to Apple's complaint even when on notice of the complaint's falsity, Apple revealed part of the agreement to restrain trade on August 20, 2013, and, Amazon, when unable to dodge the inaccurate report it used as a pretext for shuttering H2F's business, conjured up after-the-fact reasons to justify shuttering H2F's business. (Dkt. 1, ¶¶64, 71, 103-105) Such circumstantial evidence allows an anti-trust jury to consider after-the-fact reasons like juries do in wrongful termination cases. *Standard Oil Co. of Cal. v. Moore,* 251 F.2d 188, 210 (9th Cir. 1957)("No express agreement, of course, is necessary to constitute an unlawful combination or conspiracy."). The agreement H2F alleges complies with *Esco* and *Moore* and "summary procedures should be used sparingly in antitrust litigation where motive and intent play a significant role." *Westinghouse Elec. Corp. v. CX Processing Labs., Inc.,* 523 F.2d 668, 673 (9th Cir. 1975).

Motive and intent play a key role in this case.  As such, Apple's reliance on *Monsanto,* *Adidas, Kendall,* and *Jeanery* is misplaced as those cases were resolved on summary judgment or at trial after the parties had time to conduct discovery. *Monsanto,* 465 U.S. at 752-753 (directed verdict); *Adidas-Am., Inc. v. Payless Shoesource, Inc.,* 546 F. Supp. 2d at 1079-1080 (dismissing claim on summary judgment following Fed. R. Civ. P. 30(b)(6) deposition and discovery), *Kendall,* 518 F.3d at 1048 (dismissing anti-trust claim because "after the depositions taken, the complaint does not answer the basic questions: who, did what, to whom (or with whom), where, and when?"); *Jeanery,* 849 F.2d at 1150 (directed verdict).

Apple's business justification defense also fails as it asks the Court to presume that its desire to exclude H2F from its intellectual property was "valid" and void of any ill motive.  (Dkt. 26, p. 27) However, H2F alleges facts to the contrary, specifically that Apple made its infringement complaint without interviewing a single witness, without analyzing a single product, and with the assistance of an unlicensed investigator. (Dkt. 1, ¶¶31-36; 45-54) Apple cannot properly ask the Court to find, at the Rule 12 stage, that its "infringement notice" is "presumptively valid" as a matter of law.

### 2.  *H2F alleges horizontal price fixing claim.*

Apple argues H2F's horizontal price fixing claim fails because Apple and Amazon's agreement to "terminate a purported price-cutter" is not *per se* illegal. (Dkt. 26, p. 29)  Apple cites *Business Electronics Corp. v. Sharp Elec., Corp,* 485 U.S. 717, 726 (1988), *Euromodas, Inc. v. Zanella, Ltd.,* 368 F.3d 11, 21 (1st Cir. 2004)(*citing Business Electronics*), and *Jeanery, Inc.* (*citing Business Electronics*) in support. *Id.*  Apple's argument fails factually and legally.

As to the facts, H2F pleads more than an agreement to terminate "a purported price-cutter." Apple argues that "[p]laintiff makes no allegation of an agreement between competitors to fix

prices for particular products." (Dkt. 26, p. 29)  But H2F alleges Apple and Amazon entered into two agreements.  The first agreement is Apple and Amazon setting prices for the iPad covers (Dkt. 1, p. 26 ¶108, line 1).  The second agreement is Apple and Amazon monitoring sellers (like H2F) and agreeing to shutter business who sell below the agreed Apple-Amazon amount. (Dkt. 1, ¶103; & p. 25, ¶108, line 25)   Contrary to what Apple argues, H2F pleads Amazon and Apple are competitors as both "sell iPad covers." (Dkt. 1, ¶107) H2F alleges that those agreements are evidenced by Amazon shuttering H2F after H2F sold the iPad covers at $14.47/$17.41 per unit (Dkt. 1, ¶105) an act which had the effect of injuring competition by ensuring the iPad covers' prices were raised. (Dkt. 1, ¶¶106, 108)

As to the law, Apple correctly cites *Bus. Electronics Corp., Euromodas,* and *Jeanery* for the proposition that an agreement between a manufacturer and dealer to terminate a price cutter, *without further agreement on price or price levels,* is insufficient to state a *per se* claim but ignores the component of H2F's complaint that alleges the "further agreement on price or price levels." (*Compare* Dkt. 26, p. 29 *with* Dkt. 1, ¶¶103, 105, 106, 108) Specifically, Complaint ¶108 alleges termination of entities who sell "products, like the iPad covers in this case, at a rate lower than agreed by Apple and Amazon."  Complaint ¶108 satisfies the authority Apple cites.

### 3.    *H2F alleges a vertical price fixing claim.*

Contrary to the authorities Apple cites, "establishing a cause of action for an unreasonable restraint of trade in violation of section 1 under the rule of reason, the plaintiff must show the following elements: '(1) an agreement among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes

injury to competition." *Compare* Dkt. 26, p. 30 (and Apple's authorities)[16] *with Cascade Cabinet Co. v. W. Cabinet & Millwork Inc.,* 710 F.2d 1366, 1373 (9th Cir. 1983).  H2F pleads what *Cascade Cabinet* – which has not been overruled – requires.

As to point (1), H2F pleads an agreement between Apple and Amazon to monitor the online marketplace for sellers selling items below an agreed-to price and terminating that seller once their low prices were identified. (Dkt. 1, ¶¶103, 108)  As to point (2), H2F pleads that the Apple-Amazon agreement was intended to "raise ... the Item's prices, overall to the consumer, as a result of Amazon and Apple's concerted efforts." (Dkt. 1, ¶104) As to point (3), H2F pleads injury to competition by alleging that Amazon and Apple's acts had the effect of raising prices on the Items. (Dkt. 1, ¶¶104-106, 109)("Apple and Amazon's conduct had an actual adverse effect on competition as a whole in the relevant market.")

Apple then argues that H2F "lacks standing" to assert anti-trust claims based on increases that benefit competitors. (Dkt. 26, p. 31) Apple cites *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 582-83 (1986) and *Atl. Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 328 (1990) in support. *Atl. Richfield* holds antitrust injury must flow from the harmful effects on dealers and consumers flowing from the vertical, maximum price fixing. *Matsushita* holds anti-trust injury does not arise if one "stand[s] to gain from any conspiracy to raise the market price." Apple's argument fails because H2F alleges injury flowing from Apple-Amazon's acts and H2F does not stand to benefit from Apple-Amazon's acts. (Dkt. 1, ¶109)

---

[16] Apple also cites *Mularkey v. Holsum Bakery, Inc.,* 146 F.3d 1064, 1065 (9th Cir. 1998) for the proposition that unilateral imposition of minimum pricing is not an anti-trust violation. (Dkt. 26, p. 31).  But H2F alleges that Amazon and Apple agreed, together, to set prices for the iPad covers. (Dkt. 1, ¶108)

**H.**     **Apple violated Washington's Consumer Protection Act.**

Apple argues H2F's CPA[17] claim fails because (a) plaintiff lacks a private right of action under RCW 18.165, (b) plaintiff failed to allege an "unfair and deceptive" practice, (c) Apple's investigation took place outside of Washington, and (d) Apple's investigator is exempt from RCW 18.165 because the statute "specifically exempts law firms." (Dkt. 26, p. 32)  Apple again misrepresents the law and facts and its motion should be denied.

<u>As to point (a)</u>, a private right of action exists under RCW 18.195. *Nat'l Elec. Contractors Ass'n, Cascade Chapter v. Riveland,* 138 Wn.2d 9, 37 (1999)("[O]ther business regulation statutes also provide private rights of action to citizens aggrieved by a business practice in violation of law…RCW 18.165.240(2) (private investigators)").   <u>As to point (b)</u>, Apple inaccurately argues that H2F needed to plead it "was deceived" in order to establish an "unfair or deceptive" practice. (Dkt. 26, p. 32)  Neither intent to deceive, proof of deceit, or possibility to deceive is needed to establish the "unfair or deceptive" element. *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.,* 162 Wn.2d 59, 75 (2007)("[K]nowing failure to reveal something of material importance is 'deceptive' within the CPA."); *Mayer v. Sto Indus., Inc.,* 123 Wn. App. 443, 457 (2004) *aff'd in part, rev'd in part,* 156 W. 2d 677 (2006)("By providing false information to construction professionals about the Sto product, Sto took part in unfair or deceptive acts that had the capacity to deceive a large portion of the public.")  Since the CPA does not define "unfair or deceptive", the dictionary definition of "unfair" - - "not equitable in business dealings"

---

[17] Washington's Consumer Protection Act is "a carefully drafted attempt to bring within its reaches *every* person who conducts unfair or deceptive acts or practices in *any* trade or commerce." *Short v. Demopolis,* 103 Wn.2d 52, 61 (1984) (emphasis in original).

- - applies. WEBSTER'S NINTH COLLEGIATE DICTIONARY, at 1288 (1989).[18]  Here H2F pled unfair

and deceptive conduct by Apple, including Apple using an unlicensed investigator who, in

behavior analogous to *Mayer*, provided false information to Amazon about H2F selling counterfeit

iPad covers. (Dkt. 1, ¶¶39, 49, 63, 153)  <u>As to point (c)</u>, Apple's investigation occurred in

Washington: Amazon is located in Washington, Apple's investigator searched Amazon's website

for complaints related to an iPad associated ASIN, and Apple's investigator contacted

Washington-based Amazon to complain about H2F. (Dkt. 1, ¶¶1, 4, 26,  72, 73)  <u>As to point (d)</u>,

RCW 18.165.020(4) does not, as Apple claims, exempt non-lawyers from its ambit simply because

the non-lawyers work at a law firm: the statute exempts "[a]n attorney-at-law while performing

the attorney's duties as an attorney."  The individual involved in the takedown was not an attorney,

was not performing duties as an attorney, and is not exempt from RCW 18.165.  (Dkt. 1, ¶48)

     Apple engaged in unfair and deceptive practices by using unlicensed investigators to file,

with Amazon, unsubstantiated claims about H2F.

## IV.    CONCLUSION

     Apple's Motion to Dismiss should be denied.

     Respectfully submitted this 20th day of October 2014.

> */s Matthew Crotty*
> MATTHEW Z. CROTTY
> Crotty & Son Law Firm, PLLC
> 421 West Riverside, Suite 1005
> Spokane, WA 99201
> Telephone: 509.850.7011

---

[18] Courts may "rely on dictionary definitions when construing claim terms."*Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1584, n.6 (Fed. Cir. 1996).

RESPONSE TO APPLE'S
MOTION TO DISMISS (14-CV-0950-RSM) -  24

1

2

<u>CERTIFICATE OF SERVICE</u>

        I certify that on October 20, 2014, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to those attorneys

of record registered on the CM/ECF system. All other parties, if any, shall be served in accordance

with the Federal Rules of Civil Procedure.

        Dated this 20th day of October 2014.

                                    */s Matthew Crotty*
                                    MATTHEW Z. CROTTY
                                    Crotty & Son Law Firm, PLLC
                                    421 West Riverside, Suite 1005
                                    Spokane, WA 99201
                                    Telephone: 509.850.7011

RESPONSE TO APPLE'S
MOTION TO DISMISS (14-CV-0950-RSM) - 25