UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HARD 2 FIND ACCESSORIES, INC., ) | |
| ) | CASE NO. C14-0950 RSM |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER GRANTING DEFENDANTS' |
| ) | MOTION TO DISMISS |
| AMAZON.COM, INC., a Delaware ) | |
| corporation; and APPLE, INC., a ) | |
| California corporation, ) | |
| ) | |
| Defendants. ) | |

## I. INTRODUCTION

This matter comes before the Court on Defendant Amazon.com, Inc.'s ("Amazon") Motion to Dismiss under Rule 12(b)(6) for failure to state a claim. Dkt. #15. Defendant argues that Plaintiff's complaint should be dismissed because it fails to allege facts sufficient to support any of the alleged causes of action. Plaintiff, Hard 2 Find Accessories, Inc. ("H2F"), essentially responds that Amazon's motion is an effort to bully small business, and a disguised attempt to reinstate code pleading in this District. Dkt. #24. Plaintiff further argues that it has pled sufficient facts to meet the appropriate notice pleading standard and requests that the Court deny Defendant's motion. *Id.* For the reasons set forth below, the Court disagrees with Plaintiff and GRANTS Defendant's motion to dismiss.

ORDER
PAGE - 1

## II.  BACKGROUND

This case arises from allegations of selling counterfeit iPad covers on Amazon.com. Amazon enables third-party sellers to sell their products over Amazon's websites. Dkt. #1 at ¶ 10. H2F is a former seller. As a seller, H2F was required to accept and abide by Amazon's Business Solutions Agreement ("BSA"). Dkt. #1 at ¶ 12. H2F admits that it entered into such agreement in or about January 2012.[1] *Id.*

The BSA provides that Amazon may terminate or suspend the Agreement or any service by notice to the seller for any reason at any time. Dkt. #16, Ex. A at § 3. Likewise, sellers may terminate the Agreement or service for any reason at any time. *Id.* Accordingly, the Agreement provides for an "at will" relationship between sellers and Amazon.

The BSA also provides:

> **2. Service Fee Payments.**
> . . .
> If we conclude that your actions and/or performance in connection with the Agreement may result in customer disputes, chargebacks or other claims, then we may, <u>in our sole discretion</u>, delay initiating any remittances and withhold any payments to be made or that are otherwise due to you under this Agreement for the shorter of: (a) a period of ninety (90) days following the initial date of suspension; or (b) completion of any investigation(s) regarding your actions and/or performance in connection with the Agreement.

Dkt. #1 at ¶ 18 and Dkt. #16, Ex. A at § 2 (emphasis added).

On June 14, 2013, Amazon informed H2F that it had removed two of H2F's listings for Apple iPad Smart Covers because it had been notified by the rights owner (Apple) that the

---

[1] Absurdly, H2F objects to the authenticity of the BSA provided by Amazon in support of its motion on the basis that it is not signed by H2F. *See* Dkts. #16, Ex. A and #24 at 7. Yet, H2F admits in its Complaint that it entered into such agreement and quotes directly from the BSA in support of its allegations. Dkt. #1 at ¶ ¶ 12, 18 and 19. Moreover, Plaintiff fails to acknowledge that this agreement applies to all of the sellers who register for Amazon Services Business Solutions and therefore is not signed by <u>any</u> specific party. More significantly, H2F itself provides no "signed" agreement which it purports to be authentic. Accordingly, the Court rejects H2F's baseless objection.

ORDER
PAGE - 2

offers infringed their intellectual property rights and may be counterfeit. Dkt. #1 at ¶ 26. The communication from Amazon also suggested that H2F contact Apple directly to resolve the dispute, and asked H2F to tell Apple to contact Amazon if the dispute was resolved so Apple could withdraw its complaint. *Id.*

On June 17, 2013, Amazon informed H2F that it had removed its selling privileges, canceled its listings, and placed a temporary hold on any funds in its Amazon.com seller account. Dkt. #1 at ¶ 56. Amazon explained that it was taking such action because it believed H2F had been selling counterfeit products, and items offered for sale on Amazon.com must be authentic. *Id.* Amazon further informed H2F that the hold would be removed after 90 days and any remaining funds would be available. *Id.* Amazon also provided directions if H2F wished to appeal the decision. *Id.* H2F appealed the same day. *Id.* at ¶ 58. On June 18, 2013, Amazon denied the appeal. *Id.* at ¶ 59.

H2F alleges that it subsequently resolved the complaint with Apple. Dkt. #1 at ¶¶ 60-63. H2F then informed Amazon that the complaint had been resolved, and asked for reinstatement. *Id.* at ¶ 64. However, on June 27, 2013, Amazon informed H2F that it would not reinstate its selling privileges. *Id.* at ¶ 65. H2F alleges that this communication "permanently shuttered" its business. *Id.*

After several weeks of subsequent communication between H2F, Apple and Amazon, H2F alleges it learned that Amazon had revoked its selling privileges because of additional customer complaints it had received about H2F's products, as well an additional infringement complaint. Dkt. #1 at ¶¶ 71-78.

H2F alleges that it has lost total revenue of $180,112.61 per month since its Amazon.com account was suspended/terminated. Dkt. #1 at ¶ 80. As a result, it has brought

ORDER
PAGE - 3

claims against Amazon.com for: breach of contract, violations of federal and state antitrust laws, violations of Washington's Uniform Money Services Act ("UMSA"), breach of covenants of good faith and fair dealing, violations of Washington's Consumer Protection Act ("CPA"), breach of fiduciary duty, and unjust enrichment.[2]  Dkt. #1 at ¶¶ 87-116 and 126-151.

### III.  DISCUSSION

#### A. Standard of Review

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678.  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Absent facial plausibility, Plaintiffs' claims must be dismissed. *Twombly*, 550 U.S. at 570.

The Court generally may not consider material beyond the pleadings in ruling on a motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  However, where documents are referenced extensively in the Complaint, form the basis of Plaintiff's claim, or are subject to judicial notice, the Court may consider those documents in the context of a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003).  The Court may take judicial notice of facts not reasonably subject to dispute because they are

---

[2]  It appears to the Court that these allegations mimic those brought in a previous case against Amazon by a different third-party seller. *See Peters v. Amazon Servcs LLC*, 2 F. Supp.3d 1165, 1169 (W.D. Wash. 2013).

ORDER
PAGE - 4

generally known within the trial court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. FRE 201(b). Accordingly, the Court has taken judicial notice of and considers herein the Policies and Procedures noted in Defendant's brief and the BSA accompanying the Declaration of Deserae Abed-Rabbo Weitmann in support of Defendant's motion. *See* Dkts. #15 and #16.

**B. Plaintiff's Complaint**

Here, taking the "facts" described above as true, the Court finds no support for a single claim alleged by Plaintiff against Amazon, as further discussed below.

*1. Breach of Contract*

In order to succeed on a breach of contract claim, a Plaintiff must prove four elements: duty, breach, causation, and damages. *BP W. Coast Prods. LLC v. SKR Inc.*, 989 F. Supp.2d 1109, 1121 (W.D. Wash. 2013) (citing *Baldwin v. Silver*, 165 Wn. App. 463, 473, 269 P.3d 284 (2011)). For any breach to arise, there must first be some duty to perform. *Id.* Here, H2F alleges two breach of contract claims against Amazon – one alleging that Amazon held H2F's funds longer than authorized by the BSA (Cause of Action One), and one alleging that Amazon did not conduct a thorough investigation or treat it fairly in violation of Amazon's policies (Cause of Action Two). Dkt. #1 at ¶¶ 87-96. These claims must be dismissed, as H2F fails to allege any facts establishing a plausible claim. Specifically, it fails to adequately allege Amazon's duty or breach thereof for either of those claims.

With respect to Cause of Action One, Plaintiff relies on the BSA's alleged requirement that Amazon remit payments to its sellers within 14-19 days of receiving the funds from the purchaser. Dkt. #1 at ¶ 88. Plaintiff further alleges that the BSA was breached when Amazon held its funds for 92 days on one account and 98 days on another account between June and

ORDER
PAGE - 5

October of 2013. *Id.* at ¶ 89. However, Plaintiff fails to identify which section of the BSA is at issue and allegedly breached. This failure is fatal to Plaintiff's Claim. *See*, *e.g.*, *BP West Coast Prods., LLC v. Shalabi*, 2012 U.S. Dist. LEXIS 17027 (W.D. Wash. Feb. 10, 2012) ("A breach of contract claim must point to a provision of the contract that was breached."); *Curl v. CitiMortgage, Inc.*, 2014 U.S. Dist. LEXIS 148055 (N.D. Cal. Oct. 17, 2014) ("[Plaintiff's] fourth cause of action, for breach of contract, fails because her complaint does not identify any express contractual provision that was breached by Defendants."); *Commerce & Indus. Ins. Co. v. HR Staffing, Inc.*, 2014 U.S. Dist. LEXIS 141637 (D. Or. Oct. 1, 2014) ("The court must know the provision (or provisions) of the contract (or contracts) that have allegedly been breached before it can perform the necessary interpretation.").

But even if this Court were to glean which provision of the contract is allegedly breached, Plaintiff ignores the contract language itself.[3] The BSA contains the following provision:

> Except as otherwise stated in this Agreement (including without limitation Section 2 of the Business Solutions Agreement), we will remit to you on a bi-weekly (14 day) (or at our option, more frequent) basis any Sales Proceeds collected by us or our affiliates but not previously remitted to you as of the date that is two (2) business days prior to the date of remittance (the "Remittance Calculation Date") (which you will accept as payment in full for the sale and shipping and handling of Your Products), less: (a) the Referral Fees due for such sums; (b) the applicable Variable Closing Fee, if any, due for such sums; and (c) any Selling on Amazon Subscription fees due. . . .

Dkt. #16, Ex. A at § S-6 (emphasis added).

Section 2 of the BSA provides:

> If we conclude that your actions and/or performance in connection with the Agreement may result in customer disputes, chargebacks or other claims,

---

[3] Plaintiff argues that it has "clearly" identified Section S-6 of the BSA as the provision at issue. Dkt. #24. Although that provision was not identified under the claims section of the Complaint, the Court addresses it on this motion.

ORDER
PAGE - 6

>then we may, <u>in our sole discretion</u>, delay initiating any remittances and withhold any payments to be made or that are otherwise due to you under this Agreement for the shorter of: (a) a period of ninety (90) days following the initial date of suspension; or (b) completion of any investigation(s) regarding your actions and/or performance in connection with the Agreement.

Dkt. #1 at ¶ 18 and Dkt. #16, Ex. A at § 2 (emphasis added).  Amazon argues that these two provisions, when read together, authorize Amazon to delay any remittance for 90 days, and may then remit funds under the bi-weekly schedule after the 90-day withholding period ends.  As a result, the two time periods are cumulative, and Amazon remitted funds within that cumulative time period.  Dkts. #15 at 11-13 and #28 at 6-7.  The Court agrees.

      The plain language of Section S-2 states that Amazon may, under certain circumstances, delay "<u>initiating</u>" remittances for the shorter of 90 days or the investigation period.  Dkt. #16, Ex. A at § 2 (emphasis added).  Thus, once the applicable time period has passed, Amazon must move forward with initiating the remittance under the Section S-6 schedule, which provides that remittances will occur on a bi-weekly basis.  *Id.* at § S-6.  There is nothing ambiguous about those provisions, and, as Amazon argues, when read together the two provisions are cumulative.  Accordingly, even accepting the alleged facts of Plaintiff's Complaint as true, H2F fails to allege facts demonstrating that Amazon had any duty to remit payments to H2F in 90 days or less, and therefore no breach can be established.  For these reasons, Cause of Action One must be dismissed.

      Likewise, Cause of Action Two must also be dismissed.  Under this Cause of Action, Plaintiff alleges that Amazon breached its contract by violating its policies to conduct thorough investigations and maintain selling platforms that are fair to sellers.  Dkt. #1 at ¶ ¶ 92-96.  Again Plaintiff fails to provide an identification of the contract provisions from which it quotes, and again, assuming the Court can identify such provisions, it misinterprets them.

ORDER
PAGE - 7

As an initial matter, the BSA incorporates Amazon's Service Terms and Program Policies for the country in which a seller registers. Dkt. #16, Ex. A, "General Terms." The BSA provides:

> This Agreement incorporates and you hereby accept the applicable Service Terms and applicable Program Policies, which Amazon may modify from time to time. In the event of any conflicts between the Program Policies and this Agreement, the Program Policies will prevail. . . .

Dkt. #16, Ex. A at § 18.   Under Cause of Action Two, Plaintiff appears to rely on the following Program Policies[4] as the basis of its breach of contract claims:

> REPORTING
>
> Amazon encourages sellers to report listings that violate Amazon's policies or applicable law by using our Contact Us form. Select "Report a violation of our rules" and include all relevant information, so we can conduct an investigation.

http://www.amazon.com/gp/help/customer/display.html?nodeId=200832290 (last visited Nov. 4, 2014).

> **Prohibited Seller Activities and Actions**
>
> These Prohibited Seller Activities and Actions are established to maintain a selling platform that is safe for buyers and fair for sellers of both products and services. Failure to comply with the terms of this policy can result in cancellation of listings, suspension from use of Amazon.com tools and reports, and/or the removal of selling privileges.
>
> **Note:** This policy is in addition to, and in no way limits, your other obligations pursuant to your seller agreement or otherwise.

http://www.amazon.com/gp/help/customer/display.html?nodeId=200414320 (last visited Nov. 4, 2014).

---

[4] The Court notes that the quoted policies are the versions currently obtainable on Amazon.com and note that they differ slightly in their current form from the text quoted in Plaintiff's Complaint. However, because Plaintiff fails to identify any specific document or location of the text it quotes, in either the Complaint or in response to Amazon's motion to dismiss, Defendants and the Court have been left on their own to locate the Policies that appear to be at issue.

ORDER
PAGE - 8

Neither of these policies creates contractual obligations upon which H2F's breach of contract claim could be based. Indeed, the Reporting policy simply states that it encourages sellers to report listing violations. The second policy is simply an explanatory statement for the creation of the list of prohibited activities. *See Evergreen Int'l Airlines, Inc. v. Boeing Co.*, 2012 U.S. Dist. LEXIS 140547, at *15-17 (W.D. Wash. June 9, 2010) (explaining that a provision stating that Boeing would "conduct its business fairly" is "aspirational language" that does not "give rise to an enforceable promise"). Moreover, the second policy explicitly states that it in no way limits the BSA. The BSA, as discussed above, creates an "at will" relationship between Amazon and its sellers, which allows either to terminate the agreement for any reason at any time. For these reasons, Cause of Action Two must be dismissed.

   *2. Breach of Good Faith and Fair Dealing*

Plaintiff's Cause of Action Six, alleges that Amazon breached its duty to act in good faith and deal fairly with H2F by failing to conduct a thorough investigation of the complaints it received and by failing to remit payment within 90 days. Dkt. #1 at ¶ ¶ 126-135. As the Washington Supreme Court has recently explained, under Washington law, "'[t]here is in every contract an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance.'" *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112-113, 323 P.3d 1036, 1041 (2014) (quoting *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991)). The implied covenant of good faith and fair dealing cannot add or contradict express contract terms and does not impose a free-floating obligation of good faith on the parties. "Instead, 'the duty [of good faith and fair dealing] arises only in connection with terms agreed to by the parties.'" *Id.* (quoting *Badgett*); *see also Johnson v. Yousoofian*, 84 Wn. App. 755, 762, 930 P.2d 921 (1996) ("The implied

ORDER
PAGE - 9

duty of good faith is derivative, in that it applies to the performance of specific contract obligations. If there is no contractual duty, there is nothing that must be performed in good faith." (citations omitted)).

This claim rests on the assumption that Amazon had the contractual duties discussed above. Because the Court has determined that no such contractual duties existed, there is also no duty to perform such obligations in good faith. Accordingly, the Court dismisses Cause of Action Six.

*3. Washington's Uniform Money Services Act*

Plaintiff's Cause of Action Four alleges a violation of Washington's UMSA. Dkt. #1 at ¶¶ 110-116. Specifically, Plaintiff alleges a violation of RCW 19.230.330, which requires a "money transmitter" to remit funds to a customer within 10 days. Plaintiff asserts that Amazon "routinely" failed to remit payments to H2F in violation of that section of the UMSA. *Id.* This Cause of Action fails as a matter of law.

First, Plaintiff appears to concede that the UMSA itself does not create a private cause of action. *See* Dkts. #15 at 13-16 and #24 at 13-17. Instead, Plaintiff argues that there is an implied private cause of action under the Act. The Court agrees with Amazon that H2F misstates the UMSA in applying the implied cause of action analysis, and therefore this claim must be dismissed. *See* Dkt. #28 at 7-10.

In Washington, courts consider three questions when determining whether an implied private cause of action under a specific statute exists: "first, whether the plaintiff is within the class for whose 'especial' benefit the statute was enacted; second, whether the legislative intent, explicitly or implicitly, supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the legislation." *Bennett v.*

ORDER
PAGE - 10

*Hardy*, 113 Wn.2d 912, 920, 784 P.2d 1258 (1990). Here, H2F cannot show that the legislature enacted the UMSA for its "especial" benefit. In fact, the legislative history clearly indicates that the Bill was enacted for the benefit of all users of money transmission or currency exchange services. *See* Dkt. #25, Ex. A at 1, "Background." When "a statute protects the general public instead of an identifiable class of persons, a plaintiff is not a member of the class for whose especial benefit the statute was enacted." *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 210, 304 P.3d 914 (2013). Accordingly, Plaintiff's Cause of Action fails as a matter of law, and must be dismissed.[5]

4. *Washington's Consumer Protection Act*

Plaintiff's Cause of Action Seven alleges a violation of Washington's CPA. Dkt. #1 at ¶¶ 136-143. This Cause of Action appears to be premised on Plaintiff's belief that a violation of the UMSA is a *per se* violation of the CPA. To prevail in a private CPA claim, a plaintiff must prove: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986); *see* RCW 19.86.020 and .090. A plaintiff may predicate the first CPA element on "a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013) (clarifying Hangman Ridge, 105 Wn.2d at 785-86). A defendant's act or

---

[5] Tellingly, since the Bill was enacted in 2003, this Court can find only one decision, either published or unpublished, in both Washington and the Ninth Circuit, that even contains a reference to a claim under the UMSA, and all that decision states is the fact that Plaintiffs had alleged a cause of action under Washington's UMSA. *See Peters v. Amazon Servcs LLC*, 2 F. Supp.3d 1165, 1169 (W.D. Wash. 2013).

ORDER
PAGE - 11

practice is *per se* unfair or deceptive if the plaintiff shows it violates a statute declaring the conduct to be an unfair or deceptive act or practice in trade or commerce. *See Hangman Ridge*, 105 Wn.2d at 786. To state a claim for a *per se* CPA violation, the plaintiff must allege "'the existence of a pertinent statute'" and "'its violation.'" *Fid. Mortg. Corp. v. Seattle Times Co.*, 131 Wn. App. 462, 471, 128 P.3d 621 (2005) (quoting *Keyes v. Bollinger*, 31 Wn. App. 286, 290, 640 P.2d 1077 (1982)); *see Dempsey v. Joe Pignataro Chevrolet, Inc.*, 22 Wn. App. 384, 393, 589 P.2d 1265 (1979).

In this case, Plaintiff has alleged the existence of a pertinent statute – the UMSA. It has also alleged a violation of that statute. Specifically, it has alleged that Amazon violated the CPA by forcing its sellers to enter into a contract whereby they accepted a 14-day remittance schedule, in violation of the UMSA. Problematically, however, H2F fails to allege that it was a party to the contract referenced in the Cause of Action. Indeed, the Cause of Action references a Service Participation Agreement. Yet nowhere in the Complaint does Plaintiff actually allege that it was a party to such agreement. In fact, in reviewing the facts set forth in support of its allegations, the only Agreement to which H2F admits being a party is the BSA, and the Service Participation Agreement is not mentioned at all. *See* Dkt. #1 at ¶ ¶ 8-86. Therefore, the Court finds that Plaintiff has not alleged sufficient facts on the face of the Complaint to allow this claim to proceed.[6]

*5. Federal and State Antitrust Laws*

Plaintiff's Cause of Action Three alleges violations of state and federal antitrust laws. Dkt. #1 at ¶ ¶ 97-109. Essentially, this claim alleges that Apple and Amazon have conspired to "shutter" Apple's competitors. Specifically, H2F alleges that Apple and Amazon have agreed

---

[6] Importantly, the Court also finds that Plaintiff fails to show that the Service Participation Agreement even governs in this matter, given that the Agreement is one that applies to legacy sellers other than H2F. *See Peters v. Amazon Services*, *supra* and Dkt. #24 at 22-23.

ORDER
PAGE - 12

to a scheme whereby Apple monitors sellers who sell items at an "aggressive price point," then report such sellers to Amazon, which in turn shuts down the seller. Then, Apple allegedly stalls its resolution of the complaint with the seller in order to allow Amazon to "conjure up" an after-the-fact reason for closing the seller's account. Dkt. #1 at ¶ 103. Alternatively, Plaintiff alleges that Amazon and Apple are engaged in horizontal price fixing because they both sell the same iPad accessories as H2F. Dkt. #1 at ¶ ¶ 108-109.

Plaintiff fails to allege any facts to support either basis for the claims. In fact, a review of Plaintiff's alleged facts reveals no allegations of any relationship between Apple and Amazon, other than that Apple communicated with Amazon regarding the complaint of counterfeit iPad covers in this matter. *See* Dkt. #1 at ¶ ¶ 8-86. There are no facts supporting any conspiracy or collusion, or even the inference of any conspiracy or collusion between the two, for any purpose. Nor are there any facts alleged to support even an inference that the two entities conspired to restrain trade among States within the United States or with foreign countries. *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012) (setting forth required elements of a Sherman Act antitrust claim). Therefore, Plaintiff's antitrust claim is wholly without factual support, and must be dismissed.

*6. Breach of Fiduciary Duty*

Under Cause of Action Eight, Plaintiff alleges a breach of fiduciary duty. Dkt. #1 at ¶ ¶ 144-148. Plaintiff alleges that Amazon owes it a fiduciary duty as its "payment agent" and breached such duty by holding its funds in violation of the BSA. *Id.* The Court finds this claim without merit. The BSA specifically states that it does not create any dependent relationship between Amazon and H2F. Dkt. #16, Ex. A at § 13. Plaintiff attempts to justify its claim by pointing to language in a document titled Service Participation Agreement. Yet Plaintiff fails

ORDER
PAGE - 13

to actually allege that it was a party to such agreement, or that such agreement modifies the applicable BSA in any manner.  In fact, in reviewing the facts set forth in support of its allegations, the only Agreement to which H2F admits being a party is the BSA, and the Service Participation Agreement is not mentioned at all.  *See* Dkt. #1 at ¶ ¶ 8-86.  Accordingly, Cause of Action Eight is dismissed.

   7. *Unjust Enrichment*

Finally, Plaintiff alleges under Cause of Action Nine that Amazon was unjustly enriched by earning interest on the funds it failed to remit to H2F in 90 days or less.  Dkt. #1 at ¶ ¶ 149-151.  Amazon argues that this claim fails because a party may not bring a claim for unjust enrichment for issues arising under a contract's express subject matter.  Dkt. # 15 at 24.  H2F does not oppose that argument.  Instead, in an attempt to save the claim, H2F argues that the claim is properly pled because it is premised on an alleged violation of the UMSA.  Dkt. # 24 at 23.  However, recharacterizing the claim as resting solely on a violation of Washington's UMSA cannot save it.

"'Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it.'" *Austin v. Ettl*, 171 Wn. App. 82, 92, 286 P.3d 85, 91 (2012) (quoting *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008)).  A claim for unjust enrichment consists of three elements: (1) a plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge or appreciation of the benefit, and (3) the defendant's accepting or retaining the benefit without the payment of its value is inequitable under the circumstances of the case.  *See Young*, 164 Wn.2d at 484 (quoting *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159-60, 810 P.2d 12, 814 P.2d 699, *review denied*, 117 Wn.2d 1029 (1991)).  Plaintiff fails to plead

ORDER
PAGE - 14

any facts to support the first element of the claim. In addition, to support the first element, Plaintiff would necessarily need to acknowledge that it "conferred a benefit" upon Amazon pursuant to a contract which allowed Amazon to collect funds on behalf of H2F. Thus, it is clear that the issue arises under a contract's express subject matter and may not be the basis of an unjust enrichment claim. Accordingly, this claim also fails as a matter of law.

### C. Leave to Amend

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). Here, the Court concludes that granting leave to amend would be futile. The Court can conceive of no possible cure for the deficiencies in Plaintiff's Complaint, particularly given the documentary evidence provided by Defendant and the invalidity of Plaintiff's primary legal arguments as discussed above.

### IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS:

1) Defendants' Motion to Dismiss (Dkt. #15) is GRANTED. All claims against Defendant Amazon.com, Inc. are DISMISSED with prejudice.

2) The Court will address Defendant Apple, Inc.'s pending motion to dismiss by separate order.

ORDER
PAGE - 15

DATED this 6th day of November 2014.

                                                                  RICARDO S. MARTINEZ
                                                                  UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 16